UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| SHAWNA GABORIAULT, *on behalf of herself and all others similarly situated*, | Civil Action No. 2:24-cv-00113 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | |
| PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10 | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Shawna Gaboriault on behalf of herself and others similarly situated, individually and as class representative, upon information and belief, except for the allegations concerning Plaintiff's own actions, says as follows:

**INTRODUCTION**

1.     This is a class-action Complaint brought by Plaintiff, Shawna Gaboriault ("Plaintiff") on her own behalf and on behalf of all others similarly situated against Defendant Primmer, Piper, Eggleston and Cramer, P.C., ("PPEC"), to obtain declaratory, injunctive and monetary relief for a class of individuals against Defendant for its failure to safeguard highly sensitive Protected Health Information ("PHI") including but not limited to medical information, names, health insurance information and policy numbers, diagnosis and clinical information, physician name and practice type, medical history, medical procedure information, medical record numbers, test results and lab reports, treatment type and location, as well as Personal Identifying Information ("PII") including names, Social Security numbers, driver's license numbers, financial account numbers, dates of birth, online credentials, tax identification numbers, passport numbers and/or electronic signatures which Defendant collected from Plaintiff and/or Class Members (PII

and PHI collectively referred to as "Private Information"), and for failing to provide timely, accurate and adequate notice to Plaintiff and other Class Members that their Private Information had been stolen and failing to provide timely, accurate and adequate notice of precisely what types of information were stolen.

2.       On August 4, 2022, PPEC announced, via a Notice of Security Incident ("NSI") sent to Ms. Gaboriault's attorney, that an unauthorized third party gained access to PPEC's network through malware in PPEC's system resulting in a data breach which exposed at least 76 gigabytes ("GB") of data which was "identified for copying to a server to New Zealand" ("the Data Breach").  *See* **Exhibit A**.

3.       According to PPEC, the PII/PHI exposed in the breach included "Diagnosis/ Clinical information, Doctor name or Practice Type, Medical History, Medical procedure information, Medical Record Number (MRN), Patient Name, Test results or lab reports, Treatment Type or Location" and "Date of Birth (DOB)." *Id.*

4.       PPEC's August 4, 2022, NSI also provided the following information:

> In November 2021, an unauthorized third party gained access to our network and copied a limited amount of data to an external data hosting site. We worked with the hosting site to lock down access to the account and delete the data. We have no reason to believe that any personal or confidential information has been disseminated or misused for the purpose of committing fraud or identity theft. We do not know the identity of the individual or individuals responsible for this incident. We are providing you with notice out of an abundance of caution as confidential information was placed at risk. A description of the attack and our response follows. The attack occurred in November of 2021. Malware was placed on Primmer's system through a bogus email link.
>
> A set of documents equaling approximately 76 GBs in size was identified for copying to a server in New Zealand. When the copying was discovered and stopped, 46 GBs of data had been copied. The server host terminated all access to the data. During the course of

the download and prior to its stoppage, data that had been downloaded was potentially accessible.

5.    According to PPEC, the Data Breach occurred at an unspecified time in November of 2021.

6.    According to the Data Breach Notification issued on the website[1] of the Office of the Maine Attorney General, the Data Breach occurred from November 8, 2021, to November 11, 2021. According to the Data Breach Notification, five (5) residents of Maine were affected out of a total of three-hundred and seventy-three individuals.

7.    On November 23, 2022, PPEC reported the Data Breach to the Attorney General for the State of New Hampshire pursuant to N.H. Rev. Stat. § 359-C:19 *et seq.* which stated that the information of two-hundred and sixty-five New Hampshire residents was exposed. See **Exhibit B.**

8.    PPEC's November 23, 2022, Notice to the New Hampshire Attorney General included the following statement, "[f]or New Hampshire residents, the information involved varied by individual, but may have included names, Social Security numbers, driver's license numbers, financial account numbers, dates of birth, medical information, health insurance numbers, online credentials, tax identification numbers, passport numbers and/or electronic signatures." *Id.*

9.    In recognition of the harms that result from improper data security practices and the failure to promptly notify individuals that their data has been stolen, Vermont law expressly directs data collectors such as the Defendant to "notify the owner or licensee of the information of any security breach immediately following discovery of the breach."[2]

---

[1] Office of Maine Attorney General, *Data Breach Notification.* Available at https://apps.web.maine.gov/online/aeviewer/ME/40/b8e6efdf-fea5-42eb-83d6-a51ee44edbcb.shtml (last accessed August 29, 2023).
[2] 9 V.S.A. § 2435(a)(2).

