# UNITED STATES DISTRICT COURT

# DISTRICT OF VERMONT

|  |  |
|---|---|
| SHAWNA GABORIAULT, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10 <br><br> Defendant. | Civil Action No. 2:24-cv-00113 |

## <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS</u>

**DOWNS RACHLIN MARTIN PLLC**

*/s/ Matthew S. Borick*
Matthew S. Borick
199 Main Street, P.O. Box 190
Burlington, VT 05401
Telephone: (802)-863-2375
mborick@drm.com

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ Christopher J. Seusing*
Christopher J. Seusing
*Pro hac vice*
33 Riverside Avenue, Suite 502
Westport, CT 06880
Telephone:  (475)-755-7040
cseusing@wshblaw.com

*Attorneys for Defendant Primmer Piper Eggleston & Cramer PC*

.

Dated: May 2, 2024

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF RELEVANT FACTS ..........................................................2

III.    ARGUMENT ......................................................................................................4

      A.      Plaintiff lacks Article III standing and the Complaint must be dismissed pursuant to FRCP 12(b)(1) ...........................................................................4

            1.      Plaintiff fails to properly allege any injuries; therefore, Plaintiff's Complaint fails to establish subject matter jurisdiction. ...........................4

                  (a).     A mere risk of future harm is not a concrete injury. ......................6

                  (b).     Plaintiff's claim for mitigation expenses is insufficient to establish an injury-in-fact. ...............................................................8

                  (c).     Plaintiff's claim for lost time is insufficient to establish an injury-in-fact. ...............................................................................9

                  (d).     Plaintiff's claim for diminution in value is insufficient to establish an-injury-in-fact. ............................................................10

                  (e).     Plaintiff's claim for invasion of privacy is insufficient to establish an injury-in-fact. .............................................................11

                  (f).     Plaintiff's claim for loss of benefit of the bargain is insufficient to establish an injury-in-fact. .....................................12

            2.      Plaintiff fails to properly trace her alleged injuries to the Data Security Incident; therefore this Court lacks subject matter jurisdiction. ........................................................................................14

      B.      Plaintiff's Complaint fails to state a claim upon which relief can be granted ...............................................................................................................15

            1.      Plaintiff's negligence claim fails as a matter of law ................................16

                  (a).     PPEC owed no legal duty to the Plaintiff. ....................................16

                  (b).     Plaintiff has not alleged PPEC breached any alleged duty. ...........19

                  (c).     Plaintiff has not alleged sufficient damages for a negligence claim ...............................................................................................19

            2.      Plaintiff's negligent hiring and retention claim fails as a matter of law ...........................................................................................................21

            3.      Plaintiff's breach of contract claim fails as a matter of law. ....................22

            4.      Plaintiff's breach of implied contract claim fails as a matter of law. .........24

            5.      Plaintiff's invasion of privacy claim fails as a matter of law. ...................26

6.      Plaintiff's publication of private facts claim fails as a matter of law. .........27

7.      Plaintiff's unjust enrichment claim fails as a matter of law. ......................29

C.      Plaintiff is unable to certify a class. ........................................................30

IV.    CONCLUSION ..................................................................................................34

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Allison v. Aetna, Inc.*,
09-2560, 2010 WL 3719243 (E.D. Pa. Mar. 9, 2010) ...........................................................11

*Aponte v. Ne. Radiology, P.C.,*
No. 21 CV 5883 (VB), 2022 WL 1556043 (S.D.N.Y. May 16, 2022),
appeal dismissed, No. 22-1284, 2022 WL 4125739 (2d Cir. Aug. 9, 2022) ........................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................*passim*

*Audsley v. RBS Citizens, N.A.,*
No. 5:10-CV-208, 2011 WL 1397312 (D. Vt. Apr. 11, 2011) ..............................................27,28

*Ballou v. Air Methods Corp.*,
No. 2:20-CV-00077, 2021 WL 3423594 (D. Vt. Aug. 5, 2021)...........................................24

*Barrette v. Vill. of Swanton*,
No. 2:22-CV-00129, 2024 WL 1175078 (D. Vt. Mar. 19, 2024)........................................16,17

*Bearss v. Wilton*,
No. 2:08-CV-248, 2010 WL 11523749 (D. Vt. Aug. 10, 2010),
aff'd, 445 F. App'x 400 (2d Cir. 2011)..................................................................................27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................15,16

*Bombard v. Volp*,
44 F. Supp. 3d 514 (D. Vt. 2014)........................................................................................16

*Bourne v. Lajoie*,
149 Vt. 45, 540 A.2d 359 (1987) ......................................................................................23

*Cashman v. Dolce Int'l/Hartford, Inc.*,
225 F.R.D. 73 (D. Conn. 2004) ........................................................................................32

*Chambliss v. Carefirst, Inc.,*
189 F. Supp. 3d 564 (D. Md. 2016)...................................................................................10,13

*Chaney v. Vermont Bread Co*.,
No. 2:21-CV-120, 2022 WL 3443973 (D. Vt. Aug. 17, 2022)..............................34

*Chenesky v. N.Y. Life Ins. Co.*,
No. 07-CV-11504 (WHP), 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011)...........................31

*Citizens for Resp. & Ethics in Washington v. Trump*,
953 F.3d 178 (2d Cir. 2019), as amended (Mar. 20, 2020),
cert. granted, judgment vacated, 141 S. Ct. 1262, 209 L. Ed. 2d 5 (2021)...........................14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..............................................................................6

*Cooper v. Bonobos, Inc*.,
No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ...................................10

*Cox v. Valley Hope Ass'n*,
No. 2:16-CV-04127-NKL, 2016 WL 4680165 (W.D. Mo. Sept. 6, 2016)...........................13

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,
183 F.3d 151 (2d Cir. 1999)........................................................................25

*Davis v. Hain Celestial Grp., Inc.*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...............................................................30

*De Medicis v. Ally Bank*,
No. 21 CIV. 6799 (NSR), 2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022)..............................14

*Doe v. Karadzic*,
192 F.R.D. 133 (S.D.N.Y. 2000) ....................................................................32

*Doe v. Newbury Bible Church*,
No. 1:03-CV-211, 2005 WL 1862118 (D. Vt. July 20, 2005),
report and recommendation adopted, No. 103CV211,
2005 WL 1962260 (D. Vt. Aug. 15, 2005), aff'd, 509 F.3d 69 (2d Cir. 2007)....................17

*Duqum v. Scottrade, Inc.*,
4:15-CV-1537, 2016 WL 3683001, 2016 U.S. Dist. LEXIS 89992
(E.D. Mo. July 12, 2016) ..........................................................................12

*Ehlers v. Ben & Jerry's Homemade Inc*.,
No. 2:19-CV-00194, 2020 WL 2218858 (D. Vt. May 7, 2020) ...........................................29

*Elkind v. Revlon Consumer Prods. Corp*.,
2015 WL 2344134  (E.D.N.Y. May 14, 2015) ....................................................30

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.,*
No. 15-CV-02129-MSK-NYW, 2016 WL 8578096 (D. Colo. June 20, 2016), report
and recommendation adopted, No. 15-CV-02129-MSK-NYW, 2016 WL 8578252
(D. Colo. Sept. 21, 2016) ................................................................................................... 13

*Felis v. Downs Rachlin Martin PLLC,*
2015 VT 129, 133 A.3d 836 (2015) ..................................................................................... 17

*Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735 (W.D.N.Y. 2017),
on reconsideration, 304 F. Supp. 3d 333 (W.D.N.Y. 2018),
order clarified, 502 F. Supp. 3d 724 (W.D.N.Y. 2020) ......................................... 5,10,14

*Ferrisburgh Realty Invs. v. Schumacher,*
2010 VT 6, 187 Vt. 309, 992 A.2d 1042 (2010) ................................................................. 22

*Flynn v. DIRECTV, LLC,*
No. 3:15-CV-1053 (JAM), 2016 WL 4467885 (D. Conn. Aug. 23, 2016) ......................... 31

*Giordano v. Wachovia Sec., LLC*, 06-476,
2006 WL 2177036, 2006 U.S. Dist. LEXIS 52266 (D. N.J. July 31, 2006) ....................... 12

*Hamberger v. Eastman,*
106 N.H. 107, 206 A.2d 239 (1964) ................................................................................... 28

*Hammond v. The Bank of New York Mellon Corp.*,
No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..................... 5

*Harris v. Carbonneau,*
165 Vt. 433, 685 A.2d 296 (1996) ..................................................................................... 26

*Hartigan v. Macy's, Inc.,*
501 F. Supp. 3d 1 (D. Mass. 2020) ..................................................................................... 5

*Haverly v. Kaytech, Inc.*,
169 Vt. 350, 738 A.2d 86 (1999) ....................................................................................... 21

*Havill v. Woodstock Soapstone Co.*,
2004 VT 73, 177 Vt. 297, 865 A.2d 335 (2004) ................................................................. 25

*Hedges v. Durrance,*
2003 VT 63, 175 Vt. 588, 834 A.2d 1 (2003) .............................................................. *passim*

*Hodgdon v. Mount Mansfield Co.*,
160 Vt. 150, 624 A.2d 1122 (1992) ................................................................................... 26

*Howley v. Kantor*,
105 Vt. 128, 163 A. 628 (1933) ........................................................................20

*Ianelli v. U.S. Bank*,
2010 VT 34, 187 Vt. 644, 996 A.2d 722 (2010) ................................................23

*In re Am. Collection Agency Data Sec. Breach Litig.*,
19-MD-2904, 2021 WL 5937742 (D. N.J. Dec. 16, 2021) ..................................12

*In re: Cmty. Health Sys., Inc.*,
No. 15-CV-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ................14

*In re Montagne*,
No. 08-1024, 2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010) ...........................22

*In re Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) .......................................................................33

*In re Practicefirst Data Breach Litig.*,
No. 121CV00790JLSMJR, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022),
report and recommendation adopted, No. 21CV790JLSMJR, 2022 WL 3045319
(W.D.N.Y. Aug. 1, 2022)........................................................................5,11,12

