**UNITED STATES DISTRICT COURT**

**DISTRICT OF VERMONT**

SHAWNA GABORIAULT, *on behalf of herself and all others similarly situated*,

Plaintiff,

v.

PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10,

Defendant.

Civil Action No. 2:24-cv-00113

Dated: September 18, 2026

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
A. The Incident and PPEC's Response ..... 2
B. Only Part of The Data Was Copied, And PPEC Cannot Determine Whose ..... 2
C. No Evidence of Dissemination or Misuse. ..... 2
D. The Information at Risk Varied by Person ..... 2
E. Plaintiff's Individual Circumstances. ..... 3
F. Expert Evidence Submitted Herewith. ..... 4
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 5
A. Rule 23(b)(3) – Predominance ..... 5
1. Determining Who Was Actually Affected Requires Individual Inquiries ..... 6
2. Causation Cannot Be Resolved with Common Proof ..... 7
3. The Proposed Class Includes Members Who Suffered No Injury and Lack Standing. 8
4. Damages Are Individual and Cannot Be Proven on A Classwide Basis ..... 10
B. Rule 23(b)(3) – Superiority ..... 12
C. Ascertainability ..... 13
D. Rule 23(a) – Typicality ..... 15
E. Rule 23(a) – Adequacy ..... 17
F. Rule 23(a) – Commonality ..... 18
G. Rule 23(a) – Numerosity ..... 20
V. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Cases** **Pages**

23(a)(2) ........................................................ 19, 20
344 F.R.D. 38, 53-54 (D.D.C. 2023). ........................................................ 8
502 F. Supp. 3d 724, 744 (W.D.N.Y. 2020). ........................................................ 8
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). ........................................ 5, 17, 19
*Attias v. CareFirst, Inc., 344 F.R.D* ........................................................ 8, 9, 12
*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) ......... 17, 18
*Blackbaud,* 2024 WL 2155221 ........................................................ 15
*Bombardier*, 546 F.3d at 202 ........................................................ 5
*Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015); ........................................ 14
*Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)) ........................................ 15
*Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). ........................................ 10
*Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967), ........................................................ 21
*Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); ........................................ 9
*Dukes*, 564 U.S. at 350 ........................................................ 18, 19
*Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 733 (W.D.N.Y. 2020). ..................... 5, 8
*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), ..................... 14
*Gaboriault v. Primmer, Piper, Eggleston, & Cramer, P.C.*, No. 2:24-CV-113, 2024 WL 4527102, at 2 (D. Vt. Oct. 18, 2024). ........................................................ 18
*In re Actos Antitrust Litig.*, No. 1:13-CV-09244, 2024 WL 4251891, at *23 (S.D.N.Y. Aug. 9, 2024 ........................................................ 9
*In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 62-63 (S.D.N.Y. 2020 ............ 10, 12
*In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 299 (N.D. Cal. 2018), ........................... 16
*In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 231 (S.D.N.Y. 2022) ........... 9
*In re Blackbaud, Inc., Customer Data Breach Litig*., No. 3:20-mdl-02972, 2024 WL 2155221 (D.S.C. May 14, 2024), ........................................................ 15
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009 ...................... 17, 18
*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006 .................................. 5, 21
*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 142 (D. Md. 2022). ........................................................ 7, 8
*In re Petrobras Sec. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017). ........................................ 5, 7
*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 132-33 (2d Cir. 2015). ............................ 11, 12
*Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016), ........................................ 21
*Koeller v. Numrich Gun Parts Corp.*, No. 1:22-cv-675, 2023 WL 8805705 (N.D.N.Y. Dec. 20, 2023 ........................................................ 19,20
*Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000), ........................................ 17
*Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016 ........................................ 7
*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001), ............... 19
*Petrobras*, 862 F.3d at 269, 270. ........................................................ 14, 15
*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). ........................................ 20
*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008 ........................................................ 5, 21
*TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ........................................ 9
*Attias*, 344 F.R.D. at 52 ........................................................ 9

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). .................................................. 5, 9
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). ..................................................... 4, 20
*West v. Gobeille*, 450 F. Supp. 3d 497 (D. Vt. 2020). ............................................................ 13,19

**Rules**

Rule 23(a)................................................................................................................. passim
Rule 23(a)(4). ............................................................................................................... 18
Rule 23(b)(3),.......................................................................................................... 1, 5, 15

## I. INTRODUCTION

Plaintiff Shawna Gaboriault ("Plaintiff") asks the Court to certify a class consisting of all persons whose information was allegedly "exposed" in a 2021 cybersecurity incident involving Primmer Piper Eggleston & Cramer PC ("PPEC"). *See* Plaintiff's Motion for Class Certification (the "Motion") at 3. Plaintiff seeks certification under Rule 23(b)(3), the Motion fails to establish that the Rule's requirements are satisfied. Despite the claims arising from the same alleged security incident, the issues that will determine liability, causation, injury, and damages are individualized and cannot be resolved through common proof. Specifically, the central questions in this case are (i) whether a particular individual's information was affected by the incident, (ii) whether that individual suffered a cognizable injury, (iii) whether any alleged injury was caused by the incident, and (iv) what damages, if any, resulted. The answers to those questions differ from person to person and require individualized determinations.