10.     Assuming PPEC discovered the Data Breach during its occurrence from November 8, 2021, to November 11, 2021, PPEC failed to disclose the Data Breach for nearly nine (9) months from the time it was first discovered, further harming the individuals whose information was included in the breach, and directly contravening Vermont law.

## PARTIES

11.     Plaintiff, Shawna Gaboriault, is an adult individual residing in Hardwick, Vermont who was notified by PPEC's August 4, 2022, NSI that her PII/PHI was included in the Data Breach. As a result of the Data Breach and PPEC's failure to ensure her information was secure, Plaintiff will continue to be at heightened risk for medical fraud, financial fraud, and identity theft along with their attendant damages for years to come.   Further, as a result of the Data Breach, Ms. Gaboriault, has spent many hours monitoring her bank and credit card accounts for fraud, as recommended in the notification letter.

12.     Defendant obtained Plaintiff's PHI and PII during the pendency of the personal injury matter captioned *Shawna Gaboriault v. Eric Gilbertson*, 412-8-19 Wncv, where PPEC represented the defendant, Eric Gilbertson.

13.     The PHI and PII was exchanged during the normal course of litigation.

14.     Defendant, Primmer, Piper, Eggleston and Cramer, P.C., is a Vermont corporation headquartered at 30 Main Street, Suite 500, P.O. Box 1489, Burlington, Vermont 05402.

15.     According to its website,[3] PPEC "became one of the largest law firms in Vermont" due to a merger on January 1, 2006.

---

[3] Primmer, Piper, Eggleston and Cramer, P.C., *History.* Available at https://www.primmer.com/about-us/history (last accessed August 29, 2023).

16.    In addition to its headquarters in Burlington, PPEC also has offices in Montpelier and Woodstock, Vermont, as well as Littleton, Portsmouth and Manchester, New Hampshire, and Washington, D.C.

17.    With forty-five attorneys across seven offices and twenty-five unique practice areas, PPEC is a large regional law firm in Vermont and New Hampshire.

18.    Defendants John Does 1 to 10 and are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were inadequate, acted consistent with and oversaw policies and procedures used by the employees of PPEC that are the subject of this Complaint. Those defendants personally control the acts, policies, and practices utilized by PPEC and, therefore, are personally liable for all the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

19.    Some or all of John Does 1-10 set the policies and practices complained of herein.

20.    Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

21.    The action and/or inaction of some or all of John Does 1-10 contributed to the Data Breach.

## JURISDICTION AND VENUE

22.    The Court has subject matter jurisdiction over the action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are approximately 373 putative class members, at least some of whom

have a different citizenship from Defendant, including at least two-hundred and sixty-five (265) residents of New Hampshire and five (5) residents of Maine.

23.    The Court has jurisdiction over Defendant as PPEC is headquartered and operates in the District.

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to the action occurred in the District.

## FACTUAL ALLEGATIONS

### A.  Defendant PPEC and its Public Privacy Commitments

25.    Defendant, PPEC, is a law firm that regularly accepts, receives, transmits and sends PII and PHI during the regular course of business.

26.    PPEC recognizes that its clients and other stakeholders value privacy, and therefore, on its website PPEC maintains a page dedicated to the promises it makes to customers regarding the protection of their data.

27.    Defendant maintains a Website Privacy Policy, which provides:[4]

Overview

This privacy notice discloses the privacy practices for our website (www.primmer.com). This privacy notice applies solely to information collected by this website. It will notify you of the following:

- What personally identifiable information is collected from you through the website, how it is used and with whom it may be shared.
- What choices are available to you regarding the use of your data.
- The security procedures in place to protect the misuse of your information.
- How you can correct any inaccuracies in the information.

---

[4]Primmer, Piper, Eggleston and Cramer, P.C., Privacy Policy Notice. Available at https://www.primmer.com/privacy-policy (last accessed August 2, 2023).

**Information Collection, Use, and Sharing**

This website collects no personally identifiable information from users, with the exception of:

- email newsletter sign-up data that you provide to us in the process of opting in via the sign-up form.
- data shared in the process of applying for a position with the firm.