*In re Zappos.com*, Inc.,
108 F. Supp. 3d 949 (Dist. Nev. 2015) .........................................................11,13

*Jamie S. v. Milwaukee Pub. Sch.*,
668 F.3d 481 (7th Cir. 2012) ............................................................................33

*Jantzer v. Elizabethtown Cmty. Hosp.*,
No. 819CV00791BKSDJS, 2020 WL 2404764 (N.D.N.Y. May 12, 2020) .......5,7

*Keach v. BST & Co. CPAs, LLP*,
71 Misc. 3d 1204(A), 142 N.Y.S.3d 790 (N.Y. Sup. Ct. 2021)............................7

*Khan v. Children's Nat'l Health Sys.*,
188 F. Supp. 3d 524 (D. Md. 2016) ...................................................................11

*Knight v. Rower*,
170 Vt. 96, 742 A.2d 1237 (1999) .....................................................................17

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021) ............................................................12

*Lexington Ins. Co. v. Rounds*,
349 F.Supp.2d 861 (D.Vt.2004).........................................................17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................4

*Madowitz v. Woods at Killington Owners' Ass'n, Inc.*,
2014 VT 21, 196 Vt. 47, 93 A.3d 571 (2014)......................................22

*Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*,
2019 WL 5081061 (D. Vt. Oct. 10, 2019) ............................................29

*Maunsell v. Bank of New York Mellon Tr. Co.*,
No. 2016-100, 2016 WL 5344053 (Vt. Sept. 1, 2016) ......................17,18

*McLaughlin v. Langrock Sperry & Wool, LLP*,
No. 2:19-CV-00112, 2021 WL 535873 (D. Vt. Feb. 12, 2021)...............20

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021)...........................................................6,7,10

*Miller v. Syracuse Univ.*,
662 F. Supp. 3d 338 (N.D.N.Y. 2023) ...................................................8

*Mooers v. Middlebury Coll.*,
No. 2:20-CV-00144, 2021 WL 4225659 (D. Vt. Sept. 16, 2021) ......22,29

*Montague v. Hundred Acre Homestead, LLC*,
2019 VT 16, 209 Vt. 514, 208 A.3d 609 (2019).................................16,17

*Moreau v. Sylvester*,
2014 VT 31, 196 Vt. 183, 95 A.3d 416 ...............................................29

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)...........................................................................32

*Peck v. Counseling Serv. of Addison Cnty., Inc.*,
146 Vt. 61, 499 A.2d 422 (1985) .........................................................16

*Pena v. Brit. Airways, PLC (UK)*, No. 18CV6278LDHRML,
2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020), aff'd sub nom. *Pena v. Brit. Airways, PLC*, 849 F. App'x 13 (2d Cir. 2021)...................................................9,10

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
45 F.4th 816 (5th Cir. 2022) .................................................................9

*Pilgrim v. Universal Health Care, LLC*,
660 F.3d 943 (6th Cir. 2011) ................................................................31

*Pinewood Manor, Inc. v. Vt. Agency of Transp.*,
164 Vt. 312, 668 A.2d 653 (1995) .........................................................22

*Provencher v. Bimbo Bakeries USA, Inc.*,
No. 2:22-CV-198, 2023 WL 6050398  (D. Vt. Aug. 7, 2023)................30

*Quintero v. Metro Santurce, Inc.*,
No. CV 20-01075-WGY, 2021 WL 5855752 (D.P.R. Dec. 9, 2021)....5

*Rand v. Travelers Indem. Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022)........................................................8

*Remijas v. Neiman Marcus Group*,
794 F.3d 688 (7th Cir. 2015) .................................................................13

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .............................................................14

*Retail Pipeline, LLC v. Blue Yonder Grp., Inc.*,
557 F. Supp. 3d 535 (D. Vt. 2021).........................................................24

*Revision Mil. Ltd. v. Gideon Servs., Inc.*,
No. 2:17-CV-128, 2017 WL 5632700 (D. Vt. Oct. 31, 2017)...............25

*Rivera-Marrero v. Banco Popular de Puerto Rico*,
No. CV 22-1217 (ADC), 2023 WL 2744683 (D.P.R. Mar. 31, 2023) ...............5

*Rudolph v. Hudson's Bay Co.*,
No. 18-CV-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019)................10

*Russell v. Pallito*,
No. 5:15-CV-126-GWC-JMC, 2019 WL 2125101 (D. Vt. Jan. 7, 2019),
report and recommendation adopted, No. 5:15-CV-126, 2019 WL 2125523
(D. Vt. May 15, 2019).............................................................................33

*Shaffer v. Kaplan*,
No. 2:11-CV-239, 2014 WL 2009103 (D. Vt. May 16, 2014) ..............29

*Shafran v. Harley-Davidson*,
2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ..........................................9

*Shulman v. Concord Gen. Mut. Ins.* Co.,
618 F. Supp. 3d 165 (D. Vt. 2022)......................................................................20

*Smith v. Country Village Intern., Inc.*,
183 Vt. 535, 944 A.2d 240 (2007) .....................................................................22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................*passim*

*Springfield Hydroelectric Co. v. Copp*,
172 Vt. 311, 779 A.2d 67 2001) .......................................................................20

*St. Ambroise Azagoh-Kouadio v. Roman Cath. Diocese of Burlington*,
No. 2016-266, 2016 WL 7364740 (Vt. Dec. 16, 2016) ......................................23

*Stapleton on behalf of C.P. v Tampa Bay Surgery Ctr., Inc.,*
2017 WL 3732102 , 2017 [MD Fla, Aug. 30, 2017,
No. 8:17-cv-1540-T-30AEP, Moody, Jr., J.])......................................................8

*Steven v. Carlos Lopez & Assocs., LLC*,
422 F. Supp. 3d 801 (S.D.N.Y. 2019)..................................................................6

*Stollenwerk v. Tri-W. Health Care All.*,
254 F. App'x 664 (9th Cir. 2007)......................................................................14

*Stopford v. Milton Town Sch. Dist*,
2018 VT 120, 209 Vt. 171, 202 A.3d 973 ...........................................................17

*Susan B. Anthony List v. Driehaus*,
134 S. Ct. 2334 (2014)...................................................................................6

*Town of Rutland v. F.A.S. Trucking, Inc.*,
No. 2021-144, 2022 WL 131225 (Vt. Jan. 14, 2022) ..........................................20

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)...........................................................................*passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).....................................................................................4,13

*Walsh v. Cluba*,
2015 VT 2, 198 Vt. 453, 117 A.3d 798 ...............................................................20

*Weed v. Weed*,
2008 VT 121, 185 Vt. 83, 968 A.2d 310 (2008)...................................................24

*Wendell v. Union Mut. Fire Ins. Co.,*
123 Vt. 294, 87 A.2d 331 (1963) ..............................................................................26

*Whalen v. Michaels Stores, Inc.,*
689 F. App'x 89 (2d Cir. 2017) ...........................................................................4,5,9

*Winfield v. Citibank, N.A.,*
842 F. Supp. 2d 560 (S.D.N.Y. 2012)......................................................................31

*Wynkoop v. Stratthaus,*
2016 VT 5,  201 Vt. 158, 136 A.3d 1180 ................................................................29

*Zinser v. Accufix Research Institute, Inc.,*
253 F.3d 1180 (9th Cir.2001) .................................................................................32

**Other Authority**

Ballentine's Law Dictionary, 3rd edition ....................................................................26

Notes of Advisory Committee on Rules, 39 F.R.D. 69, 102 (1966)...................................33

Restatement (Second) of Agency § 213........................................................................21

Restatement (Second) of Contracts § 71(1) (1981) ...............................................24

Restatement (Second) of Contracts § 352 (1981) ................................................22

Restatement (Second) of Torts § 315.......................................................................16

Restatement (Second) of Torts §§ 652A (1977)....................................................26

Restatement (Second) of Torts §§ 652B (1977)....................................................26

Restatement (Second) of Torts § 652D (1977)......................................................28

Webster's Third New International Dictionary ...............................................................26

**Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................*passim*

Fed. R. Civ. P. 12(f) ......................................................................................*passim*

Fed. R. Civ. P. 23(a).................................................................................................1,31

Fed. R. Civ. P. 23(a)(2)..................................................................................................34

Fed. R. Civ. P. 23(b)......................................................................................................31

Fed. R. Civ. P. 23(b)(1)(A)............................................................................................32

Fed. R. Civ. P. 23(b)(1)(B)............................................................................................32

Fed. R. Civ. P. 23(b)(2)..................................................................................................33

Fed. R. Civ. P. 23(b)(3)...............................................................................................33,34

**Statutes**

9 V.S.A. § 2435.........................................................................................................18,19

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(f) and Local Rule 7, Defendant Primmer Piper Eggleston & Cramer PC hereby moves to dismiss the Class Action Complaint for Damages filed by Plaintiff Shawna Gaboriault and to strike the class allegations in the Complaint. For the reasons set forth in the following Memorandum of Law, Defendant respectfully requests that the Court GRANT the Motion.