Plaintiff cannot identify a reliable methodology for determining who belongs in the proposed class or what information, if any, was compromised for any particular individual. PPEC's investigation established that only a portion of the targeted data was copied, though PPEC cannot determine whose information was included in the copied data. *See* Exhibit A at 4 (Notice of Security Incident (August 4, 2022)). PPEC likewise found no evidence that any individual's information was disseminated or misused. *Id.* The categories of information potentially affected also varied among individuals. *Id.* at 1. As a result, even the threshold questions of class membership and exposure cannot be answered through common proof. They require individualized inquiry, just as the questions of injury, causation, and damages do.

These individualized issues go to the heart of Plaintiff's claims and outweigh any issues that could be resolved on a classwide basis. Plaintiff therefore cannot satisfy Rule 23(b)(3)'s predominance or superiority requirements. The same deficiencies further undercut Plaintiff's

efforts to establish ascertainability, commonality, typicality, adequacy, and numerosity under Rule 23(a). Accordingly, since individualized questions concerning class membership, exposure, injury, causation, and damages predominate, Plaintiff cannot satisfy Rule 23(b)(3) or Rule 23(a), and the Motion should be denied.

## II. FACTUAL BACKGROUND

### A. The Incident and PPEC's Response.

In November 2021, an unauthorized third party gained access to PPEC's network through a malicious email link and copied a limited amount of data to a foreign hosting site. *See* Exhibit A at 1, 4. PPEC immediately worked with the hosting site and law enforcement to lock down and destroy the copied data. *See* Exhibit A at 1.

### B. Only Part of The Data Was Copied, And PPEC Cannot Determine Whose.

PPEC's Notice of Security Incident dated August 4, 2022 (the "Notice") states that approximately 76 GB of data was identified for copying but that only 46 GB was copied before the transfer was discovered and stopped. *See* Exhibit A at 4. Since only about half of the data was transferred and the host would not identify which files were among the portion downloaded, PPEC could not determine which individuals' information, if any, was actually copied. *Id*.

### C. No Evidence of Dissemination or Misuse.

PPEC's Notice advised all potentially affected individuals that it had "no reason to believe that any personal or confidential information has been disseminated or misused for the purpose of committing fraud or identity theft." *See* Exhibit A at 4. PPEC further stated that it was "not aware of any instances of dissemination, fraud or identity theft," and its review of the dark web for evidence of misuse "found none." *See* Exhibit A at 1, 5. In fact, the records of the group that conducted the attack showed the attack "as failed." *See* Exhibit A at 5.

### D. The Information at Risk Varied by Person.

PPEC's Notice states that "[t]he information involved varies by individual and entity." *See* Exhibit A at 1. Furthermore, in its report to the New Hampshire Attorney General, PPEC advised that the incident may have involved the personal information of 265 New Hampshire residents, and that the information "varied by individual, but may have included names, Social Security numbers, driver's license numbers, financial account" information. *See* Exhibit B (Notification to the New Hampshire Office of the Attorney General at 2 (November 23, 2022)); *see also* Mot. at 3.

Beginning on August 4, 2022, PPEC notified the potentially affected individuals of the incident and offered each of them, including Plaintiff, a complimentary one-year membership in Experian's IdentityWorks Credit 3B identity protection service, at no cost and with no impact on their credit. *See* Exhibit A at 1, 2. Nevertheless, Plaintiff obtained her own identity protection service through Aura, which she paid $209.88 per year in 2023-2024, and now seeks to recover that self-incurred expense as damages. *See* Exhibit D (Plaintiff's Amended Responses to Defendant's First Set of Interrogatories at ¶¶ 20, 23 (July 7, 2026)).

**E. Plaintiff's Individual Circumstances.**

PPEC's notice to Plaintiff states that the information of hers placed at risk consisted of her date of birth and certain protected health information – it did not include her Social Security number, her driver's license number, or any financial account number. *See* Exhibit A at 3. Plaintiff nonetheless claims a range of individualized damages, including time spent monitoring her accounts, an Aura identity protection subscription costing $209.88 per year, emotional distress, and reputational harm. *See* Exhibit D at ¶¶ 6, 20, 21. She also alleges that on or about October 20, 2022, a joint checking account she holds at North Country Federal Credit Union was charged for unauthorized purchases, which she disputed and for which she was reimbursed. *See* Exhibit D at

¶ 18. Notably, Plaintiff's own notice letter identified no compromised financial account information or Social Security number. *See* Exhibit A at 3.