**We will not sell or rent this information to anyone.** This information is available to our website development partner, Brandthropology, Inc., with whom we have signed an agreement **preventing them from selling or renting this data.**

….

**Security**

**We take precautions to protect your information. When you submit sensitive information via the website, your information is protected both online and offline.** Wherever we collect sensitive information (email/newsletter signup), that information is encrypted and transmitted to us in a secure way. You can verify this by looking for a lock icon in the address bar and looking for "https" at the beginning of the address of the Web page. While we use encryption to protect sensitive information transmitted online, we also protect your information offline. Only employees who need the information to perform a specific job (for example, billing or customer service) are granted access to personally identifiable information. **The computers/servers in which we store personally identifiable information are kept in a secure environment.**

*Id.* (emphases added)

**B. Stolen Private Information Is Valuable to Hackers and Thieves**

28.    It is well known and the subject of many media reports that both PHI and PII is highly coveted and a frequent target of hackers.[5] This information is targeted not only for identity

---

[5] See 2023 IBM DATA BREACH REPORT. *available at* https://www.ibm.com/reports/data-breach, (last accessed August 8, 2023) ("2023 IBM Data Breach Report").

theft purposes, but also for committing healthcare fraud and obtaining medical services under another's insurance. A recent annual report by IBM found that since 2020, healthcare data breach costs have increased 53.3% to an average cost of $10,930,000 million.[6] It also found that the average cost of a data breach reached an all-time high in 2023 of $4.45 million.

29.     A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[7] Despite well-publicized litigation and frequent public announcements of data breaches, PPEC opted to maintain an insufficient and inadequate system to protect the PHI and PII of Plaintiff and Class Members.

30.     Legitimate organizations and the criminal underground alike recognize the value of PII. Otherwise, they would not aggressively seek or pay for it. For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million users, they also took registration data from 38 million users."[8] Similarly, in the Target data breach, in addition to PCI data pertaining to 40,000 credit and debit cards, hackers stole PII pertaining to 70,000 users.

31.     Biographical data is also highly sought after by data thieves. "Increasingly, criminals are using biographical data gained from multiple sources to perpetrate more and larger thefts." *Id.* PII data has been stolen and sold by the criminal underground on many occasions in the past, and the accounts of theft and unauthorized access have been the subject of many media

---

[6] *Id.*
[7] Elinor Mills, *Study:  Medical identity theft is costly for victims* (March 3, 2010), *available at* https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited August 29, 2023).
[8] VERIZON 2014 PCI COMPLIANCE REPORT, *available at* http://www.cisco.com/c/dam/en_us/solutions/industries/docs/retail/verizon_pci2014.pdf ("2014 Verizon Report") 54 (last visited August 29, 2023).

reports. One form of identity theft, branded "synthetic identity theft," occurs when thieves create new identities by combining real and fake identifying information and then use those identities to open new accounts. "This is where they'll take your Social Security number, my name and address, someone else's birthday and they will combine them into the equivalent of a bionic person," said Adam Levin, Chairman of IDT911, which helps businesses recover from identity theft. Synthetic identity theft is harder to unravel than traditional identity theft, experts said: "It's tougher than even the toughest identity theft cases to deal with because they can't necessarily peg it to any one person." In fact, the fraud might not be discovered until an account goes to collections and a collection agency researches the Social Security number.

32.     Unfortunately, and as is alleged below, despite all of the publicly available knowledge of the continued compromises of Personal Identifying Information in the hands of third parties, PPEC's approach at maintaining the privacy of the Plaintiff's and the Class Members' PII and PHI was inadequate and negligent.

**C.   The Data Breach Will Result in Additional Identity Theft and Identity Fraud.**

33.     PPEC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII and PHI maintained on its systems and failed to ensure its employees entrusted with PII and PHI were trained in and maintained reasonable security procedures and practices in light of the sensitive information provided to PPEC from its clients, partners, medical providers, and third parties.

34.     The ramifications of PPEC's failure to keep or ensure that Plaintiff's and Class Members' data was secure are severe.  As explained by the Federal Trade Commission:

> Medical identity theft is when someone uses your personal information — like your name, Social Security number, health insurance account number or Medicare number — to see a doctor,

get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care.

If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to use. It could also hurt your credit.