## MEMORANDUM OF LAW

## I.      INTRODUCTION

Plaintiff Shawna Gaboriault ("Plaintiff"), individually and as personal representative of a putative class, filed a class action lawsuit on February 2, 2024 alleging that the law firm of Primmer Piper Eggleston & Cramer PC ("PPEC") failed to protect her personal information from a sophisticated cyberattack carried out by unknown criminals. Specifically, Plaintiff asserts causes of action for (1) negligence, (2) negligent hiring and retention, (3) breach of contract, (4) breach of implied contract, (5) invasion of privacy, (6) publication of private facts, and (7) unjust enrichment arising from this cyberattack. However, as discussed in further detail below, PPEC moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiff's claims for lack of Article III standing because she has failed to allege sufficient damages required for standing and has failed to allege how her damages are fairly traceable to the cyberattack on PPEC. PPEC further moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's claims are legally deficient on multiple grounds. Specifically, no legal duty exists to support her negligence claims, no contract exists to support her contract claims, no intentional conduct has been alleged to support her invasion of privacy and publication of private information claims, and her unjust enrichment claim is precluded by her claims for monetary damages. Finally, PPEC moves pursuant to Fed. R. Civ. P. 12(f) to strike class allegations for failure to satisfy the requirements of Fed. R. Civ. P. 23(a) and (b)

on grounds that her lack of damages and the divergent damages that could be suffered by class members is fatal to class certification. Accordingly, as discussed more fully below, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety and award such other relief as warranted.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff alleges that she is a resident of Vermont and that PPEC obtained her "PHI and PII during the pendency of the personal injury matter captioned *Shawna Gaboriault v. Eric Gilbertson*, 412-8-19 Wncv, where PPEC represented the defendant, Eric Gilbertson." *See id*. at ¶¶ 11-12. Plaintiff does not allege that PPEC represented her, nor has PPEC ever represented her. *See* Declaration of Shireen T. Hart in Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint and Motion to Strike Class Allegations, at ¶ 3. Furthermore, at no point in time did PPEC interact with Plaintiff in an individual capacity. *See id.*, at ¶ 4. Rather, any alleged interaction between Plaintiff and PPEC was strictly on behalf of Mr. Gilbertson as his attorney. *See id.* Plaintiff alleges her "PHI and PII was exchanged during the normal course of litigation." *See id.* at ¶ 13. Plaintiff further alleges she received notice of a data security incident on August 4, 2022, via a Breach Letter, advising her that:

> In November 2021, an unauthorized third party gained access to our network and copied a limited amount of data to an external data hosting site. We worked with the hosting site to lock down access to the account and delete the data. We have no reason to believe that any personal or confidential information has been disseminated or misused for the purpose of committing fraud or identity theft. We do not know the identity of the individual or individuals responsible for this incident. We are providing you with notice out of an abundance of caution as confidential information was placed at risk. A description of the attack and our response follows. The attack occurred in November of 2021. Malware was placed on Primmer's system through a bogus email link.
>
> A set of documents equaling approximately 76 GBs in size was identified for copying to a server in New Zealand. When the copying was discovered and stopped, 46 GBs

of data had been copied. The server host terminated all access to the data. During the course of the download and prior to its stoppage, data that had been downloaded was potentially accessible.

(hereafter, the "Data Security Incident"). *See id.* at ¶ 4.

Plaintiff alleges that as a result of the Data Security Incident, Plaintiff and Class Members "have been placed at an imminent, immediate, and continuing **risk of harm** from identity theft and identity fraud, requiring them to take time and effort to mitigate the actual and **potential impact** of the Data Breach on their lives[.]" *See id.* at ¶ 51 (emphasis added).

Plaintiff alleges that as a result of the Data Security Incident, Plaintiff and Class Members have suffered "economic damages and other actual harm for which they are entitled to compensation," including:

> [(a)] theft of their personal, medical, and/or financial information; [(b)] the reputational harm suffered by Defendant's publication of private facts in the form of Plaintiff's and Class Members' medical records; [(c)] the imminent and impending injury flowing from **potential fraud and identity theft** posed by their personal and medical information being placed in the hands of criminals; [(d)] the untimely and inadequate notification of the Data Breach; [(e)] the improper disclosure of Plaintiff's and Class Member's private information; [(f)] loss of privacy; [(g)] ascertainable loss in the form of out-of-pocket expenses and costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud; [(h)] ascertainable loss in the form of lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; [(i)] ascertainable losses in the form of deprivation of the value of their PII and PHI, for which there is a well-established national and international market; [(j)] the loss of the opportunity to control how their PII is used; [(k)] the compromise and continuing publication of their PII.

*See id.* at ¶ 53 (emphasis added).

Notably, Plaintiff **fails to allege any specific instances** of improper use or publication of her PHI and/or PII (hereafter, "Personal Information"). *See* Complaint, *generally.*

---

### III.    ARGUMENT

#### A.    Plaintiff lacks Article III standing and the Complaint must be dismissed pursuant to FRCP 12(b)(1).

A United States District Court has subject matter jurisdiction only where the plaintiff has "[s]tanding to sue" under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). Plaintiffs bear the burden of adequately pleading standing, pursuant to Article III of the Constitution, in order to state a claim for relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).To satisfy Article III's standing requirements, (1) the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury must be "fairly traceable" to the challenged conduct of the defendant, and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. 555, 560-61; *Spokeo*, 578 U.S. 330, 338-39. And standing is not dispensed in gross; rather, plaintiffs **must demonstrate standing for each claim** that they press and for each form of relief that they seek. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). **Every class member must have Article III standing** in order to recover individual damages. *Id.*  Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 466 (2016)). Accordingly, for the below reasons, Plaintiff fails to satisfy her standing requirements and her Complaint must be dismissed pursuant to Rule 12(b)(1).

1.    Plaintiff fails to properly allege any injuries; therefore, Plaintiff's Complaint fails to establish subject matter jurisdiction.

In the context of data breaches, courts within the Second Circuit have continuously favored dismissal of complaints for failure to sufficiently allege a concrete injury necessary to confer Article III standing as an injury must be real, and not abstract. *See Whalen v. Michaels Stores, Inc.,*

689 F. App'x 89, 91 (2d Cir. 2017); *In re Practicefirst Data Breach Litig.*, No. 121CV00790JLSMJR, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022), report and recommendation adopted, No. 21CV790JLSMJR, 2022 WL 3045319 (W.D.N.Y. Aug. 1, 2022); *Jantzer v. Elizabethtown Cmty. Hosp.*, No. 819CV00791BKSDJS, 2020 WL 2404764, at *6 (N.D.N.Y. May 12, 2020); *Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 756 (W.D.N.Y. 2017), on reconsideration, 304 F. Supp. 3d 333 W.D.N.Y. 2018), order clarified, 502 F. Supp. 3d 724 (W.D.N.Y. 2020), and order clarified, 502 F. Supp. 3d 724 (W.D.N.Y. 2020). Courts within the neighboring First Circuit have also continuously favored dismissal. *See Hartigan v. Macy's, Inc.,* 501 F. Supp. 3d 1, 7 (D. Mass. 2020); *Rivera-Marrero v. Banco Popular de Puerto Rico*, No. CV 22-1217 (ADC), 2023 WL 2744683, at *2 (D.P.R. Mar. 31, 2023); *Quintero v. Metro Santurce, Inc.*, No. CV 20-01075-WGY, 2021 WL 5855752, at *9 (D.P.R. Dec. 9, 2021).

As a preliminary matter, Plaintiff admits that, as it relates to the Data Security Incident, "the information **varied by individual**" and "**may** have included" various types of Personal Information. *See* Complaint, at ¶ 8 (emphasis added). Plaintiff also cites to the Breach Letter, which alleges that her date of birth and medical information **may** have been exfiltrated as part of the Data Security Incident. *See id.*, Ex. A, at 3. Notably, the Breach Letter **does not state** that her Social Security number **was**, **in fact**, exposed. Plaintiff also alleges that her Personal Information was "**likely disclosed** to third persons and cyber criminals." *See id.* at ¶ 46 (emphasis added). However, Plaintiff fails to allege specific facts that her Personal Information was actually disclosed to unauthorized third parties, or why it is even likely to have been exposed. The Breach Letter also states that "we are not aware of any instances of dissemination, fraud or identity theft that have

occurred as a result of the incident," "we are not aware of any access to the data," and "the attack was deemed a failure." *See id.*, Ex. A, at 1-2. Nearly two and a half years have passed since the Data Security Incident, and Plaintiff fails to allege a single instance where she has suffered actual, concrete and particularized injuries in the form of identity theft or actual misuse of her Personal Information. Indeed, as stated in the Breach Letter, it is ***un***likely that Plaintiff's Personal Information was exposed and that she suffered any injury. As explained further below, her alleged damages are entirely speculative and cannot be traced to the Data Security Incident. Therefore, it is clear she lacks Article III standing, warranting dismissal of her Complaint.

(a).    <em>A mere risk of future harm is not a concrete injury.</em>

Plaintiff cannot "manufacture" standing by inflicting harm on herself based on fears of hypothetical, unsubstantiated, or speculative future harm that is not certainly impending, even if the fear is not fanciful, irrational, or clearly unreasonable. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416-19 (2013). An allegation of threatened injury in the future is sufficient to establish standing only "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Steven v. Carlos Lopez & Assocs., LLC*, 422 F. Supp. 3d 801, 804 (S.D.N.Y. 2019) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)). In *McMorris v. Carlos Lopez & Assocs., LLC*, the Second Circuit held that a risk of future harm can satisfy the injury-in-fact requirement if there is a "substantial risk of future injury," where plaintiff "can show that at least some part of the compromised dataset **has been misused**." *Id.*, 995 F.3d 295, 301 (2d Cir. 2021) (emphasis added). Here, Plaintiff alleges that "as a direct and proximate result of PPEC's wrongful action and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing **risk of harm**[.]" *See* Complaint, at ¶ 51 (emphasis added). Plaintiff alleges that as a result of the Data Security Incident, she "will continue

to be at heightened **risk** for medical fraud, financial fraud, and identity theft[.]" *See* Complaint, at ¶ 11 (emphasis added). However, by her own admission, Plaintiff asserts merely a **potential** and purely speculative risk rather than an actual harm. Plaintiff fails to plead that her Personal Information has been actually misused. The potential for injury based on the supposition that her Personal Information has been improperly utilized is not a concrete injury in the post-*TransUnion* and *McMorris* world.