**F. Expert Evidence Submitted Herewith.**

PPEC submits with this opposition the declaration of Sonya Kwon, a Senior Managing Director at Ankura Consulting, Inc., who addresses class identification, individualized issues, data quality and timing, and damages. Ms. Kwon's qualifications, the scope of her engagement, and the materials she considered are set forth in her declaration and its exhibits. *See* Exhibit C (Declaration of Sonya Kwon at ¶¶ 1-13 (September 18, 2026)); *id.* at Ex. 1 (*curriculum vitae*) & Ex. 2 (Data and Documents Considered).

## III. LEGAL STANDARD

Plaintiff acknowledges that certification under Rule 23(b)(3) requires satisfaction of both Rule 23(a) and Rule 23(b)(3). *See* Mot. at 6-7. What Plaintiff omits, however, is the significant burden she bears in establishing those requirements. Rule 23(a) permits a representative action only if the plaintiff satisfies all four prerequisites of numerosity, commonality, typicality, and adequacy of representation. A plaintiff proceeding under Rule 23(b)(3) must also show that common questions predominate over any questions affecting only individual members and that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(a), (b)(3).

Class certification is not a pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a plaintiff must "affirmatively demonstrate" compliance with Rule 23 and "be prepared to prove" that each requirement is satisfied. *Id.* at 350-51. The Court may certify a class only after conducting a "rigorous analysis," which frequently overlaps with the merits of the underlying claims. *Id.* at 351. The Second Circuit has made it clear that a plaintiff seeking certification must establish each Rule 23 requirement by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d

Cir. 2008) (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). In applying this standard, a court must resolve factual disputes bearing on certification rather than accept a plaintiff's allegations or a mere showing that Rule 23 may be satisfied. *See Bombardier*, 546 F.3d at 202. Plaintiff's motion falls to meet this standard. As discussed below, Plaintiff has not established the requirements of Rule 23(a) or Rule 23(b)(3), and class certification should be denied.

## IV. <u>ARGUMENT</u>

### A. Rule 23(b)(3) – Predominance

Plaintiff moves under Rule 23(b)(3), which requires a showing that common issues predominate over individualized questions. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It is a "far more demanding" inquiry than Rule 23(a)'s commonality requirement. *Id.* at 623-24. Common issues predominate only where the issues subject to common proof are "more substantial than the issues subject only to individualized proof." *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 733 (W.D.N.Y. 2020).

The distinction between "individual" and "common" questions is "central to the predominance analysis." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017). An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Predominance "is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *Id.* at 271.

Here, the individualized issues are the issues that will decide the case. As detailed below, whether a particular person's information was actually copied, whether that person suffered any cognizable injury, whether any injury was caused by this incident, and what damages, if any, resulted all require individualized proof. The fact that every claim arises from the same security incident does not resolve the significant issues in this case. The answers to the questions that will determine liability and recovery differ from person to person and outweigh any issue susceptible to common proof. Therefore, Plaintiff cannot satisfy Rule 23(b)(3)'s predominance requirement.

### 1. *Determining Who Was Actually Affected Requires Individual Inquiries*

Plaintiff's predominance argument fails at the outset because class membership cannot be determined through common proof. Only about half of the targeted data was copied, and PPEC cannot identify which files were taken. *See* Exhibit A at 4. Plaintiff assumes that everyone who received notice belongs in the class. However, PPEC sent notice out of an abundance of caution to all individuals whose information appeared anywhere within the targeted data set, not just to those whose information may have been included in the portion actually copied. *Id*.

Plaintiff's suggestion that PPEC's discovery responses confirm the existence of records identifying the affected individuals is mistaken. *See* Mot. at 7-8. PPEC only agreed to produce documents sufficient to show "the total number of impacted individuals and their states of residence." *See* Exhibit E (Defendant's Responses to Plaintiff's First Set of Requests for Production, Response to Request No. 1 (February 13, 2026)). That is a record of the population PPEC notified, not a record of whose information was actually copied in the incident. The notification list therefore does not establish class membership. Determining whether a particular individual falls within Plaintiff's proposed class requires an individualized assessment of whether that person's information was contained in the affected data and, if so, whether it was among the

portion that was actually compromised. *See* Exhibit C (Declaration of Sonya Kwon at ¶¶ 14, 16-18 (September 18, 2026)).