A thief that uses your personal information to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care may also use it in other situations.[9]

35.     The Federal Trade Commission ("FTC") has recognized that consumer data is a new and valuable form of currency. In a FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency." [10]

36.     The FTC has issued numerous guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making.[11]

37.     According to the FTC, unauthorized PII disclosures are damaging to consumers' finances, credit history and reputation, and can take time, money, and patience to resolve the fallout.[12] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

---

[9] Federal Trade Commission, *Warning Signs of Identity Theft*, available at
https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed August 2, 2023).
[10] Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009), *available at* http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited August 8, 2023).
[11] *Start With Security, A Guide for Business*, FTC, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205- startwithsecurity.pdf (last visited August 8, 2023).
[12] See Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at*
https://www.consumer.ftc.gov/articles/pdf- 0009-taking-charge.pdf (last visited August 8, 2023).

38.     According to Javelin Strategy and Research, "1 in 4 [data breach] notification recipients became a victim of identity fraud."[13]

39.     Simply reimbursing a consumer for a financial loss due to fraud fails to make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[14] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

40.     Javelin Strategy and Research reports that losses from identity theft increased to $21 billion in 2013.[15]

41.     Plaintiff and Class Members now face years of constant surveillance of their financial, personal and medical records. The Class is potentially incurring and will continue to incur economic and non-economic damages related to the surveillance of their financial, personal and medical records, in addition to any fraudulent charges made to their financial accounts or medical insurance, whether or not such charges are ultimately reimbursed by credit card companies or PPEC.

**D.  Defendant Failed to Maintain the Confidentiality of Plaintiff and Class Members' Private Health Information and Personally Identifiable Information.**

42.     Defendant had a duty to maintain the confidentiality of Plaintiff and Class Members' PHI and PII.

---

[13] See 2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters, available at https://javelinstrategy.com/research/2013-identity-fraud-report-data-breaches-becoming-treasure-trove-fraudsters (last visited August 2, 2023) (the "2013 Identity Fraud Report").
[14] Victims of Identity Theft, 2012 (Dec. 2013) at 10, *available at*  http://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited August 2, 2023).
[15] *See* 2013 Identity Fraud Report, n.7 *supra*.

43.     Defendant's duties included ensuring Plaintiff and Class Members' electronic protected health information and personally identifiable information was not made available or disclosed to unauthorized third persons or processes.

44.     Defendant's duties also included protecting against reasonably anticipated threats or hazards to the security of Plaintiff and Class Members' PHI and PII.

45.     Defendant failed to adequately protect Plaintiff and Class Members' PHI and PII from the reasonably anticipated threat of hackers accessing PPEC's systems and network.

46.     As a result of the Defendant's failure to protect against reasonably anticipated threats, the electronic PHI and PII of Plaintiff and the Class was made available and likely disclosed to third persons and cyber criminals.

47.     Plaintiff and Class Members have a privacy right in their medical records, medical information, financial information and personal information.

48.     As a result of Defendant's failure to maintain the confidentiality of Plaintiff and Class Members' PHI and PII, Plaintiff and Class Members suffered an injury through their loss of privacy.

### E.  Plaintiff and Class Members Suffered Damages

49.     The Data Breach was a direct and proximate result of PPEC's failure to properly safeguard and protect Plaintiff's and Class Members' PHI and PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including PPEC's failure to establish and implement appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' PHI and PII to protect against reasonably foreseeable threats to the security or integrity of such information.

50.     Plaintiff and Class Members' PHI and PII is private and sensitive in nature and was left inadequately protected by PPEC.  PPEC did not obtain Plaintiff's and Class Members' consent to disclose either their PII or their PHI to any other person as required by applicable law and industry standards.

51.     As a direct and proximate result of PPEC's wrongful action and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take time and effort to mitigate the actual and potential impact of the Data Breach on their lives by, among other things, placing "freezes" or "alerts" with credit reporting agencies, contacting their health insurance providers, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their medical "explanations of benefits" and credit reports and accounts for unauthorized activity.

52.     Furthermore, Plaintiff and Class Members have suffered injuries in the loss of privacy through the disclosure of their PHI and PII.