Furthermore, Plaintiff fails to specifically allege that her Social Security number was exfiltrated in the Data Security Incident, and therefore there is no substantial risk of future harm. While Plaintiff alleges her medical information was exfiltrated, this is not enough to conjure standing where Social Security numbers are not involved. *See Jantzer v. Elizabethtown Cmty. Hosp.*, No. 819CV00791BKSDJS, 2020 WL 2404764, at *5 (N.D.N.Y. May 12, 2020). In *Jantzer*, the court held that plaintiff did not have standing even where the data security incident involved billing and treatment information, such as the date of treatment, information identifying the insurer that provided reimbursement, and payment dates and time. *Id*.

Here, Plaintiff alleges that the Data Security Incident occurred in November 2021. *See* Complaint, at ¶ 5. Plaintiff cannot in good faith argue threatened injury is certainly impending or substantial risk of harm will occur, when nearly two and a half years have passed and she has still failed to allege a single instance of identity theft or actual misuse of her Personal Information. *See Keach v. BST & Co. CPAs, LLP*, 71 Misc. 3d 1204(A), 142 N.Y.S.3d 790 (N.Y. Sup. Ct. 2021) ("The intrusion into BST's computer systems occurred in early December 2019. Thus, nearly 16 months have passed without incidents of identity theft, fraud or similar misuse of the compromised personal information of CCP members…This lengthy period without incident counsels against finding injuries that are imminent or substantially likely to occur."). Furthermore, a "provision of

free credit monitoring to those potentially affected by a data breach…further 'lessen[s] risks of imminent injury'" *Id*. at *6 n.4 (quoting *Stapleton on behalf of C.P. v Tampa Bay Surgery Ctr., Inc.,* 2017 WL 3732102, *3, 2017 US Dist LEXIS 139661, *6 (MD Fla, Aug. 30, 2017, No. 8:17-cv-1540-T-30AEP, Moody, Jr., J.)). Here, as free identity protection and credit monitoring were provided, Plaintiff has not suffered an imminent risk of injury. *See* Complaint, Ex. B, at 2.

(b).    *Plaintiff's claim for mitigation expenses is insufficient to establish an injury-in-fact.*

"Expenses '**reasonably incurred** to mitigate [the] risk' of identity theft in the future may also qualify as an injury-in-fact, but only if the plaintiff plausibly alleges a substantial risk of the future identify theft." *Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 352 (N.D.N.Y. 2023) (quoting *Rand v. Travelers Indem*. Co., 637 F. Supp. 3d 55 (S.D.N.Y. 2022) (emphasis added). Plaintiff alleges she suffered "ascertainable losses in the form of out-of-pocket expenses and costs associated with the prevention, detection, recovery and remediation from identity theft or fraud" and "ascertainable losses in the form of lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and **future consequences** of the Data Breach." *See* Complaint, at ¶ 53 (emphasis added). Again, as explained above, Plaintiff fails to allege that she is at a substantial risk for future identity theft, fails to allege that her Personal Information was misused, and fails to specifically allege her Social Security number was exfiltrated. While Plaintiff seeks mitigation expenses, they are premised on "future consequences of the data breach," which explained above, is not enough to conjure an injury-in-fact. *See* Complaint, at ¶ 53. Plaintiff also fails to allege how her alleged mitigation costs are reasonable. Specifically, Plaintiff admits that PPEC "provided identity protection and credit monitoring services through Experian." *See* Complaint, Ex. B, at 2-4. Plaintiff fails to allege how

the identity protection and credit monitoring services provided through Experian are inadequate. Additionally, Plaintiff fails to allege that she even signed-up for the free identity protection and credit monitoring services. As such, Plaintiff fails to allege that her mitigation expenses were reasonable. Furthermore, as to Plaintiff's allegations of lost opportunity costs and lost wages, she fails to allege specific facts regarding what opportunity she was deprived of, the cost of the opportunity, or if she took time off from work as a result of the Data Security Incident.

> (c).    *Plaintiff's claim for lost time is insufficient to establish an injury-in-fact.*

Lost time does not confer an injury-in-fact to establish standing. *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022). In *Perez*, the court held that the plaintiff "doesn't offer a common-law analog to the time-based injury she claims to have suffered. In other words, she has not met her 'burden [to] demonstrate[e] that [she has] standing' based on that theory." *Id.* (quoting *TransUnion*, 141 S. Ct. 2190, 2207). The court in *Perez* also observed that "we are not aware of any tort that makes a person liable for wasting another's time." *Id.; see also Pena v. Brit. Airways, PLC (UK)*, No. 18CV6278LDHRML, 2020 WL 3989055, at *3 (E.D.N.Y. Mar. 30, 2020), aff'd sub nom. *Pena v. Brit. Airways, PLC*, 849 F. App'x 13 (2d Cir. 2021) ("Plaintiff's lost time and expenses incurred in addressing the breach are not sufficient to confer standing. That is, the time and expense Plaintiff allegedly devoted to credit monitoring and the mitigation of the identity theft, are not redressable injuries"); *Shafran v. Harley-Davidson*, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (holding that credit monitoring costs sought by plaintiff to protect against the risk of future identity theft did not constitute an actual and legally cognizable injury); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 91 (2d Cir. 2017) (rejecting plaintiff's argument that lost time is enough to establish an injury-in-fact and holding that plaintiff "pleaded no specifics about any time or effort that she herself has spent monitoring her credit");

*McMorris,* 995 F.3d at 303 (where plaintiffs "have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury").

Here, Plaintiff merely alleges she suffered ascertainable losses "associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the data breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud." *See* Complaint, at ¶ 53. However, given the myriad of cases cited above, Plaintiff should not be able to establish an injury-in-fact based on lost time. Plaintiff fails to allege the specifics about the time or effort that she herself has spent monitoring her credit. Plaintiff also fails to plead that Vermont law recognizes the time-based injury she is claiming.

> (d). *Plaintiff's claim for diminution in value is insufficient to establish an-injury-in-fact.*

Courts have consistently "rejected allegations that the diminution in value of personal information can support standing," particularly where the plaintiffs "have not alleged that they attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information." *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022) (quoting *Fero* 236 F. Supp. 3d 735, 754) (quoting *Chambliss v. Carefirst, Inc.,* 189 F. Supp. 3d 564, 572 (D. Md. 2016)); *see also Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713, at *8 (S.D.N.Y. May 7, 2019); *Pena,* 2020 WL 3989055, at *3. Here, Plaintiff alleges she (and Class Members) suffered "ascertainable losses in the form of deprivation of the value of their PII and PHI, for which there is a well-established national and international market." *See* Complaint, at ¶ 53. However, Plaintiff

---

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS

has wholly failed to establish any of the minimum necessary elements to support her allegation of diminished value related to her Personal Information. To wit, there are no allegations indicating that Plaintiff attempted to sell her Personal Information, that she plans to sell her Personal Information in the future, or that she was foreclosed from entering into a transaction related to her Personal Information.

        *(e).*    *Plaintiff's claim for invasion of privacy is insufficient to establish an injury-in-fact.*

In *In re Practicefirst Data Breach Litig.,* the court held that "even if plaintiffs could plead facts sufficient to allege the tort of public disclosure of private information, the Court would still find a lack of subject matter jurisdiction here. Indeed, this theory of standing has been rejected in the data breach context where, like in this case, plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure." *Id.*, No. 121CV00790JLSMJR, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022), report and recommendation adopted, No. 21CV790JLSMJR, 2022 WL 3045319 (W.D.N.Y. Aug. 1, 2022) (citing *Khan v. Children's Nat'l Health Sys.,* 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting plaintiff's argument that the data breach caused a loss of privacy that constituted an injury-in-fact because no potential damages were identified arising from the loss and therefore plaintiff failed to allege a concrete and particularized injury); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (plaintiffs who failed to establish standing based on imminent risk of future harm caused by data breach could not establish standing on alternative theory of loss of privacy because "even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amounts to a concrete and particularized injury."); *Allison v. Aetna, Inc.*, 09-2560, 2010 WL 3719243, 2010 U.S. Dist. LEXIS 22373 (E.D. Pa. Mar. 9, 2010) (no standing in data breach case, even where

claim involved invasion of privacy); *Giordano v. Wachovia Sec., LLC*, 06-476, 2006 WL 2177036, 2006 U.S. Dist. LEXIS 52266 (D.N.J. July 31, 2006) (same); *Duqum v. Scottrade, Inc.*, 4:15-CV-1537, 2016 WL 3683001, 2016 U.S. Dist. LEXIS 89992 (E.D. Mo. July 12, 2016) ("Courts have held that loss of privacy and breach of confidentiality are too abstract to establish Article III standing."). Here, Plaintiff alleges that as a result of the Data Security Incident, "Plaintiff and Class Members suffered an injury through their loss of privacy." *See* Complaint, at ¶ 48. However, Plaintiff fails to demonstrate any concrete or particularized injury associated with the disclosure. Notably, as explained above, Plaintiff does not allege specific facts that she was the subject of identity theft or that her Personal Information was misused. Given the myriad of cases cited above, Plaintiff cannot establish an injury-in-fact by pleading loss of privacy.