The Second Circuit's decision in *In re Petrobras* is directly on point. There, even though every putative member had to satisfy a common legal element, the Court held that predominance was not satisfied because that element turned on facts that "var[ied] from member to member," such as "who sold them the relevant securities, how those transactions were effectuated, and what forms of documentation might be offered." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 272-74 (2d Cir. 2017). Absent classwide evidence, the Court explained that "the fact-finder would have to look at every class member's [transaction] documents to determine who did and who did not have a valid claim." *Id.* at 273 (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)). The same is true here. Determining whether any given person's data was copied, the threshold fact of class membership, would require a file-by-file review that no common proof can provide.

The question of whose information was actually affected must be resolved before liability, injury, causation, or damages can even be considered. Since they require individualized inquiry rather than common proof, they weigh strongly against a finding of predominance.

### 2. *Causation Cannot Be Resolved with Common Proof*

Causation presents another individualized issue that defeats predominance. Even assuming a particular class member's information was copied, determining whether that person suffered harm as a result of *this* incident – rather than one of an unrelated breach – requires an individualized inquiry.

Related decisions in the data breach context confirm this. For example, in *In re Marriott*, the court held that "individualized issues related to causation are quite significant" because class members' PII "may have been exposed in data breaches other than" the one at issue, so that "[t]he functional equivalent of a full-blown trial on damages causation for each putative class member"

would be required. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 142 (D. Md. 2022). The court accordingly held that "common issues do not predominate" on causation. *Id.*

The District of Columbia in *Attias v. CareFirst, Inc.* similarly recognized that identifying which members acted "in response to the CareFirst data breach in particular, as opposed to any number of other data breaches in recent years," would "raise individualized inquiries as to the causation elements" of the claims. 344 F.R.D. 38, 53-54 (D.D.C. 2023). The Western District of New York applied the same predominance principle in *Fero v. Excellus Health Plan, Inc.*, where it found that causation was "not amenable to classwide resolution" and individualized inquiries predominate. 502 F. Supp. 3d 724, 744 (W.D.N.Y. 2020).

Here, any determination of causation would require an individualized review of each class member's circumstances. Ms. Kwon's analysis confirms that a search for data breaches affecting Plaintiff identified multiple unrelated incidents involving her information, and the available notification data provide no common methodology for attributing any subsequent appearance or alleged misuse of information to the PPEC incident. *See* Exhibit C (Declaration of Sonya Kwon at ¶¶ 29, 31-33 (September 18, 2026)).

These causation issues are particularly significant here because PPEC cannot determine whose information was included in the portion of data that was actually copied. *See* Exhibit A at 4. As a result, the Court would be required to conduct individualized inquiries into not only the source of any alleged harm, but also into whether the individual's information was affected by the incident in the first place. Accordingly, causation cannot be established through common proof.

### 3. *The Proposed Class Includes Members Who Suffered No Injury and Lack Standing*

"Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring))). In a damages action, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id.* at 436. The Second Circuit enforces the same principle at the class stage: "no class may be certified that contains members lacking Article III standing," and "[t]he class must therefore be defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 231 (S.D.N.Y. 2022) (applying *TransUnion* in a putative class action).

Plaintiff will likely note that this Court already found Article III standing earlier in this case. That ruling, however, addressed the *named* Plaintiff on the pleadings and a targeted record. The ruling did not decide whether every *absent* member of a class defined by mere "exposure" has suffered a concrete injury. That is the question predominance now presents. PPEC found no evidence that any individual's information was disseminated or misused. *See* Exhibit A at 4. Moreover, because Plaintiff's proposed class sweeps in every person whose information was only "potentially accessible" – notably including those whose information was never copied at all – it "would appear to sweep in significant numbers of people who have suffered no injury in fact in light of *TransUnion*." *Attias*, 344 F.R.D. at 52. This is not a case in which "virtually all" members were injured and only a "*de minimis*" number were not. *See In re Actos Antitrust Litig.*, No. 1:13-CV-09244, 2024 WL 4251891, at *23 (S.D.N.Y. Aug. 9, 2024). To the contrary, on this record there is no common method for distinguishing the members who suffered a concrete injury from the many who did not, and sorting them would require member-by-member inquiry. *See In re*

*Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 62-63 (S.D.N.Y. 2020) (holding that, because injury was "provable only via individualized inquiries keyed to each particular purchaser, individual determinations of injury will predominate over the common issues," and denying certification under Rule 23(b)(3)). The fact that PPEC notified everyone in the targeted data set cannot establish classwide injury where only about half that data was copied and no misuse has occurred.