53.     PPEC's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' PHI and PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation including:

    a.   Theft of their personal, medical, and/or financial information;

    b.   The reputational harms suffered by Defendant's publication of private facts in the form of Plaintiff's and Class Members' medical records;

c.  The imminent and impending injury flowing from potential fraud and identity theft posed by their personal and medical information being placed in the hands of criminals;

d.  The untimely and inadequate notification of the Data Breach;

e.  The improper disclosure of Plaintiff's and Class Member's private information;

f.  Loss of Privacy;

g.  Ascertainable loss in the form of out-of-pocket expenses and costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

h.  Ascertainable loss in the form of lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

i.  Ascertainable losses in the form of deprivation of the value of their PII and PHI, for which there is a well-established national and international market;

j.  The loss of the opportunity to control how their PII is used;

k.  The compromise and continuing publication of their PII;

54.  PPEC continues to inadequately secure Plaintiff and Class Members' PII and PHI.

## **CLASS ACTION ALLEGATIONS**

55.  The action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff brings the action on behalf of herself and all others similarly situated.  Plaintiff seeks certification of a Class, initially defined as follows:

**All persons whose PII and/or PHI was exposed in the PPEC Data Breach announced on or about August 4, 2022.**

56.     The Class for those whose benefit the action has been brought is so numerous that joinder of all members is impracticable, as Defendant has indicated it believes as many as three-hundred-and-seventy-three (373) individuals may have been impacted in the Breach.

57.     Plaintiff's claims are typical of the claims of the members of the Class, since all such claims arise out of Defendant's failure to safeguard user's PHI and/or PII.

58.     Plaintiff does not have interests antagonistic to the interests of the Class.

59.     The Class, of which Plaintiff is a member, are readily identifiable by reference to Defendant's records.

60.     Plaintiff will fairly and adequately protect the interests of the Class and have retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel has investigated and identified potential claims in the action; has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in the action.

61.     There are common questions of law and fact affecting the rights of all class members, including the following:

     a.   Whether Defendant had a duty to protect PHI and/or PII;

     b.   Whether Defendant knew or should have known about its vendor/subcontractor's failure to adequately secure PHI and/or PII;

     c.   Whether Defendant violated common and statutory law by failing to promptly notify Class Members their PHI and PII had been compromised;

     d.   Whether class members may obtain injunctive relief against Defendant to require that it safeguard or destroy, rather than retain as it has the PHI and PII of Plaintiff and the Class Members;

e.  Whether Defendant continues to use inadequate security measures to secure Plaintiff and Class Members' PHI and PII;

f.  Whether Plaintiff and Class Members are entitled to injunctive relief requiring PPEC to improve the security measures utilized to secure PHI and PII;

g.  Which security procedures and which data-breach notification procedure PPEC should be required to implement as part of any injunctive relief ordered by the Court;

h.  Whether PPEC has contractual obligations to use reasonable security measures;

i.  Whether PPEC has complied with contractual obligations to use reasonable security measures and/or require its employees, independent contractors and third parties to use reasonable security measures;

j.  What security measures, if any, must be implemented by PPEC to comply with its contractual obligations;

k.  Whether PPEC has implied contractual obligations to use reasonable security measures and/or require its employees, independent contractors and third parties entrusted with PHI and/or PII to use adequate security measures;

l.  Whether PPEC has complied with implied contractual obligations to use reasonable security measures and/or require its employees, independent contractors and third parties entrusted with PHI and/or PII to use adequate security measures;

m.  What security measures, if any, must be implemented by PPEC to comply with its implied contractual obligations;

n.  Whether PPEC violated privacy laws in connection with the actions described here; and

o.   What the nature of the relief should be, including equitable relief, to which Plaintiff and Class Members are entitled.

62.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members is impracticable. While the economic damages suffered by the individual Class Members are significant, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

63.   The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

64.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in the action or the prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class and Subclass would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

65.   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

66.   Plaintiff does not anticipate any difficulty in the management of the litigation.

**COUNT ONE**
**Negligence**
(On Behalf of Plaintiff and the Class)

67.     Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

68.     Defendant, through the course of business with Plaintiff and the Class, required Plaintiff and Class members to provide PII and/or PHI.

69.     Defendant knew, or should have known, of the risks inherent in collecting and storing the PII and PHI of Plaintiff and Class Members.

70.     Plaintiff and the Class entrusted their PII and/or PHI to PPEC with the understanding that PPEC would ensure that such information would be safeguarded, both by PPEC and by any employees, independent contractors, third-parties or vendors selected by PPEC.