(f).    *Plaintiff's claim for loss of benefit of the bargain is insufficient to establish an injury-in-fact.*

In *In re Practicefirst Data Breach Litig.*, the court "reject[ed] any attempt by plaintiffs to establish standing by alleging that they failed to receive the 'benefit of their bargain' by providing their private information to their medical providers, who then entrusted the data to defendants." *Id.*, 2022 WL 354544, at *8, n.11 (citing *In re Am. Collection Agency Data Sec. Breach Litig.*, 19-MD-2904, 2021 WL 5937742, *11 (D.N.J. Dec. 16, 2021) (dismissing plaintiffs' claim that they failed to get the "benefit of the bargain" in light of the data breach because even if data security could be considered part of plaintiffs' "bargain" for medical services, plaintiffs did not suffer a particularized injury); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 995 (W.D. Okla. 2021) (rejecting plaintiff's claim that he suffered concrete injury when he lost the "benefit of the bargain" in providing his personal information because there were no indications that plaintiff paid a premium in exchange for data security or that the data breach diminished the value of services he

received); *Remijas v. Neiman Marcus Group*, 794 F.3d 688, 695 (7th Cir. 2015) (describing plaintiff's diminution in value and benefit of the bargain theories as "dubious" and refraining from relying on these theories to support standing); *see also Aponte v. Ne. Radiology, P.C.*, No. 21 CV 5883 (VB), 2022 WL 1556043, at *4 (S.D.N.Y. May 16, 2022), appeal dismissed, No. 22-1284, 2022 WL 4125739 (2d Cir. Aug. 9, 2022); *Chambliss v. Carefirst, Inc,* 189 F. Supp. 3d 564, 572 (D. Md. 2016) (loss of benefit of the bargain "is consistently rejected in data breach cases where plaintiffs have not alleged that the value of the goods or services they purchased was diminished as a result of the data breach");  *In re Zappos*, 108 F. Supp. 3d 949, 962 n.6; *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-CV-02129-MSK-NYW, 2016 WL 8578096, at *9 (D. Colo. June 20, 2016), report and recommendation adopted, No. 15-CV-02129-MSK-NYW, 2016 WL 8578252 (D. Colo. Sept. 21, 2016); *Cox v. Valley Hope Ass'n*, No. 2:16-CV-04127-NKL, 2016 WL 4680165, at *4 (W.D. Mo. Sept. 6, 2016).

Here, Plaintiff alleges that, as a result of the Data Security Incident, "Class Members did not receive the full benefit of the bargain, and instead received services that were less valuable than described in the contracts." *See* Complaint, at ¶ 98. As explained in the myriad of cases above, Plaintiff cannot establish an injury-in-fact by alleging loss of the benefit of the bargain. Additionally, Plaintiff premises her standing argument based on the alleged contracts between the Class Members and PPEC. *See* Complaint, at ¶¶ 91-99. Based on Plaintiff's own admission that there is no contract between Plaintiff and PPEC, however, there can be no loss of the benefit of the bargain. Plaintiff cannot conjure standing based on the alleged injuries of other Class Members. *See Spokeo*, 578 U.S. 330, 338, n. 6; *TransUnion LLC*, 594 U.S. 413, 431; *Tyson Foods, Inc,* 577 U.S. 442, 466.

2.      Plaintiff fails to properly trace her alleged injuries to the Data Security Incident; therefore this Court lacks subject matter jurisdiction.

Plaintiff fails to sufficiently plead any facts to suggest her alleged injuries are fairly traceable to PPEC's alleged conduct. To satisfy the "traceability" prong of the Article III standing test, allegations must provide more than "unadorned speculation" to "connect their injury to the challenged actions." *Citizens for Resp. & Ethics in Washington v. Trump*, 953 F.3d 178, 191 (2d Cir. 2019), as amended (Mar. 20, 2020), cert. granted, judgment vacated, 141 S. Ct. 1262, 209 L. Ed. 2d 5 (2021). Specifically, the allegations of fact must plausibly support a "substantial likelihood" that the plaintiff's injury was the consequence of the defendant's allegedly unlawful actions (and that prospective relief could mitigate the harm). *Id*. To "prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *De Medicis v. Ally Bank*, No. 21 CIV. 6799 (NSR), 2022 WL 3043669, at *7 (S.D.N.Y. Aug. 2, 2022) (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012)). "Purely temporal connections are often insufficient to establish causation." *Id*. (quoting *Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x 664, 668 (9th Cir. 2007). "The longer the time span between the alleged data breach and the identity theft, the stronger the non-temporal nexus between the two incidents must be for a plaintiff to sufficiently allege causation." *De Medicis*, 2022 WL 3043669, at *7 (citing *Resnick,* 693 F.3d 1317, 1327).

The "fairly traceable" element exists for purposes of Article III case or controversy standing "when at least one instance of misuse was pled that would have a logical connection to the data stolen." *Fero,* 236 F. Supp. 3d 735, 758 (quoting *In re: Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *12 (N.D. Ala. Sept. 12, 2016)).

Here, Plaintiff merely alleges that "PPEC's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' PHI and PII, causing them to suffer, and continue to suffer, economic damages and other actual harm[.]" *See* Complaint, ¶ 53. However, Plaintiff's entire traceability argument is premised on time and sequence. Specifically, Plaintiff argues she is able to trace her alleged injuries to PPEC's alleged conduct simply because the Data Security Incident allegedly occurred. However, if that were the case, each and every plaintiff would automatically be able to satisfy the traceability argument by merely alleging that a data security incident occurred. Plaintiff also fails to allege a single instance of misuse, and as such, traceability has not been met.

**B.      Plaintiff's Complaint fails to state a claim upon which relief can be granted.**

Pursuant to Fed. R. Civ. P. 12(b)(6), a claim may be dismissed because of a failure to state a claim upon which relief can be granted. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id*., at 555. Legal conclusions **must be supported by factual allegations**. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. (quoting *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between

possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Accordingly, even if this Court finds that Plaintiff has sufficient standing under Rule 12(b)(1), Plaintiff's claims still fail under Rule 12(b)(6) and must be dismissed.

1.    Plaintiff's negligence claim fails as a matter of law.

A negligence claim under Vermont law requires proof of four elements: (1) defendant owed a legal duty to protect plaintiff from an unreasonable risk of harm; (2) defendant breached that duty; (3) defendant's conduct was the proximate cause of plaintiff's injuries; and (4) plaintiff suffered actual damage. *Bombard v. Volp*, 44 F. Supp. 3d 514, 527 (D. Vt. 2014). Additionally, "a lawsuit against an attorney for negligence generally requires: (1) the existence of an attorney-client relationship which establishes a duty of care; (2) the negligence of the attorney measured by his or her failure to perform in accordance with established standards of skill and care; and (3) that the negligence was the proximate cause of harm to plaintiff." *Hedges v. Durrance*, 2003 VT 63, ¶ 6, 175 Vt. 588, 589, 834 A.2d 1, 3 (2003).

(a).    PPEC owed no legal duty to the Plaintiff.

In Vermont, "there is generally no duty to protect another from the actions of a third person." *Barrette v. Vill. of Swanton*, No. 2:22-CV-00129, 2024 WL 1175078, at *10 (D. Vt. Mar. 19, 2024) (quoting *Montague v. Hundred Acre Homestead, LLC,* 2019 VT 16, ¶ 11, 209 Vt. 514, 520, 208 A.3d 609, 613 (2019)); *see also* Restatement (Second) of Torts § 315. An exception to the general rules arises where a special relationship exists that imposes a duty upon one to control the actions of another or where a special relationship gives a third person a right to protection. *Peck v. Counseling Serv. of Addison Cnty., Inc*., 146 Vt. 61, 65, 499 A.2d 422, 425 (1985). Examples of the first kind of special relationship are master-servant and parent-minor child, and

examples of the second relation are common carriers, innkeepers, or custodians. *Knight v. Rower*, 170 Vt. 96, 103, 742 A.2d 1237, 1242 (1999).

Here, based on *Barrette* and *Montague*, PPEC had no duty to protect Plaintiff from the criminal actions of third-party hackers who were responsible for the alleged Data Security Incident. Furthermore, Plaintiff fails to explicitly allege that PPEC had a special relationship with her, nor can she because PPEC is not a common carrier, innkeeper, or custodian and any interaction between the parties did not rise to a level of a master/servant or parent/child.

Furthermore, "[t]he foreseeability of the harm is relevant in determining whether there was a legal duty." *Doe v. Newbury Bible Church*, No. 1:03-CV-211, 2005 WL 1862118, at *4 (D. Vt. July 20, 2005), report and recommendation adopted, No. 1:03-CV-211, 2005 WL 1962260 (D. Vt. Aug. 15, 2005), aff'd, 509 F.3d 69 (2d Cir. 2007) (citing *Lexington Ins. Co. v. Rounds*, 349 F.Supp.2d 861, 867 (D. Vt. 2004)). "In general, crimes committed by a third-party fall within the realm of the unforeseeable, and therefore cannot form the basis for liability[.]" *Barrette v. Vill. of Swanton*, No. 2:22-CV-00129, 2023 WL 3891034, at *18 (D. Vt. June 6, 2023) (quoting *Stopford v. Milton Town Sch. Dist*, 2018 VT 120, ¶ 17, 209 Vt. 171, 180, 202 A.3d 973, 981). Here, based on *Barrette* and *Stopford*, PPEC owed no legal duty to Plaintiff because crimes committed by a third-party hacker are unforeseeable.

Not only do the parties not have a special relationship, but furthermore "the general rule [is] that an attorney owes no duty of care to a client's adversary in litigation." *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 17, 200 Vt. 465, 474, 133 A.3d 836, 844 (2015) (citing *Hedges,* 2003 VT 63, 175 Vt. 588, 834 A.2d 1); *see also Maunsell v. Bank of New York Mellon Tr. Co.*, No. 2016-100, 2016 WL 5344053, at *2 (Vt. Sept. 1, 2016) ("The trial court also correctly ruled that defendant attorneys owed no duty to plaintiff…It is well established that an attorney

owes no duty to an adverse party."). An exception to the general rule exists "where the plaintiff is an intended third-party beneficiary to the attorney-client relationship—in estate-planning and will-drafting cases for example." *Id*. (quoting *Hedges,* 2003 VT 63).

Here, based on *Felis*, *Hedges*, and *Maunsell,* and Plaintiff's own admission, PPEC owed no duty of care to Plaintiff as any Personal Information PPEC collected from Plaintiff was obtained "during the pendency of the personal injury matter captioned *Shawna Gaboriault v. Eric Gilbertson*…where PPEC represented the defendant, Eric Gilbertson" and "was exchanged during the normal course of litigation." *See Complaint*, at ¶¶ 12-13. Given that Plaintiff was adverse to PPEC's client, Mr. Gilbertson, in litigation, Vermont does not recognize that PPEC owed Plaintiff a duty of care to protect her from the actions of the third-party hackers who were responsible for the alleged Data Security Incident. Furthermore, the exception to the general rules does not apply because Plaintiff fails to allege any facts that suggest that she was an intended third-party beneficiary to the attorney-client relationship between Mr. Gilbertson and PPEC, nor can she as she was a plaintiff that served as a direct adversary to Mr. Gilbertson as a defendant. Also, as PPEC did not represent Plaintiff, an attorney-client relationship did not exist and PPEC did not owe Plaintiff a duty of care. *See Hedges,* 2003 VT 63, ¶ 6.