### 4. *Damages Are Individual and Cannot Be Proven on A Classwide Basis*

The harms Plaintiff claims to have suffered, including time spent monitoring accounts, out-of-pocket protection costs, emotional distress, and an allegedly unauthorized charge, are inherently individualized. *See* Exhibit D at ¶¶ 18, 20. A Rule 23(b)(3) plaintiff must offer a damages model that is consistent with her theory of liability and capable of measuring damages on a classwide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). Plaintiff does not do so. Instead, she simply states that damages will be addressed through expert testimony and determined by the jury. *See* Exhibit D at ¶ 8.

The individualized character of Plaintiff's damages is illustrated by her own mitigation conduct. PPEC offered every potentially affected individual, including Plaintiff, a complimentary one year Experian identity protection membership. *See* Exhibit A at 1, 2. Nevertheless, Plaintiff purchased a separate identity protection subscription for $209.88 per year in 2023-2024 and now seeks to recover that self-incurred cost. *See* Exhibit D at ¶¶ 20, 23. Whether and how each class member responded to the protection PPEC provided (activating the Experian membership, disregarding it, or purchasing substitute services) and whether any resulting out-of-pocket cost was reasonable and caused by this breach are inherently individualized questions that cannot be adjudicated on a classwide basis. That is precisely the mitigation-causation problem that led the

court in *Attias* to recognize that such issues would raise individualized inquiries. *See* 344 F.R.D. at 53-54.

A reliable classwide damages methodology is not possible on this record. Any damages analysis would first require identifying which individuals were actually affected and what specific data elements, if any, were compromised for each person. Those issues are significant because the alleged consequences of exposing a name and a bank account number differ materially from the alleged consequences of exposing a name and a Social Security number. *See* Exhibit C (Declaration of Sonya Kwon at ¶¶ 19-24 (September 18, 2026)) (the available data do not identify which individuals, or which specific PII or PHI elements, were within the transferred data, and the categories of information vary substantially across individuals).

Before damages can be assessed, the Court would have to determine whether each class member's information was affected, whether that person suffered a cognizable injury, and whether any such injury was caused by this incident. Those are individualized liability and causation questions, not merely individualized damages issues. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 148 (2d Cir. 2015).

Plaintiff argues that the differences among class members are "irrelevant" because all received the same notification. Mot. at 22. However, *a common notice does not establish a common injury*. Nor does it answer the individualized questions that drive this case, including who was affected, whether any injury occurred, whether the incident caused it, and what damages, if any, resulted. Those issues remain individual and predominate over any questions susceptible to common proof.

For the foregoing reasons, individualized questions of injury, causation, and damages predominate, and Plaintiff cannot establish predominance under Rule 23(b)(3).

### B. Rule 23(b)(3) – Superiority

Rule 23(b)(3)'s superiority requirement asks whether a class action is the most efficient and practical method of resolving the controversy. That requirement is not satisfied where the case would require individualized determinations as to class membership, liability, injury, and damages.

The Second Circuit's decision in *Johnson v. Nextel* is on point. In that case, a law firm representing 587 employees from 27 states in discrimination claims against Nextel entered a settlement arrangement that the plaintiffs alleged created a firm-wide conflict of interest. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 132-33 (2d Cir. 2015). The district court certified a Rule 23(b)(3) class, but the Second Circuit vacated, holding that because whether each client had knowingly waived the conflict had to be resolved "on a case-by-case basis," requiring individualized inquiry into "[w]hat information was provided to each client" and "what[ ] advice" counsel gave each one, those questions "g[o] to the heart of defendants' liability for each class member's alleged injury" and were not "collateral issues" that could be deferred. *Id.* at 147. The Court concluded that "[b]ecause liability for a significant bloc of the class members and damages for the entire class must be decided on an individual basis, common issues do not predominate over individual ones and a class action is not a superior method of litigating the case." *Id.* at 148.

The same is true here. As in *Johnson*, the questions that determine liability and recovery (whether a given person's information was actually copied, whether that person suffered a cognizable injury, whether this incident caused it, and what damages resulted) "go to the heart of" liability and must be tried member-by-member for each of the hundreds of putative class members Plaintiff seeks to represent. *See In re Aluminum Warehousing*, 336 F.R.D. at 63 (denying certification where "individual determinations of injury will predominate"); *Attias*, 344 F.R.D. at 53-54.

This case is distinguishable, for example, from the Rule 23(b)(2) class this Court certified in *West v. Gobeille*, 450 F. Supp. 3d 497 (D. Vt. 2020). There, the plaintiffs sought only "injunctive and declaratory relief," and "a single injunction and declaratory judgment [would] deliver relief to all class members" challenging a common treatment policy. *Id.* at 512. Since that was a (b)(2) class, the Court had no reason to weigh predominance or superiority, or to confront individualized proof of injury, causation, and damages – the very requirements that govern Plaintiff's (b)(3) damages class and that she cannot satisfy here.