71.     Plaintiff and the Class reasonably relied upon PPEC to protect and safeguard their PII and/or PHI.

72.     Upon accepting and storing Plaintiff's and Class Members' PHI and PII in their computer database systems, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to utilize commercially reasonable methods to do so. Further, Defendant had an obligation to ensure any employees, independent contractors, third-parties or vendors to whom Defendant supplied PHI and/or PII would utilize commercially reasonable methods to secure said information. PPEC knew, acknowledged, and agreed that the Plaintiff and Class Member's PHI and PII was private and confidential and would be protected as private and confidential.

73.     The breach of confidentiality for the PHI and PII was a breach of the standard of care owed by Defendant to Plaintiff and Class Members.

74.     Defendant breached its duties of care to Plaintiff and Class Members by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Plaintiff's PHI and PII.

75.     Defendant acted with disregard for the security of Plaintiff and Class Members' PHI and PII.  Defendant knew or should have known that it had inadequate computer systems and data security practices to safeguard such information, and Defendant knew or should have known that hackers were attempting to access the PHI and PII in health care databases such as PPEC's.

76.     The law imposed an affirmative duty on PPEC to timely discover and disclose the unauthorized access and theft of the PHI and PII to Plaintiff and the Class so that Plaintiff and Class Members could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

77.     To date, PPEC has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access or the exact nature of the information which was breached and continues to breach its disclosure obligations to Plaintiff and the Class.

78.     Defendant has not notified the Class of which records were disclosed, and specifically what PHI and PII was disclosed for each Class Member in the breach.

79.     Defendant also breached its duty to Plaintiff and the Class Members to adequately protect and safeguard Plaintiff and Class Members' information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information. PPEC failed to provide adequate supervision and oversight of the Private Information with which it is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a third party to gather Plaintiff's and

Class Members' Private Information, misuse the Private Information, and intentionally disclose it to others without consent.

80.     Through Defendant's acts and omissions described in the Complaint, including Defendant's failure to provide adequate security and its failure to protect Plaintiff and Class Members' Private Information from being foreseeably captured, accessed, disseminated, stolen, and misused, PPEC breached its duty to use reasonable care to adequately protect and secure Plaintiff and Class Members' Private Information during the time it was within PPEC's possession or control.

81.     Further, through its failure to timely discover and provide clear notification of the Data Breach to those affected, PPEC prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information.

82.     Upon information and belief, PPEC improperly and inadequately safeguarded the Private Information of Plaintiff and Class Members in deviation from standard industry rules, regulations, and practices at the time of the Data Breach.

83.     Defendant's failure to take proper security measures to protect Plaintiff's and Class Members' sensitive Private Information as described in the Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiff's and Class Members' Private Information.

84.     Defendant's conduct was negligent and departed from reasonable standards of care, including: failing to protect the Private Information; failing to conduct adequate regular security audits; failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and Class Members' Private Information; and failing to provide Plaintiff and Class

Members with timely and sufficient notice that their sensitive Private Information had been compromised.

85.     Neither Plaintiff nor the other Class Members contributed to the Data Breach and subsequent misuse of their Private Information as described in the Complaint.

86.     As a direct and proximate cause of Defendant's conduct, Plaintiff and the Class suffered damages including damages from identity theft, which may take months, if not years, to discover and detect, given the far-reaching, adverse, and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**COUNT TWO**
**Negligent Hiring and Retention**
(On Behalf of Plaintiff and the Class)

87.     Plaintiff incorporates all the preceding paragraphs.

88.     Defendants failed to exercise reasonable care in its/their hiring and retention practices to discover whether their employees, independent contractors and/or third-party vendors were unfit, incompetent, unable, or unwilling to employ adequate security measures for consumer's PII and PHI which would create a risk of harm to others in the capacity for which those third-party vendors and/or employees had been hired.

89.     As a direct and proximate result of the aforesaid acts, omissions, negligence, carelessness and/or recklessness of the defendants, or some or any of them, Plaintiff and the Class were caused to suffer invasions of their privacy, economic harms and other damages including, but not limited to: out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, the costs associated therewith;

time spent monitoring, addressing and correcting the current and future consequences of the Data Breach; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

90. Plaintiff and the Class are entitled to damages, including actual damages for the disclosure, equitable relief in the form of appropriate notice advising them of exact records and documents disclosed, equitable relief in the form of requiring Defendant to implement appropriate security measures to protect Plaintiff and Class Members' records in the future, attorney's fees and costs and punitive damages.