Lastly, the allegation PPEC was negligent for failing to timely disclose the Data Security Incident to the Plaintiff is simply not permitted by the law upon which these claims are based. *See* Complaint, at ¶ 84. The Vermont data breach statute[1] provides that notice of the security breach shall be made "without reasonable delay," and that "the Attorney General and State's Attorney shall **have sole** and full authority to investigate potential violations of this subchapter and to

---

[1] Plaintiff is a resident of Vermont; therefore, notice would be governed by 9 V.S.A. § 2435.

enforce, prosecute, obtain, and impose remedies for a violation of this subchapter or any rules or regulations made pursuant to this [.]" *See* 9 V.S.A. § 2435 (emphasis added). Accordingly, Plaintiff cannot assert a negligence claim seeking damages due to untimely notice since the statute limits actions for violations of this statute to the Attorney General and State's Attorney.

(b).    Plaintiff has not alleged PPEC breached any alleged duty.

Even assuming, *arguendo*, that PPEC had a duty of care to protect Plaintiff's Personal Information from unknown third-party hackers, Plaintiff fails to plead specific allegations how PPEC breached its alleged duty. Plaintiff merely alleges in a conclusory fashion that "PPEC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII and PHI maintained on its systems and failed to ensure its employees entrusted with PII and PHI were trained in and maintained reasonable security procedures and practices in light of the sensitive information provided to PPEC from its clients, partners, medical providers, and third parties." *See* Complaint, at ¶¶ 33, 42-48.  Plaintiff fails to allege what the standard is for reasonable security procedures and practices, and fails to allege how PPEC deviated from such standard.  Given that legal conclusions "must be supported by factual allegations," Plaintiff fails to allege how PPEC breached its alleged duty. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, Plaintiff fails to satisfy her pleading requirements.

(c).    Plaintiff has not alleged sufficient damages for a negligence claim.

As further explained in the injury-in-fact analysis, *supra*, Plaintiff has not alleged sufficient damages to bring a negligence claim. Instead, the Complaint makes repeated allegations of indeterminate or speculative damages. *See* Complaint, at ¶¶ 49-54. However, evidence must be of such a character that the jury can find that there is "a reasonable certainty or a reasonable probability that the apprehended future consequences will ensue from the original injury.

---

Consequences which are contingent, speculative, or merely possible are not entitled to consideration in ascertaining the damages." *Howley v. Kantor*, 105 Vt. 128, 163 A. 628, 631 (1933) (citation omitted); *see also Town of Rutland v. F.A.S. Trucking, Inc.*, No. 2021-144, 2022 WL 131225, at *3 (Vt. Jan. 14, 2022); *McLaughlin v. Langrock Sperry & Wool, LLP*, No. 2:19-CV-00112, 2021 WL 535873, at *16 (D. Vt. Feb. 12, 2021). Here, Plaintiff has failed to allege she suffered legally cognizable damages to recover under a negligence theory.

Even assuming, *arguendo*, that Plaintiff suffered a non-speculative injury, she is barred from recovering based on Vermont's economic loss rule, which "bars negligence claims for intangible economic loss except in limited circumstances. It continues to require proof of physical injury." *Shulman v. Concord Gen. Mut. Ins*. Co., 618 F. Supp. 3d 165, 174 (D. Vt. 2022). Furthermore, "injury to the product or property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law." *Id.* (quoting *Walsh v. Cluba*, 2015 VT 2, ¶ 28, 198 Vt. 453, 117 A.3d 798). An exception to the general rule exists where there is a "special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor." *Id*. at 174-75 (quoting *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316, 779 A.2d 67, 71 (2001)). Here, the exception does not apply because, as explained above, a special relationship does not exist as a matter of law between the parties. Furthermore, Plaintiff alleges in Count Three that "under the contracts, Defendant was obligated to maintain the confidentiality of these Class Member's (sic) PHI and PII." *See* Complaint, at ¶¶ 94-96. By Plaintiff's own allegations, she is admitting that the alleged harm is the subject of a contract, and

therefore the economic loss doctrine applies. Accordingly, Plaintiff's negligence claim fails as a matter of law and must be dismissed.

    2.    <u>Plaintiff's negligent hiring and retention claim fails as a matter of law.</u>

In Vermont, a negligent hiring and retention claim requires proof that defendant was "negligent or reckless in the employment of improper persons or instrumentalities in work involving risk of harm to others: in the supervision of the activity; or … in permitting, or failing to prevent, negligent or other tortious conduct by persons[.]" *Doe,* 2005 WL 1862118, at *6-7 (quoting Restatement (Second) of Agency § 213). "Liability for these causes of action will exist only when all of the elements of a tort of negligence exist." *Id.* (citing *Haverly v. Kaytech, Inc*., 169 Vt. 350, 357, 738 A.2d 86 (1999)). "In other words, [plaintiff] must prove that the...defendant[] owed him a duty, they breached that duty, [plaintiff] suffered injury, and the injury was proximately caused by the… defendant['s] breach of duty." *Id.*

Here, as explained above, Plaintiff's negligent hiring and retention claim cannot survive as PPEC did not owe Plaintiff a legal duty. Furthermore, Plaintiff merely alleges that PPEC:

> failed to exercise reasonable care in its/their hiring and retention practices to discover whether their employees, independent contractors and/or third-party vendors were unfit, incompetent, unable, or unwilling to employ adequate security measures for consumer's PII and PHI which would create a risk of harm to others in the capacity for which those third-party vendors and/or employees had been hired.

*See* Complaint, at ¶ 88.

Plaintiff's allegation is entirely conclusory. Plaintiff does not explain how PPEC failed to exercise reasonable care in its hiring and retention practices. Plaintiff fails to identity what the industry standard is regarding data security practices or how PPEC deviated from such standard. Additionally, Plaintiff's argument is entirely premised on the unsupported conclusion that PPEC

*de facto* failed to exercise reasonable care merely because the Data Security Incident allegedly occurred.  However, a significant flaw in Plaintiff's premise is that a data security incident can still occur even if a defendant follows industry and cybersecurity best practices. Without any factual allegations to support Plaintiff's legal conclusions, this cause of action must fail. *See Ashcroft,* 556 U.S. 662, 679  (legal conclusions "must be supported by factual allegations"). Again, Plaintiff also fails to allege she suffered an injury, as there are no allegations that she suffered identity theft or misuse of her Personal Information; therefore, her negligent hiring and retention claim fails as a matter of law and must be dismissed.

3.    <u>Plaintiff's breach of contract claim fails as a matter of law.</u>

A breach of contract claim under Vermont law requires proof of three elements: (1) the existence of a contract, (2) breach of the contract, and (3) damages. *Mooers v. Middlebury Coll*., No. 2:20-CV-00144, 2021 WL 4225659, at *5 (D. Vt. Sept. 16, 2021). Furthermore "to prove breach of contract, plaintiff must show damages. Two types of damages are recoverable: direct damages that naturally and usually flow from the breach itself, and special or consequential damages, which must pass the tests of causation, certainty and foreseeability." *In re Montagne*, No. 08-1024, 2010 WL 271347, at *7 (Bankr. D. Vt. Jan. 22, 2010) (quoting *Smith v. Country Village Intern., Inc*., 183 Vt. 535, 537, 944 A.2d 240, 243 (2007)). "The rule is clearly established in Vermont that breach-of-contract damages must be proved with 'reasonable certainty.'" *Madowitz v. Woods at Killington Owners' Ass'n, Inc*., 2014 VT 21, ¶ 14, 196 Vt. 47, 54, 93 A.3d 571, 577 (2014) (citing *Ferrisburgh Realty Invs. v. Schumacher*, 2010 VT 6, 187 Vt. 309, 992 A.2d 1042 (2010)); *see also* Restatement (Second) of Contracts § 352 (1981) ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty."). "Such damages therefore cannot be based on mere 'speculation and conjecture.'"

*Madowitz*, 2014 VT 21, ¶ 14 (citing *Pinewood Manor, Inc. v. Vt. Agency of Transp.*, 164 Vt. 312, 318, 668 A.2d 653, 657 (1995); *Hedges,* 2003 VT 63, ¶ 12, 175 Vt. 588, 834 A.2d 1 ("An injury based on speculation about uncertain future events is no injury at all."); *Bourne v. Lajoie*, 149 Vt. 45, 53, 540 A.2d 359, 364 (1987) (rejecting plaintiff's damages claim for a lost opportunity as 'based only on her speculation that she would have been able to sell the property, rather than on evidence of an actual offer from a prospective purchaser which she was unable to pursue')). "If damages are not proven, a breach of contract claim will fail." *St. Ambroise Azagoh-Kouadio v. Roman Cath. Diocese of Burlington*, No. 2016-266, 2016 WL 7364740, at *4 (Vt. Dec. 16, 2016) (quoting *Ianelli v. U.S. Bank*, 2010 VT 34, 187 Vt. 644, 996 A.2d 722 (2010)).

As a preliminary matter, Plaintiff does not have standing to bring a breach of contract claim. "Standing is not dispensed in gross; rather, plaintiffs must **demonstrate standing for each claim** that they press and for each form of relief that they seek." *TransUnion LLC,* 141 S. Ct. 2190, 2208 (emphasis added). "**Every class member must have Article III standing** in order to recover individual damages." *Id.* (emphasis added). "That a suit may be a class action ... adds nothing to the question of standing, for **even named plaintiffs** who represent a class 'must allege and show that **they personally have been injured, not that injury has been suffered by other**, unidentified members of the class to which they belong.'" *Spokeo,* 578 U.S. 330, 338, n.6 (citations omitted) (emphasis added).