Plaintiff also fails to show that class treatment is necessary to make these claims economically viable. Plaintiff alleges damages that include out-of-pocket expenses, identity-protection costs, and an allegedly unauthorized charge on a financial account. *See* Exhibit D at ¶¶ 18, 20. Regardless of their ultimate merit, those are not nominal injuries. On this record, Plaintiff has not shown that a class action would produce efficiencies that outweigh the individualized inquiries required to litigate the claims.

Accordingly, Plaintiff cannot establish superiority under Rule 23(b)(3).[1]

### C. Ascertainability

Plaintiff's proposed class does not satisfy the ascertainability requirement. Plaintiff defines the class as all persons whose information was "exposed" in the incident, but the Motion fails to even describe what "exposed" means. Mot. at 8. This omission is telling, considering only about half of the targeted data was copied, and PPEC cannot determine which specific files were included in the copied portion. *See* Exhibit A at 4. As a result, the record does not establish whose

---

[1] Plaintiff's Motion improperly addresses class notice, including a request that, if certification is granted, the Court compel PPEC to provide a mailing list so that notice may be served. Mot. at 5-6. These arguments are premature and do not bear on whether the Rule 23 requirements are met. Any such notice obligation arises only "[f]or any class certified under Rule 23(b)(3)." Fed. R. Civ. P. 23(c)(2)(B).

information was actually taken. A class of persons whose information was "exposed" consequently lacks the "definite boundaries" Rule 23 requires. It includes every person whose information appeared somewhere in the targeted data set, regardless of whether that person's information was ever actually copied, and it provides no objective means of distinguishing class members from non-members. *See Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015); *Petrobras*, 862 F.3d at 269.

Plaintiff's reliance on reliance on *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), is misplaced. Plaintiff points to the idea that providing a timeframe, place, and affected group is "all that is needed" Mot. at 4. However, in context, that was to say that an administrative feasibility challenge was not required. The *Fikes* court did not hold that any objectively defined class is ascertainable regardless of whether its membership can actually be determined. *See Fikes*, 62 F.4th at 716-17. Unlike the class in *Fikes*, which was established by a defined period, place, and course of conduct that objectively determined its membership, Plaintiff's class turns on whose information was actually copied, which cannot be determined.

Plaintiff also asserts, notably without citation, that the class can be identified from "PPEC's own business records" and that it "involves over 600 consumers." Mot. at 4. The record does not support these assertions. PPEC's records merely identify the individuals who received notice of the incident, not the individuals whose information was actually compromised. Only a portion of the targeted data was copied, and PPEC cannot determine which specific files were included in that portion. *See* Exhibit A at 4. Consequently, and contrary to Plaintiff's unsupported assertion, the members of the class Plaintiff seeks to certify cannot be identified from PPEC's records. *See* Exhibit C (Declaration of Sonya Kwon at ¶¶ 25-28, 34-38 (September 18, 2026)) (no reliable and reproducible methodology exists for identifying class members from the available data, and certain

changeable identifiers – such as health insurance member numbers, subscriber identifiers, policy numbers, patient account numbers, and financial account information – may no longer remain associated with the same individual).

Courts confronting the same problem in data breach cases have reached the same conclusion. In *In re Blackbaud, Inc., Customer Data Breach Litig*., No. 3:20-mdl-02972, 2024 WL 2155221 (D.S.C. May 14, 2024), the court denied certification because "[m]illions of individualized inquiries would be required to determine, *at minimum*, (1) whether the putative plaintiffs are in fact members of the class . . . [and] (2) which unencrypted data elements belonging to each putative plaintiff were exposed." *Id.* at *24. Observing that "[v]ery few courts in this country thus far have been willing to certify Rule 23(b)(3) classes involving individual consumers complaining of a data breach," the court "decline[d] to join the minority." *Id.* at *25 (quotation omitted).[2]

To the extent Plaintiff responds that identifying members is at least "objectively possible," that argument only reframes the problem. *See Petrobras*, 862 F.3d at 270. The individualized inquiry required to determine whose information was actually copied is precisely the kind of member-by-member proof that defeats predominance under Rule 23(b)(3), as explained above. Accordingly, Plaintiff cannot establish ascertainability.

**D. Rule 23(a) – Typicality**

Typicality requires that the named plaintiff's claims "occupy essentially the same degree of centrality" as those of the absent class members. Mot. at 12 (quoting *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)). Plaintiff cannot make that showing.