**COUNT THREE**
**Breach of Contract**
(On Behalf of the Class)

91. Plaintiff incorporates all the preceding paragraphs.

92. As set forth above, it is believed that some Class Members received legal services from Defendant and provided Defendant with their PHI/PII.

93. Upon information and belief, the contract between certain Class members and PPEC was supported by consideration in many forms including the payment of monies for legal services.

94. Upon information and belief, these Class Members performed pursuant to these contracts, and satisfied all conditions, covenants, obligations, and promises of the agreements.

95. Upon information and belief, under the contracts, Defendant was obligated to maintain the confidentiality of these Class Member's PHI and PII and to ensure any employee, independent contractor, vendor, or third-party to whom Defendant provided Class Member's PHI and PII ensured the confidentiality of that information.

96. Upon information and belief, Defendant's failure to maintain the confidentiality of these Class Members' PHI was a breach of Defendant's contractual obligations.

97.     Upon information and belief, Defendant's failure to maintain the confidentiality of these Class Members' PII was a breach of Defendant's contractual obligations.

98.     As a result of Defendant's breach of contract, by failing to adequately secure these Class Members' PHI and PII, these Class Members did not receive the full benefit of the bargain, and instead received services that were less valuable than described in the contracts. These Class Members, therefore, were damaged in an amount at least equal to the difference in value between what was promised and what PPEC ultimately provided.

99.     Also as a result of PPEC's breach of contract, these Class Members have suffered actual damages resulting from the theft of their PHI and PII, and remain at risk of suffering additional breaches in the future.

## COUNT FOUR
### Breach of Implied Contract
(On Behalf of Plaintiff and the Class)

100.     Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

101.     PPEC required Plaintiff and certain other Class Members to provide PHI and PII to Defendant in order to receive legal services or, in the case of Plaintiff, throughout the normal course of personal injury litigation.

102.     In providing their PHI and/or PII, Plaintiff and these Class Members entered into implied contracts with PPEC pursuant to which PPEC agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and these Class Members if their data had been breached and compromised. PPEC further agreed that such information would only be supplied to employees, independent contractors and/or vendors who would also protect such information.

103.   Each use of a PPEC service made by certain Class Members was made pursuant to a implied contract with PPEC under which PPEC agreed to safeguard and protect Plaintiff's and these Class Members' PHI and PII and to timely and accurately notify them if such information was compromised or stolen.

104.   The exchange of PHI and PII made by Plaintiff and certain Class Members was made during the normal course of personal injury litigation and pursuant to a mutually agreed-upon implied contract with PPEC under which PPEC agreed to safeguard and protect Plaintiff's and these Class Members' PHI and PII and to timely and accurately notify them if such information was compromised or stolen.

105.   Plaintiff and these Class Members would not have provided and entrusted their PHI and PII to PPEC in the absence of the implied contract between them and PPEC.

106.   Plaintiff and these Class Members fully performed their obligations under the implied contracts with PPEC.

107.   PPEC breached the implied contracts it made with Plaintiff and these Class Members by failing to safeguard and protect the PHI and PII of Plaintiff and these Class Members and by failing to provide timely and accurate notice to them that their Private Information was compromised in and as a result of the Data Breach.

108.   As a direct and proximate result of PPEC's breaches of the implied contracts between PPEC and Plaintiff and certain Class Members, Plaintiff and these Class Members sustained actual losses and damages as described in detail above.

## COUNT FIVE
### Invasion of Privacy
(On Behalf of Plaintiff and the Class)

109.   Plaintiff incorporates all the preceding paragraphs.

110.    Plaintiff and Class Members' PII and PHI is private information.

111.    Dissemination and publication of Plaintiff and Class Members' PII/PHI would be offensive to a reasonable person.

112.    The public has no legitimate interest in being apprised of Plaintiff and Class members' PII/PHI.

113.    Defendant's failure to safeguard and protect Plaintiff and Class Members' PII/PHI directly and proximately resulted in unreasonable publicity to the private lives of Plaintiff and Class members.