Here, Plaintiff does not have standing to bring a breach of contract claim because she fails to allege that there was a contract between Plaintiff and PPEC. *See* Complaint, at ¶¶ 91-99. Rather, she vaguely alleges that "it is believed that **some** Class Members received legal services from Defendant…[and that] the contract between **certain** Class members and PPEC was supported by consideration…." *Id.* (emphasis added). This is the prototypical example of Plaintiff trying to

conjure standing from alleged injuries suffered by other Class Members, which the Supreme Court has on multiple occasions held is not allowed. *See Spokeo,* 578 U.S. 330, 338 n.6; *TransUnion LLC,* 141 S. Ct. 2190, 2208. As such, Plaintiff's breach of contract claim must be dismissed.

In sum, even assuming, *arguendo*, that Plaintiff has standing due to suffering some non-speculative injury, Plaintiff fails to allege the basic concept for alleging a breach of contract, namely that a contract even existed between Plaintiff and PPEC. Plaintiff fails to allege when the contract was entered into, or the terms of the contract. Plaintiff also fails to allege what consideration was given to create an enforceable contract. "[T]o constitute consideration, a performance or a return promise must be bargained for." *Weed v. Weed*, 2008 VT 121, ¶ 13, 185 Vt. 83, 88, 968 A.2d 310, 314 (2008) (quoting Restatement (Second) of Contracts § 71(1) (1981)). "Bargained-for consideration must induce a promise or performance, and not be a 'mere pretense' of a bargain." *Id*. (citing Restatement (Second) of Contracts § 71 cmt. b). Here, Plaintiff alleges that "the contract between certain Class members and PPEC was supported by consideration in many forms including the payment of monies for legal services." *See* Complaint, at ¶ 93. Even assuming, *arguendo*, that this is correct, Plaintiff still fails to allege what consideration she gave to PPEC.

### 4.   Plaintiff's breach of implied contract claim fails as a matter of law.

A breach of implied contract claim under Vermont law requires proof of three elements: (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value. *Ballou v. Air Methods Corp*., No. 2:20-CV-00077, 2021 WL 3423594, at *6 (D. Vt. Aug. 5, 2021). An implied contract also requires "a mutual intent to contract." *Retail Pipeline, LLC v. Blue Yonder Grp., Inc*., 557 F. Supp. 3d 535, 554 (D. Vt. 2021).

As an initial matter, if Plaintiff's breach of contract claim within Count Three survives PPEC's Motion to Dismiss, Plaintiff's breach of implied contract claim cannot. *See Revision Mil. Ltd. v. Gideon Servs., Inc.,* No. 2:17-CV-128, 2017 WL 5632700, at \*3 (D. Vt. Oct. 31, 2017) ("Because there was an express contract between the parties setting forth the terms of plaintiff's employment, there could be no implied contract on the subject"); *Havill v. Woodstock Soapstone Co.*, 2004 VT 73, 177 Vt. 297, 865 A.2d 335 (2004) (considering terms of implied contract where no express employment contract existed); *Revision Mil. Ltd.* 2017 WL 5632700, at \*3 ("Vermont law recognizes liability for breach of an implied contract when no express contract exists."). Furthermore, akin to an express contract, under a breach of an implied contract theory, the Court must still "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Here, similar to Plaintiff's breach of contract claim in Count Three, Plaintiff again tries to conjure standing to bring a breach of implied contract claim by alleging that PPEC required certain "Class Members to provide PHI and PII to Defendant in order to receive legal services." *See* Complaint, at ¶ 101. However, as explained above, this is impermissible. *See Spokeo,* 578 U.S. 330, 338 n.6; *TransUnion LLC,* 141 S. Ct. 2190, 2208

Even assuming, *arguendo*, that Plaintiff has standing to bring a breach of implied contract claim, she fails to identify the correct party with whom she allegedly contracted. Specifically, as Plaintiff admits, PPEC's course of dealing with her was solely in a representative capacity rather than an individual capacity. *See* Complaint, at ¶ 12. Plaintiff fails to allege any specific facts evidencing that PPEC intended to contract with Plaintiff directly in an individual capacity, or that PPEC intended to safeguard and protect her Personal Information. Plaintiff also entirely fails to

allege that a benefit was conferred on PPEC, or that PPEC accepted a benefit, by virtue of PPEC merely receiving Plaintiff's Personal Information in the course of representing its own client in litigation against Plaintiff. *See* Complaint, at ¶¶ 100-108. If any benefit were arguably conferred, PPEC's client (as the litigant) would have been the intended recipient of the benefit. As a common theme, Plaintiff alleges in a conclusory fashion that PPEC agreed to certain conditions. However, as legal conclusions "must be supported by factual allegations," Plaintiff fails to satisfy her pleading requirement. *See Ashcroft,* 556 U.S. 662, 679. Additionally, even assuming, *arguendo*, that an implied contract existed, Plaintiff fails to allege that she can ascertain any amount of damages with reasonable certainty, nor can she, as her alleged damages are purely speculative. As discussed above, Plaintiff does not allege identity theft or actual misuse of her Personal Information. As such, her cause of action fails as a matter of law.

5.    Plaintiff's invasion of privacy claim fails as a matter of law.

An invasion of privacy claim under Vermont law requires proof that defendant engaged in a "**substantial**, **intentional** intrusion upon the solitude or seclusion of another, or upon his private affairs or concerns, which would be highly offensive to a reasonable person." *Harris v. Carbonneau*, 165 Vt. 433, 439, 685 A.2d 296, 300 (1996) (emphasis added) (citing *Hodgdon v. Mount Mansfield Co*., 160 Vt. 150, 162, 624 A.2d 1122, 1129 (1992); Restatement (Second) of Torts §§ 652A, 652B (1977)). An "intentional injury implies positive and aggressive conduct, and not the mere negligent omission of duty." *Wendell v. Union Mut. Fire Ins. Co*., 123 Vt. 294, 297, 187 A.2d 331, 332 (1963) (citing Ballentine's Law Dictionary, 3rd edition, page 669). "In its customary usage intentionally means an act done with intention of purpose, designed, and voluntary." *Id*. (citing Webster's Third New International Dictionary. 46 C.J.S. pages 1106, 1107).

Here, the Complaint fails to state that PPEC's alleged conduct was substantial or intentional. *See* Complaint, at ¶¶ 109-117. Rather, Plaintiff admits the "intentional" element is not satisfied because she alleges that "Defendant's failure to safeguard and protect Plaintiff and Class Members' PII/PHI was a direct and proximate cause of **an unauthorized third party accessing and obtaining Plaintiff and Class Members' PII/PHI**[.]" *See* Complaint, at ¶ 115 (emphasis added). Plaintiff cannot in good faith allege that PPEC intentionally allowed an authorized third party to gain access to its computer systems. Furthermore, Plaintiff applies the incorrect legal standard as she alleges that "Defendant's failure to safeguard and protect Plaintiff and Class Members' PII/PHI directly and proximately resulted in **unreasonable** publicity[.]" *Id.* at 113 (emphasis added). The legal standard is not one of reasonableness, but rather requires an intentional, substantial intrusion. Plaintiff fails to allege that her Personal Information was disseminated on the dark web or made available to the public. Plaintiff even admits by citing to the Breach Letter that the parties "are not aware of any instances of dissemination." *See* Complaint, Ex. A, at 2. As Plaintiff fails to allege specific facts that PPEC engaged in a substantial and intentional intrusion, Plaintiff's invasion of privacy cause of action fails as a matter of law.

6.   Plaintiff's publication of private facts claim fails as a matter of law.

Plaintiff brings a publication of private facts claim, however, Vermont law does not recognize this claim as an independent cause of action. Specifically, there are no reported decisions in Vermont State Court adopting and analyzing a publication of private facts claim, and there are only two reported decisions in the Federal District of Vermont that only tangentially address such a claim. *See Bearss v. Wilton*, No. 2:08-CV-248, 2010 WL 11523749 (D. Vt. Aug. 10, 2010), aff'd, 445 F. App'x 400 (2d Cir. 2011); *Audsley v. RBS Citizens, N.A.*, No. 5:10-CV-208, 2011 WL 1397312 (D. Vt. Apr. 11, 2011). In *Bearss*, the court did not address plaintiff's publication of

private facts claim because plaintiff's federal law claim was dismissed and the court declined to exercise jurisdiction of plaintiff's remaining state law claims. 445 F. App'x 400 (2d Cir. 2011). In *Audsley*, the court was analyzing New Hampshire law. Given that Vermont law does not recognize a publication of private facts claim as an independent cause of action, this count must be dismissed. 2011 WL 1397312 (D. Vt. Apr. 11, 2011).

Even assuming, *arguendo*, that this Court applies the analysis in *Audsley*, Plaintiff's claim would still be meritless. First, applying New Hampshire law, *Audsley* held that public disclosure of private facts is an invasion of privacy claim. *Id*. at *8 (citing *Hamberger v. Eastman*, 106 N.H. 107, 110, 206 A.2d 239, 241 (1964)). Second, *Hamberger* held that publication of private facts requires "the invasion of something secret, secluded or private pertaining to the plaintiff" and "depend[s] on publicity." *Id*. "Publicity," differs from "publication." *See* Restatement (Second) of Torts § 652D (1977). "Publication" includes "any communication by the defendant to a third person." *Id*. "Publicity" on the other hand, means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference…is one of a communication that reaches, or is sure to reach, the public." *Id*. "It is not an invasion of the right of privacy…to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id*.

Here, Plaintiff's publication of private facts claim must fail because it cannot be viewed as distinct from an invasion of privacy claim, which Plaintiff has already brought in Count Five. Furthermore, Plaintiff merely alleges in a conclusory fashion that PPEC's "failure to adequately safeguard Plaintiff and Class Member's PHI and PII has made Plaintiff's and Class Members information public." *See* Complaint, at ¶ 119. However, any potential Personal Information

allegedly exfiltrated pursuant to the Data Security Incident was confined to the eyes of the threat actor, rather than the public at large. Plaintiff does not specifically allege that her Personal Information was posted on the dark web, or that it was released to the public.