[2] *Blackbaud* arose in a circuit that, unlike the Second Circuit, does require administrative feasibility. However PPEC cites it not for that standard, but for its confirmation that determining who was actually affected by a breach, and with respect to which data, is an inherently individualized exercise. *See Blackbaud,* 2024 WL 2155221.

First, the information allegedly at issue for Plaintiff differs materially from that of many members of the proposed class. PPEC's notice to Plaintiff identifies her date of birth and certain protected health information as potentially affected. It does not identify her Social Security number, driver's license number, or financial account information. *See* Exhibit A at 3. By contrast, the proposed class includes individuals whose Social Security numbers, driver's license numbers, and financial account information were allegedly exposed. *See* Exhibit B at 2. Those differences are significant because the nature of the alleged risk, the likelihood of misuse, and the evidence necessary to establish injury and causation vary depending on the type of information involved. The available data reflects numerous combinations of potentially affected information, meaning Plaintiff's data profile is not representative of various members of the class she seeks to represent. *See* Exhibit C (Declaration of Sonya Kwon at ¶¶ 20-22 (September 18, 2026)) (the Notification List reflects substantial variation in the categories of information potentially affected across individuals, with the number of potentially affected data elements ranging from one to eleven).

Plaintiff's reliance on *In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 299 (N.D. Cal. 2018), to excuse those differences is improper. *See* Mot. at 13. The court in *Anthem* found typicality in a *settlement* class where it was undisputed that every class member's information had been impacted. *Id.* at 308-09. Membership and exposure were undisputed facts in *Anthem* – the only variation among class members was the category of information that had been compromised. Here, by contrast, the variation is not merely the type of information allegedly exposed, but whether any given person, including Plaintiff, was affected by the incident in the first place. *Anthem* did not address that issue.

Second, Plaintiff's claimed injuries are based on circumstances unique to her, and those unique circumstances expose her to defenses that will consume the litigation. The Second Circuit

has held that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," because of "the danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her]." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) (quotation omitted); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (a court must find the representative "not subject to any unique defenses which threaten to become the focus of the litigation" (quotation omitted)). Plaintiff claims damages based on, among other things, time spent monitoring accounts, out-of-pocket identity protection expenses, emotional distress, and an allegedly unauthorized charge on a credit union account. *See* Exhibit D at ¶¶ 18, 20. Those allegations are unique to Plaintiff and are not representative of the claims of the proposed class as a whole. As a result, a substantial portion of the litigation would focus on issues specific to Plaintiff, including whether she suffered the injuries she claims and whether those injuries were caused by the incident at issue. There is no evidence showing that these individualized questions are shared by many of the absent class members she seeks to represent. Plaintiff therefore cannot satisfy Rule 23(a)(3).

**E. Rule 23(a) – Adequacy**

Rule 23(a)(4) requires Plaintiff to demonstrate that she will fairly and adequately protect the interests of the proposed class. *See* Mot. at 13. In the Second Circuit, adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation," *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000), and "serves to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Plaintiff's Motion offers little beyond the assertion that

no conflict exists, supported only by her own declaration that she is "unaware of any interests antagonistic to the class." Mot. at 5; Gaboriault Decl. ¶ 17.

The same facts detailed above that defeat typicality also undermine adequacy. Plaintiff's claims are driven by individualized allegations that are not shared by the class she seeks to represent, and the same unique defenses that render Plaintiff atypical also make her an inadequate representative. A representative "preoccupied with defenses unique to [her]" cannot fairly protect absent members whose claims do not present those defenses. *Baffa*, 222 F.3d at 59-60; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009). Because the litigation would be diverted to Plaintiff's singular misuse allegation, atypical data profile, and individual mitigation choices, she cannot establish adequacy under Rule 23(a)(4).

### F. Rule 23(a) – Commonality

Plaintiff argues that commonality exists because the proposed class members' claims arise from the same security incident and raise common questions regarding PPEC's data security practices and notification efforts. Mot. at 11. However, the existence of a common event does not establish commonality. Commonality requires more than the identification of a common question. The plaintiff must show that class members "have suffered the same injury," and that the proposed common contention is capable of generating a common answer that will resolve an issue central to the validity of each class member's claim "in one stroke." *Dukes*, 564 U.S. at 350.[3] The critical

[3] In denying PPEC's motion to bifurcate discovery, this Court observed that two "[f]undamental questions"—"the nature of the breach" and "efforts to protect the confidential information"—"will most likely be uniform across the purported class." *Gaboriault v. Primmer, Piper, Eggleston, & Cramer, P.C.*, No. 2:24-CV-113, 2024 WL 4527102, at 2 (D. Vt. Oct. 18, 2024). PPEC does not dispute that observation, but it does not carry Plaintiff's burden. That was a discovery-related ruling that expressly reserved the "resulting harm" question as distinct, and it did not decide commonality or predominance.

inquiry is not whether common questions can be posed, but whether a classwide proceeding can generate common answers that drive the resolution of the litigation. *See* Mot. at 10.