114.    Plaintiff and Class members have a legal interest in the privacy of their PII/PHI.

115.    Defendant's failure to safeguard and protect Plaintiff and Class Members' PII/PHI was a direct and proximate cause of an unauthorized third party accessing and obtaining Plaintiff and Class Members' PII/PHI as a matter of law.

116.    Defendant's failure to safeguard and protect Plaintiff and Class Members' PII/PHI deprived Plaintiff and Class Members of their legal interest in the privacy of that information, causing them damages.

117.    As a result of Defendant' s actions and inactions resulting in Plaintiff's and Class Members' loss of privacy, Plaintiff and Class Members were and continue to be injured and have suffered damages.

**<u>COUNT SIX</u>**
**Publication of Private Facts**
(On Behalf of Plaintiff and the Class)

118.    Plaintiff incorporates all the preceding paragraphs.

119.    Defendant, by and through its failure to adequately safeguard Plaintiff and Class Member's PHI and PII has made Plaintiff's and Class Members' information public.

120.     Plaintiff's and Class Members' private medical results, lists of treating doctors and other sensitive information were private, as Defendant has acknowledged.

121.     Dissemination of information such as the PHI and PII revealed by Defendant about Plaintiff and Class Members would be offensive to a reasonable person.

122.     Plaintiff's and other Class Members' PHI and PII is not of legitimate public concern, and there is no legitimate public interest in the public being apprised of said information.

123.     Plaintiff and other Class Members did not consent to the disclosure of their PHI and PII.

124.     As a result of Defendant's actions and inactions resulting in Plaintiff's and Class Members' loss of privacy, Plaintiff and Class Members were and continue to be injured and have suffered damages. Additionally Plaintiff and Class members are entitled to presumed damages as a result of Defendant's publication of private facts.

**COUNT SEVEN**
**Unjust Enrichment**
(On Behalf of Plaintiff and the Class)

125.     Plaintiff incorporates all the preceding paragraphs.

126.     In the alternative to the above-pleaded claims of breach of contract and breach of implied contractual duty, Plaintiff and the Class allege that they have no adequate remedy at law and bring this unjust enrichment claim.

127.     Plaintiff and Class Members conferred a monetary benefit on Defendant PPEC.

128.     Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members.

129.     Defendant also benefited from the receipt of Plaintiff's and Class Members' PHI/PII, as this was used to facilitate PPEC's provisions of legal services, including the defense of its clients in personal injury litigation, for which it was presumably paid.

130.     The amounts paid to Defendant as a result of PPEC's use of Plaintiff's and Class Members' PII and PHI, including the provision of legal services, should have been used by Defendant in part to pay for the administrative costs of reasonable data privacy and security practices and procedures.

131.     As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages.

132.     Under principles of equity, Defendant should not be permitted to retain the money it collected as a result of its use of Plaintiff's and Class Members' PII and PHI because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members were fairly entitled to, and which were otherwise mandated by federal, state and local laws, as well as industry standards.

133.     PPEC should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by PPEC.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all Class Members proposed in the Complaint, respectfully requests that the Court enter judgment in her favor and against PPEC as follows:

a.  For an Order certifying the Class as defined here, and appointing Plaintiff and her Counsel to represent the Class;
b.  For equitable relief enjoining PPEC from engaging in the wrongful conduct complained of here pertaining to the misuse and/or disclosure of Plaintiff and Class Members' PHI and PII, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiff and Class Members;

c.  For equitable relief compelling PPEC to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of PHI and PII compromised.

d.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of PPEC's wrongful conduct;

e.  For an award of actual damages and compensatory damages, in an amount to be determined;

f.  For an award of special or punitive damages, as allowable by law;

g.  For an award of costs of suit and attorneys' fees, as allowable by law; and

h.  Such other and further relief as the court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: February 2, 2024

MDR LAW GROUP

By: _____

Andrew B. Delaney
P.O. Box 607
100 N Main St.
Barre, VT 05641
andrew@mdrvt.com
Tel: (802) 479-0568

KIM LAW FIRM LLC
*Pro Hac Vice to be Filed*
Yongmoon Kim
ykim@kimlf.com
411 Hackensack Ave, Suite 701
Hackensack, NJ 07601
Tel: (201) 273-7117

*Attorneys for Plaintiff and the Putative Class*