> 7.    Plaintiff's unjust enrichment claim fails as a matter of law.

An unjust enrichment claim under Vermont law requires proof of three elements: (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value. *Shaffer v. Kaplan,* No. 2:11-CV-239, 2014 WL 2009103, at *12 (D. Vt. May 16, 2014). Additionally, unjust enrichment is a claim based on quasi-contract and therefore cannot be brought if there is an existence of a valid and enforceable written contract. *Mooers,* 2021 WL 4225659, at *7. Therefore, if Plaintiff's breach of contract claim within Count Three survives PPEC's Motion to Dismiss, Plaintiff's unjust enrichment claim cannot.

Furthermore "as an equitable remedy, an unjust enrichment claim lies only when 'there is not an adequate remedy at law on the very subject in question.'" *Ehlers v. Ben & Jerry's Homemade Inc.*, No. 2:19-CV-00194, 2020 WL 2218858, at *9 (D. Vt. May 7, 2020) (quoting *Wynkoop v. Stratthaus*, 2016 VT 5, ¶ 50, 201 Vt. 158, 183-84, 136 A.3d 1180, 1196); *see also Moreau v. Sylvester*, 2014 VT 31, ¶ 20, 196 Vt. 183, 193, 95 A.3d 416, 423 ("Equity will not afford relief where there is a plain, adequate, and complete remedy at law.") "To be adequate the legal remedy must be able to provide complete relief for the case before the court and must be equally convenient, beneficial, and effective." *Wynkoop*, 2016 VT 5, at ¶ 18. "As a result, an unjust enrichment claim is not available 'where it simply duplicates, or replaces, a conventional contract or tort claim[.]'" *Ehlers*, 2020 WL 2218858, at *9 (quoting *Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2019 WL 5081061, at *2 (D. Vt. Oct. 10, 2019)). Where an unjust enrichment

claim relies on the same alleged actions or omissions as other claims, the unjust enrichment claim is "wholly duplicative." *See id*. (citing *Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018); *Elkind v. Revlon Consumer Prods. Corp*., 2015 WL 2344134, at *14 (E.D.N.Y. May 14, 2015)).

Here, Plaintiff alleges in a conclusory fashion that she has "no adequate remedy at law." *See* Complaint, at ¶ 126. Additionally, Plaintiff's unjust enrichment claim simply duplicates her contract and tort claims because it realleges that Plaintiff "failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members were fairly entitled to." *See* Complaint, at ¶ 132. Given that Plaintiff's unjust enrichment claim relies on the same alleged conduct as her other six causes of action, her unjust enrichment claim is wholly duplicative and must be dismissed. Furthermore, as explained above in section III.B.4, Plaintiff fails to properly allege that PPEC received or accepted a benefit. Again, PPEC never represented Plaintiff. Rather, PPEC's alleged course of dealing with Plaintiff was on behalf of Eric Gilbertson in a representative capacity stemming from an attorney/client relationship with Mr. Gilbertson. As such, if any benefit was conferred from the receipt of Plaintiff's Personal Information, PPEC's client, Mr. Gilbertson, would have been the intended recipient of the benefit. Plaintiff's cause of action therefore fails as a matter of law.

### C.  Plaintiff is unable to certify a class.

A court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous mater." Fed. R. Civ. P. 12(f). A defendant may move to strike class allegations at the pleadings stage where plaintiffs' allegations are insufficient to "show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery." *Provencher v. Bimbo Bakeries USA, Inc*., No. 2:22-CV-198, 2023 WL 6050398, at *1 (D. Vt. Aug. 7, 2023)

(quoting *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012); *Chenesky v. N.Y. Life Ins. Co.*, No. 07-CV-11504 (WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)).

In order to maintain a class action, a plaintiff must establish four prerequisites: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Furthermore, a plaintiff must satisfy one of the prerequisites within Fed. R. Civ. P. 23(b). Additionally, "under Fed. R. Civ. P. 23(c)(1)(A), a court may determine whether the class can be certified '[a]t an early practical time,' and may make this determination even before the plaintiffs have moved for certification." *Flynn v. DIRECTV, LLC*, No. 3:15-CV-1053 (JAM), 2016 WL 4467885, at *5 (D. Conn. Aug. 23, 2016) (quoting *Pilgrim v. Universal Health Care, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

Here, Plaintiff fails to satisfy Rule 23(a) because Plaintiff does not have standing to bring this action or represent the proposed class. Plaintiff also fails to satisfy commonality and typicality because the entirety of her claim merely parrots the Rule 23(a) legal standard without any factual allegations. Furthermore, even if Plaintiff had standing and alleged something beyond a boilerplate recitation of the Rule 23(a) legal standard, there are too many variations in injury, causation, and damages among the putative Class Members to permit certification. For instance, Plaintiff cannot demonstrate that her claims are "typical of the claims or defense of the class" when there are numerous variables as to the type of personal information of each class member that was purportedly accessed, and whether any personal information had ever been misused, and the disparate and unsupported claims of each class member's alleged damages.

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions ... would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). "Certification under Rule 23(b)(1)(A) is… not appropriate in an action for damages." *Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 93 (D. Conn. 2004) (quoting *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir.2001)). Here, this is a case where the primary relief sought is monetary damages. To be sure, Plaintiff brings a Seven Count Complaint seeking damages rather than injunctive relief. Plaintiff continuously alleges throughout the Complaint that "Plaintiff and the Class are entitled to damages." *See* Complaint, at ¶ 90. In Plaintiff's Request for Relief, Plaintiff is seeking "an award of actual damages and compensatory damages," and "an award of special or punitive damages." *See* Complaint, at 28. As such, Plaintiff cannot certify a class under Rule 23(b)(1)(A).

A class action is maintainable under Rule 23(b)(1)(B) if prosecuting separate actions by or against individual members of the class would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interest. Fed. R. Civ. P. 23(b)(1)(B). "The paradigm suit under Rule 23(b)(1)(B) is the limited fund class action, in which 'claims are made by numerous persons against a fund insufficient to satisfy all claims.'" *Doe v. Karadzic*, 192 F.R.D. 133, 139 (S.D.N.Y. 2000). The "mandatory class treatment under a limited fund rationale must be confined to a narrow category of cases." *Id* (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842 (1999). Here, Plaintiff will be unable to satisfy Rule 23(b)(1)(B) because she fails to allege that this case involves a limited fund.

A class action is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Russell v. Pallito*, No. 5:15-CV-126-GWC-JMC, 2019 WL 2125101, at *32 (D. Vt. Jan. 7, 2019), report and recommendation adopted, No. 5:15-CV-126, 2019 WL 2125523 (D. Vt. May 15, 2019) (quoting Fed. R. Civ. P. 23(b)(2)). "The final clause is important [because] 'claims for individualized relief ... do not satisfy [Rule 23(b)(2) ].'" *Id.* at *32 n.28 (quoting *Jamie S. v. Milwaukee Pub. Sch.,* 668 F.3d 481, 499 (7th Cir. 2012)). The advisory committee's notes to Rule 23(b)(2) state the rule is not appropriate for all cases and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 39 F.R.D. 69, 102 (1966). Here, Plaintiff will be unable to satisfy Rule 23(b)(2) because, as explained above, the primary relief sought is damages. Furthermore, as explained below, each claim for relief is individualized as each class member had different Personal Information allegedly compromised by the Data Security Incident and each class member allegedly suffered unique injuries.  As such, each class member's alleged damages are not capable of computation by means of an objective standard. In contrast, any alleged damages are to be computed based on the subjective differences of each class member's circumstances.

Pursuant to Rule 23(b)(3), a court may certify a class only if it first determines that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), a class will only be certified if "the substantive issues regarding liability predominate over the individualized issues that will affect only damages." *In re Namenda Indirect Purchaser*

*Antitrust Litig.*, 338 F.R.D. 527, 551 (S.D.N.Y. 2021). Here, Plaintiff merely alleges that "the questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members." *See* Complaint, at ¶ 63. Plaintiff merges the commonality requirement of Rule 23(a)(2) with the predominance requirement of Rule 23(b)(3), however, this will not suffice as the predominance requirement is "more stringent" than the commonality requirement and is a separate analysis. *See Chaney v. Vermont Bread Co.,* No. 2:21-CV-120, 2022 WL 3443973, at *5 (D. Vt. Aug. 17, 2022). Furthermore, as explained above, generalized proof could not resolve a significant aspect of the case in a single adjudication; rather, individual proof is required. Because the circumstances of each class member are unique, it would be practically impossible that the outcome as to the class would be consistent with that of the cases if adjudicated individually. Given that each class member is in a unique situation and will need to individually prove causation and damages, this will practically turn this class action into mini individual trials which will defeat any claim of judicial economy.

## IV.     CONCLUSION

For the reasons stated above, PPEC respectfully requests that this Court dismiss Plaintiff's Complaint in its entirely pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Additionally, PPEC respectfully requests that this Court strike Plaintiff's class allegations pursuant to Fed. R. Civ. P. 12(f).

May 2, 2024

Respectfully submitted,

**DOWNS RACHLIN MARTIN PLLC**

*/s/ Matthew S. Borick*
Matthew S. Borick
199 Main Street, P.O. Box 190
Burlington, VT 05401
Telephone: (802)-863-2375
mborick@drm.com

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ Christopher J. Seusing*
Christopher J. Seusing
*Pro hac vice*
33 Riverside Avenue., Suite 502
Westport, CT 06880
Telephone:  (475)-755-7040
Fax:  (475)-755-7039
cseusing@wshblaw.com

*Attorneys for Defendant Primmer Piper Eggleston & Cramer PC*

.

22759430.1