Commonality under Rule 23(a)(2) requires more than common questions about a defendant's conduct. It requires that a common contention "be capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. That common conduct may be established classwide does not answer the questions that actually determine each member's claim, including whether that person's information was copied, whether they were injured, whether this breach caused the injury, and what damages resulted. Those questions turn on facts unique to each putative class member, so no common answer can resolve the claims "in one stroke." *Dukes*, 564 U.S. at 350. This is the opposite of *West v. Gobeille*, where a single common policy could be adjudicated and remedied by a single injunction classwide. 450 F. Supp. 3d at 512.

Plaintiff's reliance on *In re Anthem, Inc. Data Breach Litigation* and *Koeller v. Numrich Gun Parts Corp.* is not persuasive. As Plaintiff acknowledges, *Anthem* involved certification of a settlement class. Mot. at 7. The same is true of *Koeller*, which is an unreported order granting preliminary approval of a class settlement. *See Koeller v. Numrich Gun Parts Corp.*, No. 1:22-cv-675, 2023 WL 8805705 (N.D.N.Y. Dec. 20, 2023). Settlement classes are evaluated under a different framework because a court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Those decisions therefore provide little guidance on whether commonality (or predominance) exists in a *contested* Rule 23(b)(3) class action.

Plaintiff's remaining authorities are likewise insufficient. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001), is an out-of-circuit decision entitled to no more

than persuasive weight, and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)—which Plaintiff cites for the commonality standard—is the decision that *reversed* class certification for failure to establish a common question capable of classwide resolution. *Id.* at 350.

Plaintiff identifies common allegations concerning PPEC's conduct, but Rule 23(a)(2) requires common answers capable of resolving the claims of the class. Since the dispositive issues here depend on individualized facts relating to class membership, injury, causation, and damages, Plaintiff cannot satisfy the commonality requirement.

**G. Rule 23(a) – Numerosity**

Plaintiff has not established the size of any class that can properly be certified. Plaintiff attempts to cure this deficiency by defining the proposed class as all persons whose information was allegedly "exposed" in the incident, yet Plaintiff offers no evidence establishing how many individuals actually meet that definition. *See* Mot. at 3. Instead, Plaintiff relies on the number of people who received notice of the incident. As discussed above, PPEC provided notice to all individuals whose information was contained within the targeted data set, even though only a portion of that data was copied and PPEC cannot determine which specific files were taken. *See* Exhibit A at 4. The notification population, therefore, does not establish the size of the proposed class.

Plaintiff invokes the Second Circuit's presumption that joinder is impracticable once a class reaches forty members, but even the decision cited for that presumption requires the plaintiff to "show some evidence of or reasonably estimate the number of class members." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Plaintiff has not reasonably estimated the number of people

whose information was actually copied. Plaintiff has only estimated the number who were notified.[4]

Rule 23 requires more than assumptions. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Since Plaintiff cannot demonstrate how many individuals actually fall within the proposed class definition, she cannot meet her burden under Rule 23(a)(1).

## V. CONCLUSION

For the reasons stated above, PPEC respectfully requests that the Court deny Plaintiff's Motion for Class Certification in its entirety and grant such other relief as the Court deems just and proper.

Dated this 18th day of September, 2026.

Respectfully submitted,

**DOWNS RACHLIN MARTIN, PLLC**

*/s/ Matthew Borick*
Matthew Borick
State Bar No. 4064
199 Main Street
Burlington, VT 05401
Telephone: (802)-863-2375
mborick@drm.com

**WOOD SMITH HENNING & BERMAN, LLP**

[4] Plaintiff's remaining authorities are unpersuasive. In *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016), the court applied the forty-member presumption where the class size (over 300) was undisputed. It was not applied where, as here, the size of a properly defined class cannot be determined at all.

*Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967), is an out-of-circuit, civil-rights-era decision that says nothing about how to count a class whose very membership is unknown.

*/s/ Christopher J. Seusing*
Christopher J. Seusing *(Pro hac vice)*
.
Timothy D. Shea *(Pro ha vice)*
33 Riverside Avenue., Suite 502
Westport, CT 06880
Telephone: (475) 755-7040
cseusing@wshblaw.com
tshea@wshblaw.com

***Attorneys for Defendant***
***Primmer Piper Eggleston & Cramer PC***

## CERTIFICATE OF SERVICE

I certify that on the date stated above I caused the foregoing to be filed with the Clerk of Court through the CM/ECF system, which will serve notice of the filing on all counsel of record.