# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| SHAWNA GABORIAULT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10<br><br>Defendant. | Civil Action No. 2:24-cv-00113 |

**DECLARATION OF SONYA KWON**

1. I am a Senior Managing Director at Ankura Consulting, Inc. ("Ankura"), a global litigation and management consulting firm. I lead the Complex Data and Statistical Analysis practice and specialize in the application of financial, statistical, and complex data-intensive analyses to legal and regulatory issues. My education includes a B.A. in Economics from the University of California, Berkeley and an M.B.A. from the University of California, Los Angeles. In addition to Ankura, I have worked at Navigant Consulting, Inc., Deloitte & Touche LLP, PricewaterhouseCoopers LLP, and Arthur Andersen LLP. At all of these firms, I developed and implemented national complex data analysis programs and courses.

2. My qualifications are summarized in greater detail in my curriculum vitae, which is attached as **Exhibit 1**. Over the past twenty-six years, I have been involved in a number of complex litigation matters involving a range of issues, including data collection, conversion, management and statistical, economic or data-intensive analysis. I have worked on numerous matters involving complex data analytics, and am experienced in analyzing data systems and

information to determine whether class members can be ascertained from the data available, and whether purported harm to each member can be calculated with the data available.

## Assignment

3. Ankura was retained by Wood Smith Henning & Berman LLP on behalf of Defendant Primmer Piper Eggleston & Cramer, PC ("PPEC"), to evaluate whether the data and materials produced in this litigation provide a reliable and reproducible basis for identifying individuals who satisfy Plaintiff's proposed class definition.

4. The hourly bill rate currently charged by Ankura for my services in connection with this matter is $775/hour and the hourly bill rates for other Ankura professionals assisting me range from $250/hour to $670/hour. Ankura's compensation does not depend on either the findings of my review or the outcome of this case. I have prepared this Report based on the work my team and I have performed to date and the information available to me as of the date of this Report. Due to the ongoing nature of this litigation, I reserve the right to amend or supplement my opinions based on any additional information that I may be asked to consider or any additional analyses that I may be asked to perform.

## Nature of Engagement

5. Plaintiff alleges that PPEC, a law firm, "fail[ed] to safeguard highly sensitive Protected Health Information ("PHI") including but not limited to medical information, names, health insurance information and policy numbers, diagnosis and clinical information, physician name and practice type, medical history, medical procedure information, medical record numbers, test results and lab reports, treatment type and location, as well as Personal Identifying Information ("PII") including names, Social Security numbers, driver's license numbers, financial account numbers, dates of birth, online credentials, tax identification numbers, passport numbers and/or

electronic signatures which Defendant collected from Plaintiff and/or Class Members (PII and PHI collectively referred to as "Private Information"), and fail[ed] to provide timely, accurate and adequate notice to Plaintiff and other Class Members that their Private Information had been stolen and fail[ed] to provide timely, accurate and adequate notice of precisely what types of information were stolen."[1]

6. I have reviewed the Complaint, in which Plaintiff seeks to represent a class defined as follows:

> All persons whose PII and/or PHI was exposed in the PPEC Data Breach announced on or about August 4, 2022.[2]

## BACKGROUND

7. According to PPEC's notices to state regulators, in November 2021, PPEC discovered that an unauthorized third party gained access to its network and copied data to a foreign hosting site located in New Zealand (the "Data Breach"). PPEC reported that approximately 76 gigabytes ("GB") of data were identified for copying, but that the transfer was stopped after approximately 46 GB had been copied. PPEC worked with the foreign hosting site and law enforcement to restrict access to the data and ultimately to destroy the copied data. PPEC was, and remains, unable to identify the specific files that comprised the 46 GB of copied data.

8. Following the Data Breach, PPEC retained Charles River Associates ("CRA") to review the entire 76 GB of data that had been targeted to identify personal data that possibly had been placed at risk. On April 14, 2022, it determined that the data contained various types of PII and PHI.

---

[1] Class Action Complaint, filed February 2, 2024 ("Complaint") p.1.

[2] Complaint, p.55.

9. PPEC subsequently retained Kroll to provide written notice to potentially affected individuals between July 22, 2022, and November 15, 2022.

## Data and Materials Considered

10. In preparing this Report, I reviewed documents produced during the course of this litigation, including Plaintiff's Complaint, other pleadings, discovery materials, and legal filings, and related documents. These documents included the "Notice of Security Incident" breach notification letter to Plaintiff Shawna Gaboriault, dated August 4, 2022[3], and includes attachments that provide background information on the incident, including the steps taken by PPEC after their discovery of the attack on their network. I also reviewed a spreadsheet prepared by CRA[4] and four spreadsheets prepared by Kroll[5], which PPEC retained to provide notice to potentially affected individuals.

11. The spreadsheet prepared by CRA (the "Notification List") contains information concerning the individuals whose PII and/or PHI CRA identified as potentially exposed during the Data Breach. The Notification List also contains two fields (one for PII, one for PHI) that summarize the specific type or types of PII/PHI identified as potentially exposed for each individual. The descriptions in these fields include, for example, "Date of Birth (DOB)," "Driver's License / State ID," "SSN," and "Diagnosis / Clinical information." The Notification List also contains fields corresponding to certain types of PII and PHI. When applicable, these fields contain the particular information associated with the individual. For example, the "DOB" field contains

[3] GABORIAULT_PPEC_00001 - 00016

[4] Primmer- Separated Notification List- PO redacted 10_28_22 ("Notification List").

[5] Primmer- Wave 1 Enrolled Members Report 7.22.22 (86842157v1)-c; Primmer- Client Mail Enrolled Members Report 9.20.22 (86840131v1)-c; Primmer- Wave 2 Enrolled Members Report 10.3.22 (86842173v1)-c; Primmer- Wave 3 Enrolled Members Report 11.15.22 (86840115v1)-c (collectively, "Kroll Reports").

the individual's date of birth where CRA identified the individual's date of birth as potentially exposed. The "SSN" field contains the individual's Social Security Number where CRA identified that information as potentially exposed. For PHI, the Notification List includes fields for "Medical Procedure/Diagnosis," "Medical Record Number," "Patient Account Number," "Prescription Information," and "Health Insurance Member Number/Group Number/Subscriber ID."

12. The four spreadsheets prepared by Kroll ("Kroll Reports") contain identifying and mailing information for individuals who were sent notification letters about the Data Breach. I understand that each spreadsheet corresponds to one of four notification dates. Each Kroll Report includes the first name, middle name, last name, and mailing address of each individual included in the corresponding notification mailing. Each report also includes text describing the type or types of PII and/or PHI identified as potentially exposed for each individual.

13. A complete list of the documents and data I reviewed is attached as **Exhibit 2**.

## EXPERT OPINION ON CLASS CERTIFICATION

14. Based on my review of the data and documents produced during this litigation, it is my opinion that the available data do not provide a reliable and reproducible methodology for identifying individuals who satisfy Plaintiff's proposed class definition. More specifically:

a. **OPINION 1:** The available records identify individuals whose information was considered potentially at risk based on CRA's review of approximately 76 gigabytes of data identified for copying. However, the available materials do not identify which files comprised the approximately 46 gigabytes of data that were actually transferred during the incident. As a result, the available data do not

establish which individuals had PII and/or PHI contained within the approximately 46 GB of data reportedly transferred during the incident.

b. **OPINION 2:** The available data do not identify which specific PII or PHI elements associated with any particular individual were contained within the transferred data. Accordingly, the available data do not establish whether all, some, or none of the PII and/or PHI associated with a particular individual were contained within the transferred files.

c. **OPINION 3:** Plaintiff has not identified a methodology for determining which individuals identified in the broader 76 GB review population had information contained within the 46 GB reportedly transferred. Without a methodology that reliably bridges those two populations, the available records do not provide a reliable and reproducible process for identifying individuals who satisfy Plaintiff's proposed class definition. In my experience, a reliable methodology for identifying individuals who satisfy a data breach class definition should be objective, reproducible, capable of independent validation, and should permit another analyst reviewing the same underlying data to identify the same individuals using the same criteria.

d. **OPINION 4:** To the extent an analysis seeks to attribute a subsequent appearance or alleged misuse of an individual PII or PHI to the PPEC incident, the available notification data do not independently establish which data elements associated with a particular individual were contained within the transferred data, or whether the appearance of an individual's information could be attributed to another source. The data does not, by itself, establish the incident from which that information

originated. The available notification data do not provide a common methodology for attributing the appearance of alleged misuse of information to the PPEC incident. Additional information beyond the notification data would be required to evaluate attribution for any individual.

e. **OPINION 5:** Certain categories of information identified in the Notification List, including health insurance information, subscriber identification numbers, policy numbers, account information, patient account numbers, and other similar identifiers, may change over time or may no longer remain associated with the same individual. The available data do not identify when such information was collected, whether it remained current at the time of the incident, or whether it remained associated with the same individual thereafter. Accordingly, the available data do not permit evaluation of whether such identifiers can serve as reliable and durable identifiers in any ascertainment methodology that relies upon those fields.

15. My opinions developed to date are based on the class definition and harm alleged in the Complaint. If Plaintiff or an expert retained on behalf of Plaintiff offers a methodology for identifying purported Class Members or calculating damages at a later date, I understand that I may be asked to evaluate such methodology. Similarly, if the Plaintiff offers a revised class definition at a later date, I understand that I may be asked to evaluate whether the data produced in this litigation could be used to identify class members under the revised definition.

## THE AVAILABLE DATA DO NOT IDENTIFY WHICH INDIVIDUALS' DATA WAS TRANSFERRED IN THE BREACH

16. Plaintiff seeks to represent a class of individuals whose PII and/or PHI were exposed in the PPEC data breach. My assignment was to evaluate whether the available data and

materials provide a reliable basis for identifying individuals who satisfy that proposed class definition. It is my understanding that approximately 76 GB of data were identified for copying during the incident and that approximately 46 GB of data were ultimately transferred. It is further my understanding that the specific files comprising the transferred data cannot be identified from the available materials.[6] CRA reviewed the broader set of 76 GB of data and prepared a Notification List identifying individuals whose information was considered potentially at risk. As a result, inclusion on the Notification List indicates that an individual's information was identified within the broader population of data reviewed by CRA.[7] Inclusion on the Notification List does not establish that the individual's information was contained within the subset of data reportedly transferred during the incident.

17. Because the available materials do not identify which files comprised the transferred data, they do not provide a reliable means of determining which individuals had information contained within that transferred data.[8] Accordingly, the available data do not identify which individuals satisfy Plaintiff's proposed class definition.

18. Solely assuming that all individuals appearing on the Notification List or Kroll Reports satisfy Plaintiff's class definition would require an assumption that is not supported by the available data.

## THE AVAILABLE DATA DO NOT IDENTIFY WHICH PII OR PHI ELEMENTS WERE CONTAINED WITHIN THE TRANSFERRED DATA.

19. The Notification List contains information concerning the types of PHI and/or PII that CRA identified as potentially at risk for particular individuals. However, because the specific

[6] GABORIAULT_PPEC_00004-00005

[7] Primmer Piper Eggleston Cramer PC - CRA Statement of Work - 2.22.2022-c

[8] GABORIAULT_PPEC_00004-00005

files that comprised the transferred data cannot be identified from the available records, the Notification List does not establish which of those individuals and data elements were actually contained within the transferred data.

20. For example, an individual may be associated with several categories of PII or PHI in the Notification List. The available records do not identify whether all, some, or none of those associated data elements were contained within the transferred files. Based on my review of the data, 135 individuals were associated with only one potentially impacted data element in addition to their name, but other individuals received notice that multiple PHI and/or PII data elements were potentially transferred. The table below summarizes the number of individuals within the the Notification List and the number of data elements associated with each individual's name.

| Count of PII/PHI Categories | # of Individuals[9] |
|---|---|
| 1 | 135 |
| 2 | 252 |
| 3 | 111 |
| 4 | 49 |
| 5 | 20 |
| 6 | 5 |
| 7 | 11 |
| 8 | 8 |
| 9 | 6 |
| 10 | 4 |
| 11 | 2 |
| **Total** | **603** |

21. Approximately 36% of individuals (216 of 603) were associated with three or more PII or PHI categories, while 22% (135 of 603) were associated with only one category. The number of potentially impacted data-element categories associated with individuals ranged from one category to eleven categories. These results demonstrate that individuals within the Notification

[9] I assumed that each record within the Notification List corresponded to a unique individual.

List are not associated with a uniform set of potentially impacted information. Rather, the amount and type of information associated with individuals varies substantially across records.

22. There is also significant variability in the types of data elements that may have been impacted across the individuals that were noticed. The most common combination of data elements, potentially impacting 143 individuals, were the individual's name, "Financial Account Number", and "Financial Account Number Last 4".[10] The next most common combination of data elements which potentially impacted 60 noticed individuals is name, "DOB", "Drivers License Number", and "Drivers License State". I identified 46 individuals whose combinations of potentially impacted data elements were unique within the Notification List.

23. The Notification Data and the Kroll Reports do not identify how information associated with any particular individual was stored, organized, or distributed among files that may or may not have been transferred. The available records do not identify whether the data elements associated with a particular individual were stored together within a single file, distributed across multiple files, or whether any such files were among the 46 GB reportedly transferred. Consequently, the data do not establish which combination of data elements associated with any particular individual, if any, were contained within the transferred data.

24. Accordingly, the available data do not provide a common methodology for determining which specific PII or PHI elements associated with a particular individual were involved in the incident.

[10] Within the Notification List, "Financial Account Number" and "Financial Account Number Last 4" were separate data elements, as were "Drivers License Number" and "Drivers License State".

## PLAINTIFF HAS NOT IDENTIFIED A METHODOLOGY THAT RESOLVES THE LIMITATIONS OF THE AVAILABLE DATA

25. Plaintiff has not identified a methodology for determining which individuals in the Notification List or Kroll Reports had PII or PHI contained within the approximately 46 GB of data reportedly transferred. Nor has Plaintiff identified a methodology for determining which particular PII or PHI elements associated with those individuals were contained within the transferred files.

26. The available records identify individuals whose information was found within the broader population of approximately 76 GB reviewed by CRA. Because the specific files comprising the approximately 46 GB reportedly transferred cannot be identified, the available records do not provide the linkage necessary to determine which individuals, or which data elements associated with those individuals, were included in the transferred data.

27. Accordingly, Plaintiff has not identified a reliable and reproducible methodology that uses the available data to identify individuals who satisfy the proposed class definition. As a result, an independent analyst reviewing the same records would be required to make assumptions regarding which individuals and which data elements were contained within the transferred data.

28. In my experience, a reliable ascertainment methodology should produce the same result when applied by different analysts to the same underlying data. Such a methodology should identify the records involved in the incident, the individuals associated with those records, and the data elements associated with those individuals. Because the available data do not identify the

files comprising the approximately 46 GB reportedly transferred, those steps cannot be performed using the records available in this litigation.

## THE AVAILABLE NOTIFICATION DATA DO NOT ATTRIBUTE SUBSEQUENT APPEARANCES OF ALLEGED MISUSE TO THE PPEC INCIDENT

29. According to a Declaration filed on February 19, 2026 by Pierre Jeppsson, a Director of Cyber Threat Investigations at Ankura ("Jeppsson Declaration"), between December 30, 2025 and January 25, 2026, Mr. Jeppsson conducted a "search for data breaches" that could have impacted the Plaintiff, Shawna Gaboriault. According to the Jeppsson Declaration, a review of publicly available sources and dark web sources relating to Plaintiff identified multiple unrelated incidents involving Plaintiff's information. I understand Mr. Jeppsson's analysis to demonstrate that the appearance of an individual's information in a publicly available or dark-web source does not, standing alone, identify the incident from which that information originated. Thus, the available notification data does not independently establish that subsequent appearances or alleged misuse of potentially breached data can be attributed to the PPEC incident.

30. I do not rely on Mr. Jeppsson's analysis to determine whether Plaintiff's information was contained within the approximately 46 GB of data reportedly transferred during the PPEC incident.

31. To the extent Plaintiff seeks to attribute a subsequent appearance, disclosure, or alleged misuse of information to the PPEC incident, the available notification data do not independently establish that attribution. The Notification List identifies information that CRA determined was potentially at risk within the broader 76 GB review population, but it does not

identify whether a particular data element subsequently appearing elsewhere originated from the approximately 46 GB reportedly transferred during the incident.

32. Accordingly, the available records do not provide a common methodology for determining whether subsequent appearances or alleged misuse of information were attributable to the PPEC incident. Additional information beyond the notification data would be required to evaluate attribution.

33. In my experience, a reliable attribution methodology should be objective, reproducible, and capable of identifying the source from which particular information originated. The Notification List and Kroll Reports do not identify which files comprised the approximately 46 GB reportedly transferred during the incident and therefore do not provide a reliable methodology for determining whether a subsequent appearance or alleged misuse of information is attributable to the PPEC Data Breach. Additional information beyond the notification data would be required to perform such an analysis.

**THE AVAILABLE DATA DO NOT SHOW WHETHER INFORMATION IS CURRENT.**

34. The Notification List and Kroll Reports identify various categories of PHI and PII associated with notified individuals. Some of these identifiers, such as names and Social Security Numbers, are generally intended to remain associated with a particular individual over time. Other identifiers, including health insurance member numbers, subscriber identifiers, policy information, patient account numbers, financial account information, and similar records, may change over time or may no longer remain associated with the same individual.

35. The available records do not identify when these data elements were originally collected, whether they remained current as of the date of the incident, or whether they remain associated with the same individual thereafter. As a result, the available data do not permit

evaluation of whether such identifiers are reliable for the purposes of identifying purported class members.

36. In my experience, a reliable ascertainment methodology should rely on objective identifiers that consistently identify the same individual and permit another analyst reviewing the same data to reach the same result. The available records do not provide sufficient information to evaluate whether certain changeable identifiers satisfy that requirement.

37. I do not opine that a data element loses value merely because it may change over time, nor do I opine that an individual should be excluded from the proposed class on that basis alone. Rather, my opinion is limited to the observation that the available records do not permit evaluation of whether certain identifiers remain associated with the same individual and therefore could be used as reliable identifiers in an ascertainment analysis.

38. Determining whether a changeable PII or PHI element remained current as of the incident date would require additional information not contained in the Notification List or Kroll Reports and may require person-specific inquiry.

39. In summary, the available records identify individuals whose information was considered potentially at risk based on CRA's review of approximately 76 GB of data identified for copying. The available records do not identify the particular files that comprise the approximately 46 gigabytes of data reportedly transferred during the incident. Consequently, the available records do not provide a reliable and reproducible methodology for determining either

(1) which individuals satisfy Plaintiff's proposed class definition or (2) which specific PII or PHI elements associated with those individuals were contained within the transferred data.

Sonya Kwon



# Sonya Kwon

Senior Managing Director

515 S. Flower Street, Suite 3650, Los Angeles, CA 90071

1 Park Plaza, Suite 1050, Irvine, CA 92614

## Contact

Direct +1.949.409.9626
Mobile +1.213.949.5649
sonya.kwon@ankura.com

## EDUCATION

Masters of Business Administration, University of California, Los Angeles

Bachelor of Arts, Economics, University of California, Berkeley

## AFFILIATIONS

West Coast Chapter of Women's Leadership and Mentoring Alliance (WLMA)

ABA Section of Litigation

Sonya is a Senior Managing Director at Ankura and leads the national Commercial Litigation practice, specializing in applying complex data and technical analyses to legal and regulatory matters. With more than twenty-eight years of experience, she provides data-intensive, statistical and economic, AI- and algorithm-related consulting services to attorneys and multinational organizations across investigative, regulatory, compliance, and litigation contexts.

She is an expert in analyzing large, complex datasets, systems, and programs, and has significant experience supporting high-profile forensic and commercial litigation matters. Her work includes assisting clients facing allegations involving AI issues, false advertising, consumer fraud, product liability, data privacy and tracking, data breaches, consumer financial protection, and class action matters. She supports all stages of litigation—from discovery to class certification analysis to damages assessment.

Sonya has testified in dozens of cases on topics including data science and complex data analysis, advanced statistical and financial analyses, algorithmic and technical programming issues, and damages and class certification matters.

### Practice Area

- Consumer class action matters
- False advertising and consumer fraud
- Algorithmic/ AI related matters
- Data privacy and pixel litigation
- Software disputes
- Complex data management analysis and data science
- Statistical and economic analysis

### Client and Industry Focus

- Media and Entertainment
- Banking and Financial Services
- Telecommunications
- Insurance
- Healthcare
- Retail

### *Representative AI & Technology Related Matters*

- **Theft of Trade Secrets Matter (Online Real Estate SaaS Platform):** Retained as the testifying expert in a theft of trade secrets dispute involving competing subscription-based providers of online real estate information. The matter focused on whether one competitor improperly accessed proprietary platform content and used that access to develop or enhance a competing product. Ms. Kwon conducted a forensic review of platform data, algorithms, and software programs produced by both parties, including the structure and metadata of underlying databases. She designed and implemented an analytical repository to normalize and compare data content, system architecture, and algorithmic outputs across the competing platforms. Her work assessed whether proprietary information was accessed without authorization, the extent to which that information could have been used for competitive advantage, and whether public claims regarding product superiority were supported by the underlying data. She also evaluated the reliability and comparability of the platforms' data and opined on the technical validity of direct marketplace comparisons.
- **Theft of Trade Secrets Matter (Competing Real Estate Information Providers):** Retained as an expert in a trade secrets dispute involving allegations that a competitor improperly accessed and relied upon proprietary real estate data, algorithms, and business logic to build a competing technology platform. Ms. Kwon performed a forensic analysis of software systems and platform functionality, including a detailed review of algorithms, process flows, documentation, and business rules used to collect, process, and deliver information pre- and post-separation. She compared source code, technical documentation, and system logic to identify similarities and differences in functionality, structure, and operational design. Her analysis addressed whether confidential code, rules, or workflows were misappropriated and the technical feasibility and usefulness of transferring those elements into a different programming language or system. Ms. Kwon also provided expert testimony on the implications of shared business logic and platform design in the development of competing products.
- **Theft of Trade Secrets – Online Information Providers:** Forensic review and comparison of competing algorithms, software, and data. Built standardized analytical repositories; compared metadata, code, and business logic/process flows (pre- and post-separation). Assessed similarity, access, and the usefulness of code and logic when ported across programming languages; opined on reliability of data and reasonableness of product comparisons.
- **Data Breach – SaaS Provider (Class Action Defense):** Retained as defense expert in a cybersecurity class action. Demonstrated that the plaintiff expert's methodology was not valid, replicable, or testable and could not identify putative class members. Outcome**:** Class decertified; plaintiff's expert excluded; the Court cited Ankura's analyses as helpful to its evaluation.
- **Cybersecurity/ Data Breach Class Action (SaaS Provider):** Retained as defense expert in a class action arising from a large-scale cybersecurity incident involving complex datasets and disputed methodologies for identifying affected individuals. Conducted an independent technical evaluation of Plaintiff's expert's methodology and demonstrated that it was not reliable, not reproducible, and that the proposed framework

could not accurately or consistently identify putative class members, due to data gaps, inconsistent identifiers, and the need for individualized, record-by-record analysis. The Court excluded opposing expert and decertified the class.

- **Web Tracking, Cookies and Pixel Class Action (Healthcare Provider):** Engaged by outside counsel to analyze tracking technologies across websites and mobile applications, including cookies, pixels, and related data collection mechanisms across current and historical site versions. Performed detailed technical assessment of embedded data fields, configurations, and tracking behaviors, including how identifiers are generated, transmitted, and stored across systems and whether available data could reliably reconstruct individual user experiences. Demonstrated that tracking data is fragmented, inconsistently recorded, and dependent on numerous variable factors, including browser settings, device environments, and third-party interactions and reconstruction of any individual's experience required person-specific technical analysis. Provided expert testimony explaining the technical limitations of cookie and pixel-based tracking, including gaps in coverage, identifier inconsistencies, and variability in configuration. The Court decertified the class.
- **Pixel Litigation – Healthcare Provider (Class Certification Defense):** Performed complex data and statistical analyses on cookie configurations and pixel tracking to assess whether site events (e.g., authentication, page views, device/browser settings) could be reliably inferred. Outcome: Testified; class decertified.
- **Pixel Litigation – Media & Entertainment:** Identified and traced cookies and tracking pixels across current/prior web and mobile app versions; assessed data fields and configurations (incl. GTM, Google Analytics, Meta Business Manager) to evaluate the likelihood of personal data collection.
- **Breach of Contract – Financial Institution (Neutral Expert):** As third-party neutral, analyzed algorithms and logic triggering mortgage default workflows using disparate sources (foreclosure/REO, asset manager, hazard insurance, claims data). Issued opinions on (1) relevant loan/REO population, (2) potential assignment shortfall, (3) recovery payments, and (4) calculation assumptions. Provided key arbitration testimony.
- **Class Certification – Insurance Company (Algorithm Review):** Evaluated plaintiff expert's algorithm for identifying class members and key data points (injury vs. knowledge dates, documentation processing, penalty/settlement payments, call notes) and assessed its accuracy and reliability.
- **Claims Adjustment Software – Insurance Companies (Class Action**): Assessed the algorithms and logic used to adjust first-party BI claims. Evaluated allegations that insurer defendants used a proprietary system as a "cost containment" tool and colluded to tune/calibrate software to underpay claims.
- **Software Tax Accounting Dispute – California County:** Reviewed vendor code, data, and system design for a custom property tax platform; assessed algorithm accuracy, liability, and damages (including usability of work-to-date, payments made, and incremental completion/maintenance costs). Outcome: County obtained a settlement consistent with the team's damages estimate.
- **Accounting Restatement – Global Software Company:** Led multi-year restatement support: analyzed revenue recognition algorithms for consulting projects; assessed reliability of project completion records.

Extracted and reconciled data from SAP/Oracle/ERP and archives; built an evidence database and automated auditor support packages.

- **Accounting Investigation – Technology Company:** Investigated tracking of inventory, overhead, in-transit and obsolete reserves, and intercompany profit. Conducted forensic accounting, eDiscovery preservation/collection/review, and compliance assessments.
- **Large-Scale Data Breach – Global Company:** Designed and implemented an NLP-based machine learning program to detect PHI across enterprise systems; analyzed program accuracy for potential class certification.
- **Data Breach – SaaS Provider (Regulatory & Class Issues):** Led analysis of billions of records, built custom SQL and other software to assess compromised PII/PHI, and opined on class certification issues for a matter involving hundreds of millions of individuals and multiple state regulators.

### *Representative Experience – Entertainment, Media & Technology*

- **Year-End Accounting & Compliance (Entertainment):** Reviewed sub-unit general ledgers, SAP postings, and supporting documentation; identified control gaps and quantified financial impacts of noncompliance with contractual terms and regulatory requirements.
- **Royalty Reporting & Audit Response (Major Entertainment Company):** Led data quality reviews and forensic analysis in response to multiple royalty audits; traced revenues and expenses across mainframe, SAP, JD Edwards, Oracle, and contract rights systems; validated accuracy and consistency and delivered process improvement recommendations.
- **Financial Systems, Processes & Controls (Entertainment):** Led cross-functional reviews of end-to-end processes (manufacturing, warehousing, distribution, and revenue/expense sharing); assessed internal controls, system mappings, queries, and calculations; validated invoices, adjustments, chargebacks, and setoffs; and estimated accounts receivable balances.
- **Merchandising Participation Inspections:** Identified financial exposures including misallocated advances, deviations from contract methodologies, unreported licenses and cash receipts, improper non-third-party agent fees, and misapplied service fees. Independently validated royalty allocations across characters and product lines by reconciling SKU descriptions to actual product images.
- **Merchandising License Fee Verification:** Verified licensee SKU-level sales reports and royalty distributions against contractual terms; identified calculation errors and estimated royalty underpayments.
- **FCPA-Related Reviews:** Conducted time and expense testing and broader FCPA audits at both film-specific and general ledger levels; collected, reviewed, and validated supporting documentation for income, petty cash, and related accounts.
- **Participant Royalty Dispute (Privileged Matter):** Reviewed participant claims and production economics end-to-end to assess financial exposure, audit risk, and litigation support considerations in a distribution royalty dispute.

- **Valuation – Studio Joint Venture:** Modeled historical earnings and cash flows of distribution rights to forecast future performance and support valuation of a potential studio joint venture investment.
- **Digital Media & Audience Analytics:** Analyzed television ratings share and digital sell-through/rent-through performance; benchmarked against domestic and international box office results to evaluate participant allocation methodologies.
- **International Royalty Inspections:** Collected and validated SAP and international JD Edwards data to confirm accuracy of royalty calculations and participant reporting across multiple territories.
- **Internal Data Systems Review – Satellite Distributor:** Assessed purchases, charge-backs, and rebates; recommended control/reporting enhancements; developed algorithms to validate dealer rebate and customer charge-back claims; built statistical tests to detect anomalies and fraud; created a centralized analytical repository.

### *Representative Financial Services Matters*

- **Overdraft Fee Class Actions (200+ matters):** Directed expert/consulting work for banks and credit unions, including analysis of transaction journals, authorization/settlement data, and account management systems; resequencing analyses; system functionality testing; discovery support; class certification; damages quantification; class notification data prep; and expert/mediation/settlement analyses (e.g., Reg E, sufficient funds, APPSN, posting order, multiple/continuous fees).
- **Data & Discovery (Banks/Credit Unions):** Led extraction and conversion of active, archived, and cold-storage data into structured formats for analysis and production to plaintiffs' counsel, class administrators, and/or the CFPB.
- **Class Certification (Banks/Credit Unions):** Expert analyses on alleged overdraft practices including (a) authorized positive/purportedly settled negative, (b) fees posted despite sufficient funds, and (c) resubmitted ACH/checks (retry fees), with evaluations of commonality and typicality for putative classes and named plaintiffs.
- **Damages (Banks/Credit Unions):** Quantified alleged overdraft damages, including balance recalculations, authorization-to-post matching, fee-to-trigger matching, and exposure measurement; identified class members and calculated settlement awards for resolved matters.
- **CFPB Investigations:** Converted legacy "cold" reports to structured data and identified improperly charged continuous overdraft fees on consecutively overdrawn accounts to respond to agency data requests.
- **FCRA Class Actions:** As expert/privileged consultant, evaluated privacy claims by mining and analyzing data to assess class identification (e.g., death tracking, credit impacts, inaccurate or mismapped data, freezes) and class certification issues.

- **Corporate Trust Accounting – Large Commercial Bank:** Built a 10+ year analytical repository; performed bond recalculations from transaction data; audited program accuracy for regulators; modeled escheat liabilities.
- **Financial Investigation – Large Non-Profit FI:** Built databases and applied advanced statistical analyses to reconstruct and analyze investment account histories, trace funds flows, and quantify alleged losses in a $1B+ high-profile investigation.
- **Government Trust Accounts (Individual Indian Trust):** Created a 60M-record, 15-year repository; reconciled 500k+ accounts to determine status, correct misclassifications, and establish opening balances at electronic system inception.
- **Data Quality Review – EPA/FIFRA:** Served as national SAP expert. Assessed a Fortune 500 company's SAP-over-Oracle sales/distribution data dump and the reliability of a contractor's spreadsheet reconstruction for enforcement analysis.

### *Representative Consumer Class Action Litigation Matters*

- **Major Mortgage Provider (Advertising/Competition):** Expert for alleged deceptive advertising tied to mortgage rate renewals; analyzed marketing collateral and millions of marketing/loan transactions to assess liability and exposure.
- **Online Mortgage Provider (Advertising/Disclosures):** Led integration and analysis of borrower, loan, and servicing data to address class certification and exposure issues.
- **National Rental Car Companies (Optional Add-Ons/Insurance):** Analyzed millions of records to evaluate statistical differences across consumer segments and assessed whether consumers were misled into optional products.
- **Major Sports League (Concussion Litigation):** As statistician/complex data expert, analyzed game statistics, medical records, and player histories to evaluate trends relevant to alleged traumatic head injury risks and disclosures.
- **Electric Utility (Puerto Rico) – $750M Class Action:** Independently verified that billing conformed to regulated rate structures; analyzed class homogeneity and identified conflicts of interest and lack of commonality/representativeness.
- **TCPA Matters (Various):** Provided privileged consulting and defense expert testimony; evaluated data collection/tracking systems; assessed class member identification, call record reliability, and caller ID completeness; verified wireless/wireline status and number histories; and prepared class ascertainment and reliability analyses.

- **TCPA – Financial Services (Databases):** Designed SQL Server environments to house 100M+ call records; normalized data for analysis/production; conducted extensive data quality audits; and led statistical/economic analyses on class certification.
- **National Manufacturer (Warranty):** Analyzed warranty claims, sales, and service notes; performed advanced statistical analyses; reported on class certification issues.
- **Product Liability (Medicaid Claims):** Used statistically valid samples across multiple states to evaluate typicality/commonality and correlations between demographics and utilization/disease mix.
- **Telecom (Charge-Backs):** Assessed charge-back accuracy tied to 900-number complaints; integrated multiple data sources; created sampling methodology; and built a multimillion-record repository.
- **Major Retailer (Refunds/Charge-Backs):** On a privileged basis, evaluated accuracy of returns and charge-backs for electronics; reconciled to invoices/support and estimated A/R balances after adjustments.

### *Healthcare Litigation Matters*

- **Data Breaches – Hospital/Health Plans:** Led multiple matters involving hospital systems and major health plans (incl. lost/misplaced hardware). Built repositories from claims/member data and document-management metadata; traced data flows to identify impacted individuals and data types; evaluated malware effectiveness; and supported notifications and regulatory reporting.
- **Payer/Provider Reimbursement Disputes:** Reviewed contract clauses for stop-loss/high-cost items; evaluated denials (non-covered, medical necessity, authorization); and assessed U&C rates for non-contracted providers across commercial, Medicare, and Medicaid claims.
- **DOJ Investigation – Pharmaceutical (Tablet Size):** Led review of millions of records (calls, emails, QA follow-ups, adverse events, incident reports) related to alleged oversized tablets.
- **Medicare Billing – Sampling/Extrapolation:** Developed and executed sampling plans for hospital cost reports to evaluate non-allowable costs (e.g., management companies in cost-based units, treatment of reserves) and extrapolated findings nationwide.
- **Medicare Fraud Quantification:** Estimated potential fraud/paybacks tied to cost shifting; implemented extrapolation strategies, statistical/financial modeling, and cluster analyses; contributed to fraud risk management programs and assessments.
- **Medicare Reimbursement Dispute – Hospital System:** Built VBA automations to import claim data, detect fraudulent cost reports, and quantify financial impact for a multi-billion-dollar dispute; results informed exposure calculations.

### *Expert Reports and Testimonial Experience*

- ***Tenant Turner Inc. and Showmojo, LLC, vs. Threshold Technology LLC d/b/a, RentEngine and Alexander Stringfellow, Defendants.***
  United States District Court Southern District of Florida (Case No. 1:25-cv-22939-RKA)
  Supplemental Expert Report of Sonya Kwon, September 4, 2026
  Expert Report of Sonya Kwon, July 23, 2026
  Declaration of Sonya Kwon, July 8, 2026

- ***Travelers United, Inc., et. al. vs. Sonesta International Hotels Corporation***
  Superior Court of the District of Columbia (Case No. 2023-CAB-005254)
  Expert Rebuttal Report of Sonya Kwon, March 24, 2026

- ***Denise Beyard et. al., vs. Pentagon Federal Credit Union et. al,***
  United States District Court Easterm District of California (Case No. 1:21-cv-01063-KJM-SAB)
  Expert Report of Sonya Kwon, May 16, 2025

- ***Jay Salyers, et al, v. A.J. Blosenski, Inc.***
  United States District Court, Eastern District of Pennsylvania (Civil Action No. 2:23-cv-04802-WB)
  Expert Report of Sonya Kwon, October 23, 2024

- ***Rockmund Dunbar et. al., v. Twentieth Century Fox Television and ABC, Inc,***
  United States District Court Central District of California (Case No. CV 22-1075-DMG (JC))
  Expert Report of Sonya Kwon, October 14, 2024

- ***JAMES DOE et al., vs. Adventist Health System/ West***
  Superior Court of the State of California County of Los Angeles (Case No. 22STCV36304)
  Deposition of Sonya Kwon, October 18, 2024
  Expert Report of Sonya Kwon, September 10, 2024

- ***Antoinette Hughes et. al., v. Credit Human Federal Credit Union***
  District Court of Bexar County, Texas (Case No. 2021CI07090)
  Deposition of Sonya Kwon, October 8, 2024
  Declaration of Sonya Kwon, August 15 2024

- ***Lane Labbe', et. al., v. Dometic Corporation***
  Unites States District Court Eastern District of California (Case No. 2:20-cv-1975-DAD-DMC)
  Deposition of Sonya Kwon, May 7, 2024
  Expert Report of Sonya Kwon, December 20, 2023

- ***Blackbaud, Inc. Customer Data Security Breach Litigation***
  Unites States District Court District of South Carolina (Case No. 3:20-32-02972-JMC MDL No. 2972)
  Deposition of Sonya Kwon, August 23, 2023

Expert Report of Sonya Kwon, May 16, 2023

- ***Charles Daniel Bickerstaff, et. al., v. Suntrust Bank***
  State Court of Fulton County, State of Georgia (Civil Action No. 10-EV-010485-H)
  Deposition of Sonya Kwon, August 28, 2023
  Report of Sonya Kwon, October 29, 2023

- ***Frantz Samson, et. al., v. United Healthcare Services, Inc.***
  United States District Court, Western District of Washington at Seattle (Case No. 2:19-cv-00175-MJP)
  Declaration of Sonya Kwon, February 21, 2023
  Expert Report of Sonya Kwon, October 18, 2024

- ***Timothy A. Woodhams, Elizabeth Hinz, John Covello, Cynthia Carrilo, Oscar de leon, Daniel Paul, Robert Trepper, and Daniel Utterback, et. al., v. Glaxosmithkline Consumer Healthcare Holdings (US) LLC***
  United States District Court, Southern District of New York (Case No. 1:18-cv-03990-JPO)
  Deposition of Sonya Kwon, December 14, 2022
  Expert Report of Sonya Kwon, October 27, 2022

- ***Martin Melnick, Beth Melnick, Lia Louthan, and Summerfield Gardens Condominium et al., v. Tamko Building Products LLC***
  United States District Court, District of Kansas (Case No. 2:19-cv-02630-JAR-KGG)
  Expert Report of Sonya Kwon, October 20, 2022

- ***Kevin W. Hoog and Rebecca Hoog, et. al., v. Dometic Corporation***
  United States District Court, Western District of Oklahoma (Case No. CIV-20-00272-JD)
  Deposition of Sonya Kwon, October 3, 2022
  Expert Rebuttal Report of Sonya Kwon, September 22, 2022
  Expert Report of Sonya Kwon, August 25, 2022

- ***Traci L. MacMann vs. Tropicana Entertainment, Inc. and Tropicana St. Louis, LLC d/b/a Lumiere Place Casino & Hotels***
  United States District Court, Eastern District of Missouri Eastern Division Case No. 4:19-CV-00404
  Declaration of Sonya Kwon, September 26, 2022

- ***Dara Fresco vs. Canadian Imperial Bank of Commerce***
  Ontario Superior Court of Justice (Court File No. 07-CU-334113PD2)
  Expert Report of Sonya Kwon and Jeremy Guinta, June 15, 2022
- ***Chaz Simmons vs. Isle of Capri Blackhawk LLC. and El Dorado Resorts, Inc.***
  United States District Court of Colorado (Civil Action No. 1:19-CV-00967-JLK)
  Declaration of Sonya Kwon, May 23, 2022

- ***Susanne Pace, individually and on behalf of all others similarly situated, v. Landmark Bank***

Circuit Court of Boone county, Missouri (Case No. 20BA-CV00244)
Declaration of Sonya Kwon, August 13, 2021

- ***Danny L. Walkingstick. et al., v. Simmons Bank, Inc***
  United States District Court Western District of Missouri (Case No. 6:19-cv-03184-RK)
  Expert Report of Sonya Kwon, November 30, 2020
  Deposition of Sonya Kwon, December 8, 2020

- ***Liberty Salad, Inc. et al., v. Groundhog Enterprises, Inc***
  United States District Court Eastern District of Pennsylvania (Case No. 2:17-CV-00226)
  Expert Report of Sonya Kwon, October 30, 2020

- ***Ginger Darty, individually and on behalf of all others similarly situated, v. Scott Credit Union***
  Circuit Court for the Twentieth Judicial Circuit St. Clair County, Illinois (Case No. 19L0793)
  Declaration of Sonya Kwon, September 25, 2020

- ***Frantz Samson, individually and on behalf of all others similarly situated, v. United Healthcare Services Inc.***
  United States District Court for the Western District of Washington (Case No. 2:19-cv-00175-JLR)
  Declaration of Sonya Kwon, June 5, 2020
  Deposition of Sonya Kwon, April 23, 2020
  Supplemental Report of Sonya Kwon, April 13, 2020
  Expert Report of Sonya Kwon, December 11, 2019

- ***Teh Shou Kao and T S Kao, Inc., et al., v. CardConnect Corp.***
  Deposition of Sonya Kwon, March 3, 2020 United States District Court for the Eastern District of Pennsylvania (Case No. 2:16-CV-5707) Expert Report of Sonya Kwon, February 13, 2020

- ***IN RE OPIOID LITIGATION***
  Supreme Court of the State of New York County of Suffolk and County of Nassau (Index No.: 400001/2017 and 400008/2017)

- ***Karmel al Haj, individually and on behalf of all others similarly situated, v. Pfizer Inc.***
  United States District Court for the Northern District of Illinois Eastern Division (Case No. 1-17-cv-06730)
  Expert Report of Sonya Kwon, November 19, 2019

- ***Cynthia D. Larson, et. al., v. Isle of Capri Casinos Inc., et al.***
  United States District Court, Western District of Missouri (Case No. 4:16-CV-00902-ODS)
  Declaration of Sonya Kwon, November 18, 2019

- ***Emma Bradley, et. al., v. The Hertz Corporation***

United States District Court, Southern District of Illinois (Case No. 3:15-cv-00652-NJR-RJD)
Deposition of Sonya Kwon, August 22 2019
Expert Report of Sonya Kwon, June 28, 2019
Expert Report of Sonya Kwon, March 30, 2018

- ***Cryesha Macdonald, et. al., v. Trustmark National Bank***
  United States District Court, Southern District of Florida (Case No. 3:18-cv-852-DPJ-FKB)
  Declaration of Sonya Kwon, April 22, 2019

- ***Catherine Papasan, et. al., v. Dometic Corporation***
  United States District Court, Southern District of Florida (Case No. 1:16-cv-22482-RNS)
  Deposition of Sonya Kwon, March 8, 2019
  Expert Report of Sonya Kwon, February 4, 2019

- ***Terriann Walker, et. al., v. People's United Bank***
  United States District Court, District of Connecticut (Case No. 3:17-cv-00304-AVC)
  Declaration of Sonya Kwon, March 4, 2019
  Declaration of Sonya Kwon, January 18, 2019

- ***Rodney Smith, et. al., v. Bank of Hawaii, et al.***
  United States District Court, District of Hawaii (Case No. cv 16-00513 JMS-RLP)
  Declaration of Sonya Kwon, February 12, 2019
  Declaration of Sonya Kwon, December 3, 2018
- ***In & Out Welders, et. al., v. H & E Equipment Services, et al.***
  United States District Court, Northern District of Alabama (Case No. 7:15-cv-01746-TMP)
  Expert Report of Sonya Kwon, July 11, 2018
  Deposition, August 15, 2018.

- ***Paula Blair, et. al., v. Rent A Center, et al.***
  United States District Court, Northern District of California (Case No. 3:17-cv-02335-WHA)
  Deposition, July 9, 2018.
  Expert Report of Sonya Kwon, June 14, 2018

- ***Sandra Bond, et. al., v. Berkshire Bank and Berkshire Hills Bancorp, et al.***
  United States District Court, District of Massachusetts (Case No. 16-30050-MGM)
  Expert Report of Sonya Kwon, February 27, 2018
  Deposition, April 26, 2018.

- ***John C. Etter, et. al., v. Allstate Insurance Company, et al.***
  United States District Court, District of Northern California (Case No. 17cv184-WHA)
  Expert Report of Sonya Kwon, February 28, 2018
  Deposition of Sonya Kwon, November 30, 2017
  Expert Report of Sonya Kwon, November 17, 2017

- ***Gloria Runton, et al., v. Brookdale Senior Living Inc.***
  United States District Court, Southern District of Florida (Case No. 0:17-cv-60664-CMA)
  Declaration of Sonya Kwon, February 8, 2018

- ***Re: 21st Century Oncology Holdings***
  United States Bankruptcy Court, Southern District of New York (Case No. 17-22770(RDD))
  Declaration of Sonya Kwon, November 6, 2017

- ***Rebecca Rysewick, et. al., v. Sears Holding Corporation, et al.***
  United States District Court, Northern District of Illinois (Case No. 1:15-cv-04519)
  Deposition of Sonya Kwon, August 29, 2017
  Expert Report of Sonya Kwon, June 26, 2017

- ***Monitronics International, Inc., Telephone Consumer Protection Act Litigation***
  United States District Court for the Northern District of West Virginia (MDL No. 1:13-MD-2493)
  Expert Report of Sonya Kwon, May 1, 2017

- ***Brandy Varner, et. al., v. Dometic Corporation***
  United States District Court, Middle District of Florida (Case No. 1:16-cv-22482-RNS)
  Deposition of Sonya Kwon, June 2, 2017
  Expert Report of Sonya Kwon, April 21, 2017

- ***National Hockey League Players' Concussion Injury Litigation***
  United States District Court, District of Minnesota (MDL No. 14-2551 (SRN/JSM))
  Expert Report of Sonya Kwon, April 26, 2017

- ***Nathan Swell et al., v. Wescom Credit Union.***
  Superior Court of the State of California, County of Los Angeles (Case No. BC 586014)
  Declaration of Sonya Kwon, November 23, 2016

- ***Michelle Hummel et al., v. TAMKO Building Products, Inc.***
  United States District Court, Middle District of Florida (Case No. TGW 6:15-cv-910-Orl-40-GJK)
  Deposition of Sonya Kwon, January 12, 2017
  Initial Expert Report of Sonya Kwon, November 2, 2016

- ***Wendy and Nicholas Grasso et al., v. Electrolux Home Products, Inc.***
  United States District Court, Middle District of Florida (Case No. 8:16-cv-00911-CEH-TGW)
  Initial Expert Report of Sonya Kwon, October 3, 2016

- ***TD Bank, N.A. Debit Card Overdraft Fee Litigation MDL No. 2613***

United States District Court, District of South Carolina (MDL No. 2613) Deposition of Sonya Kwon, September 15, 2016
Expert Report of Sonya Kwon, August 23, 2016

- ***Patrick Lynch, et al., v. San Diego Credit Union***
  Superior Court of the State of California, County of San Diego (Case No. 37-2015-00008551-CU-BT-CTL)
  Declaration of Sonya Kwon, July 20, 2016

- ***Richard Disher, Eric Kline, John O'Malley and Dimitri Mishurov, et al., v. TAMKO Building Products, Inc. and TAMKO Roofing Products, Inc.***
  United States District Court for the Southern District of Illinois
  Deposition of Sonya Kwon, June 2, 2016
  Expert Report of Sonya Kwon, May 26, 2016

- ***CORELOGIC, INC., vs. First American Financial Corporation***
  Judicate West Arbitration (Reference No. A213700-25)
  Testimony of Sonya Kwon, May 9, 2016
  Declaration of Sonya Kwon February 26, 2016

- ***Hernandez, et al. v. Point Loma Credit Union***
  Superior Court of the State of California, County of San Diego (Case No. 37-2013-00053519-CU-BT-CTL)
  Declaration of Sonya Kwon, April 18, 2016

- ***Hablian, et al. v. Liberty Mutual Insurance Company, et al.***
  Worker's Compensation Appeals Board, State of California (Case No. 1:11-cv-8987)
  Deposition of Sonya Kwon, March 30, 2016
  Declaration of Sonya Kwon, January 7, 2016

- ***Charlene Faris et al., vs. Flagstar Bank, FSB.***
  State of Michigan in the Circuit Court for the County of Oakland (Civil Action No: 15-145287-CZ)
  Deposition of Sonya Kwon, March 10, 2016

- ***Espejo et al., vs. Santander Consumer, et al.***
  United States District Court, Northern District of Illinois (Case No. 1:11-cv-8987)
  Deposition of Sonya Kwon, January 11, 2016
  Expert Report of December 8, 2015

- ***County of Orange vs. Tata Consulting Services LTD, et al.***
  Central District of California, Southern Division (Case No. SACV13-683 JLS(JCx)) Deposition of Sonya Kwon, December 7, 2015
  Expert Report of September 13, 2015

- ***Debra Harris et al. v. Nortek Global HVAC LLC***
  United States District Court, Miami Division (Case No. 1:14-cv-21884-BB)
  Deposition of Sonya Kwon, November 20, 2015
  Expert Report of Sonya Kwon, November 6, 2015

- ***Huerta v. St. Jude Medical***
  Superior Court of the State of California, County of Los Angeles (Case No. BC526645)
  Trial August 14, 2015
  Deposition of Sonya Kwon, March 23, 2015

- ***Morrison et al. v. Knight Transportation, Inc.***
  Superior Court of the State of California, County of Tulare (Case No. 228016)
  Declaration of Sonya Kwon, May 6, 2015

- ***McKinnon et al. v. Dollar Thrifty, Inc.***
  U.S. District Court for the Northern District of California (Case No. 12-cv--04457_SC)
  Deposition of Sonya Kwon, April 3, 2015

- ***Friedman et al. v. Dollar Thrifty, Inc.***
  U.S. District Court for the District of Colorado (Case No. 12-cv--2432-WYD-KMT)
  Deposition of Sonya Kwon, April 27, 2015
  Expert Report of Sonya Kwon, November 17, 2014

- ***Behaein et al. v. Pizza Hut, Inc.***
  Superior Court of the State of California, County of Los Angeles – (Case No. BC384563)
  Expert Report of Sonya Kwon, September 12, 2014

- ***Batarse et al. v. Desert Nephrology Medical Group, LLC***
  Superior Court of the State of California, County of Riverside – (Case No. 1108219) Deposition of Sonya Kwon, June 3, 2014

- ***Kevin Helde et al. v. Knight Transportation, Inc.***
  U.S. District Court for the Western District of Washington (Case No. 2:12-cv-00904 RSL)
  Rebuttal Expert Report of Sonya Kwon in Support of Defendant, May 20, 2014

- ***Howard Entertainment et al. v. Lisa Kudrow/ Big Fouche Entertainment***
  Superior Court of the State of California, County of Los Angeles – West District (Case No. SC099232)
  Deposition of Sonya Kwon, January 28, 2014

- ***Zheng et al. vs. Amgen Inc.***

Superior Court of the State of California, County of Santa Barbara (Case No. 56-2012-00420-CU-OE VTA)
Declaration of Sonya Kwon, September 13, 2013

- ***Yarger et al. vs. ING Bank, FSB d/b/a ING Direct***
  U.S. District Court for the District of Delaware (Civil Action No. 11-154-LPS)
  Deposition, October 9, 2013
  Expert Report of Sonya Kwon, August 14, 2013

- ***Cline et al. vs. Kmart Corporation***
  U.S. District Court, Northern District Court of California (Case No. 11-2575 WHA)
  Declaration of Sonya Kwon, June 6, 2013

- ***Ovieda et al v. Sodexo Operations, Inc.***
  U.S. District Court, Central District of California (Case No. CV 12-1750-GHK(SSx)
  Declaration of Sonya Kwon in Support, May 6, 2013

- ***Maria Myrna Dominguez v. Sutter's Place Inc dba Bay 101., et al***
  U.S. District Court for the Northern District of California (Case No. 10-cv-02181)
  Trial, December 20, 2012

- ***Reed Construction Data Inc. v. The McGraw-Hill Companies, Inc., et al***
  U.S. District Court for the Southern District of New York (Case No. 09-cv-8578)
  Expert Report of Sonya Kwon, September 7, 2012

- ***Vietnam Veterans of America v. Central Intelligence Agency***
  U.S. District Court, Northern District of California, Oakland Division
  Expert Report of Sonya S. Kwon, August 6, 2012

- ***Toledo v. Little Caesar Enterprises, Inc.***
  Superior Court of the State of California, County of Santa Barbara (Case No. 1265755)
  Expert Report of Sonya S. Kwon, June 22, 2012

- ***Noel Smith, et al. v. MV Transportation***
  Superior Court of the State of California, City and County of Alameda (Case No. RG08389864) Declaration of Sonya S. Kwon, November 4, 2010

- ***McSwain, et al. v. Thrifty Payless, Inc. dba Rite Aid***
  Superior Court of the State of California, City and County of Alameda (Case No. BC429793) Declaration of Sonya S. Kwon, November 15, 2011

- ***Eder Rojas, et al. v. Gail Stoffer, Gail Stoffer dba Somerset Studios, Marco Antonio Espinoza***

Superior Court of the State of California, County of Alameda (Case No. CGC-07-470047)
Expert Report and Deposition of Sonya S. Kwon, August 19, 2009

- ***Worldwide Processors, LLC dba PRP claims v. Washington Mutual Bank, Inc.***
  American Arbitration Association (AAA Case No. 72 148 Y 00779 07 MARS)
  Court Appointed Neutral Expert
  Expert Testimony and Expert Report of James Gordon and Sonya S. Kwon, January 26, 2009

- ***Cindy Fulawka, et al. vs. Bank of Nova Scotia***
  Ontario Superior Court of Justice (Court File No.07-CV-345166CP)
  Expert Report of Sonya S. Kwon, November 4, 2008

- ***Stacey Smith, et al vs. Teletech Holdings, Inc.***
  American Arbitration Association (AAA Case No. 111 600 272 604)
  Expert Report of David A. Gulley and Sonya S. Kwon, November 17, 2005

## Publications

- ***From Anecdotes to Facts: Bringing Clarity to Fraud Investigations***
  Article posted on Navigant.com, July 2018
  By Sonya Kwon, Debra Aron

- ***Responding to a Data Breach: Five Key Considerations for Your Incident Response Plan***
  Article posted on Navigant.com, June 2018
  By Sonya Kwon

- ***4 Questions to Ask When Facing a Class Action***
  Article posted on Navigant.com, May 2018
  By Sonya Kwon, Mary Beth Edwards

- ***Three Things You Should Know to Effectively Use Financial Forensics: From Books and Records to Bits and Bytes***
  Article posted on Navigant.com, April 2018
  By Sonya Kwon, Mary Beth Edwards, Angela Sabbe, and Rebecca Patterson

- ***Approaches to Measuring Erroneous Payments in the National School Lunch Program and School Breakfast Program at the State-Level***
  U.S. Department of Agriculture Food and Nutrition Service, August 2016
  Contributing Authors with Manhattan Strategy Group (Contract No: AG-3198-C-14-0014)

- ***Department of Labor Proposes Changes to the White Collar Exemption Rule - What It Means for Employers***
  Published by the American Bar Association, Section of Litigation, Labor & Employment, January 2016
  By Sonya Kwon and Jeremy Guinta

- ***Unique Litigation Risks and Challenges Facing the Oil & Gas Industry***

Published by Corporate Disputes Magazine, October, December 2015
By Sonya Kwon and Jeremy Guinta

- ***The Impact of Crude Oil and Natural Gas Market Trends on Litigation***
  Published by the American Bar Association, Section of Litigation, Section of Litigation, Energy Litigation, November 2015
  By Sonya Kwon, Bob Broxson, and Julie Carey

- ***Employment Litigation: 2012 Year in Review***
  Navigant Consulting Website
  By Brendan Burke, Sonya Kwon, and Nicholas Schmidt

- ***Medical Loss Ratio in Group Markets: Will Many Plan Participants Receive Rebates?***
  Published by the American Bar Association, Section of Litigation, Employment & Labor Relations, September 2012
  By Sonya Kwon and Melissa Hulke

- ***Medical Loss Ratio Rebates in August 2012: Has the Burden of Distribution Been Shifted to Employers?***
  Published by the American Bar Association, Section of Litigation, Employment & Labor Relations, on August 1, 2012
  By Sonya Kwon, Melissa Hulke, and Wayne Jacobsen from O'Melveny & Myers

## Presentations and Speaking Engagements

- **March 25, 2025:** Lecturer, Trial Ad Class at the University of California, Irvine Law School. *"Working with and Cross-Examining an Expert Witness"*
- **May 14, 2023:** Speaker, National Law Firm Conference. *Advanced data science methods in data breach and privacy matters.*
- **September 12, 2019:** Speaker, American Bar Association Section of Litigation. *Key Considerations for Working with Expert Witnesses in Class Actions.*
- **October 23, 2018:** Bloomberg Law Webinar. *Beyond Litigation: Maximizing the Benefits of Financial Forensics.*
- **May 4, 2018:** Speaker, National Law Firm Conference. *How to Hire a Damages Expert Witness.*
- **September 28, 2017:** Speaker, American Bar Association, Regional CLE Workshop. Commercial and Business Litigation, Pretrial Practice & Discovery, and Intellectual Property Litigation Committees. *Maximizing Expert Witnesses: Best Strategies and Practices for Selecting, Using, Challenging, and Defending Expert Witnesses.*
- **June 6, 2017:** Speaker, American Bar Association, Class Actions and Derivative Suits and Expert Witness Committees Expert Witness Committees. "*Best*" *Practices for Working With Experts*
- **May 11, 2016:** Speaker, American Bar Association, Expert Witness Committee. *Roundtable on Working Effectively With Experts.*
- **November 9, 2015:** Speaker, Association of Corporate Counsel; webinar. *LGBT Legal Issues in the Workplace.*

- **February 10, 2015:** Speaker, Orange County Bar Association; Newport Beach, CA. *Structured Data Analysis*.
- **April 16, 2014:** Panelist, American Bar Association Section of Litigation; Scottsdale, AZ. *Selecting the Right Testifying Expert.*
- **Feb 14, 2013:** Panelist, American Bar Association; Hollywood, FL. *Sex, Lies, and Backup Tape - Litigating A Spoliation Claim American Idol Style!*
- **Feb 2, 2011:** Speaker, Discovery Breakfast Seminar; Los Angeles, CA. *Understanding Structured Data.*
- **June 2, 2009:** Speaker, Employment Law Update and Current Employer Issues Breakfast Seminar; Valencia, CA. *New Alternative Workweek Regulations: Employer Obligations under New COBRA Rules and Case Law Updates Affecting California Employers of All Sizes.*
- **May 20, 2009:** Speaker, Employer Breakfast Seminar; Los Angeles, CA. *New Electronic Discovery Obligations: A Trap for the Unwary Employer - Employer Obligations Regarding the Safeguarding of Electronic Information.*
- **March 4, 2009:** Speaker, Hitachi Global Storage Technologies, Inc.; San Jose, CA. *The Use of Statistical Sampling and Ethical Issues in Electronic Discovery*.
- **May 2, 2008:** Panelist, Annual ABA Section of Litigation Conference; Chicago, IL. *Reducing the Costs of Reviewing Electronically Stored Information.*
- **Sept 27, 2007:** Speaker, National Annual Employment Conference for National Law Firm; Lake Las Vegas, NV. *Fresh Approaches in Employment Class Actions.*
- **April 12, 2007:** Panelist for National Annual Employment Conference; Phoenix, AZ. *Advanced Analytical Approaches to Defend Employment Class Actions.*
- **2005 – Current: Numerous CLE Presentations at Various Law Firms/ Clients on Topics including:** (1) *Ethical Issues in Electronic Discovery and the Attorney-Client Relationship; (2) Advanced Analytical Concepts in Class Action Litigation; (3) Recent Trends and Hot Topics in Class Actions; (4) Understanding Structured Data; (5) Statistical Analysis Techniques*

**SHAWNA GABORIAULT, on behalf of herself and all others similarly situated,**
**Plaintiff,**
**v.**
**PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10**
**Defendant.**
**Exhibit 2 - Data and Documents Considered in Preparation of Expert Opinions**

| |
|---|
| (DN55)~1.PDF |
| (DN55-~1.PDF |
| (DN55-~4.PDF |
| (D87F0~1.PDF |
| (D26A3~1.PDF |
| (D4CD5~1.PDF |
| (D3A00~1.PDF |
| (D1C0A~1.PDF |
| (D4B0B~1.PDF |
| (D8696~1.PDF |
| (DN55-~2.PDF |
| (DN55-~3.PDF |
| Ex B - Primmer.pdf |
| 5.20.2026 Letter to Plaintiff RE Discovery Deficiencies.pdf |
| 7.14.2026 Letter to Plaintiff RE Amended Discovery Deficiencies.pdf |
| 2025.02.21.Gaboriault-PPE&C.NTPs.pdf |
| 2026.05.01.Gaboriault-PRimmer.CoverlLtr.pdf |
| 2026.05.01.Rog Responses.pdf |
| 2026.05.01.RPD responses.pdf |
| 2026.07.07.Gaboriault-PRimmer.CoverlLtrEnclDisco.pdf |
| 2026.07.07.SGaboriault-Primmer.AmendedRogResponses.pdf |
| 2026.07.07.SGaboriault-Primmer.AmendedRPDResponses.pdf |
| 120140~1.PDF |
| 120140~2.PDF |
| Connecticut.PDF |
| DEFEND~1.PDF |
| DEFEND~2.PDF |
| DEFEND~3.PDF |
| Discovery Letter to Plaintiff 2.13.2026.pdf |
| Ex A - Primmer.pdf |
| GABORIAULT_PPEC_00001 - 00016.pdf |
| GABORIAULT_PPEC_00017-29.pdf |
| GABORIAULT_PPEC_00030-42 [CONFIDENTIAL].pdf |
| Jeppsson_Declaration_PrimmerPiperEgglestonCramer_Final (002) (1).pdf |
| Letter RE Defendant's Second Discovery Production 6.5.2026.pdf |
| Massachusetts 2.PDF |
| Massachusetts.PDF |
| NYSOAG SB Form-c (5484223_1)_Redacted.PDF |
| Primmer - CT AG Notice - Supplemental Notice (Submitted 11-23-22) (5609464_1)_Redacted.PDF |
| Primmer - CT AG Notice - Supplemental Notice (Submitted 11-23-22).PDF |
| Primmer - MA AG - Supplemental Notice (Submitted 11-23-22) _Redacted.PDF |
| Primmer - MA AG - Supplemental Notice (Submitted 11-23-22).PDF |
| Primmer - Maryland AG Notice (Submitted 11-23-22).PDF |
| Primmer - ME AG - Supplemental Notice (Submitted 11-23-22) (5609467_1)_Redacted.PDF |
| Primmer - ME AG - Supplemental Notice (Submitted 11-23-22).PDF |
| Primmer - Montana AG Notice-c (5484230_1) (003)_Redacted.PDF |

**SHAWNA GABORIAULT, on behalf of herself and all others similarly situated,**
**Plaintiff,**
**v.**
**PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10**
**Defendant.**
**Exhibit 2 - Data and Documents Considered in Preparation of Expert Opinions**

| |
|---|
| Primmer - NC AG - Supplemental Notice (Submitted 11-23-22) (5609459_1)_Redacted.PDF |
| Primmer - NC AG - Supplemental Notice (Submitted 11-23-22).PDF |
| Primmer - NH AG Notice (Submitted 11-23-22) (5609460_1)_Redacted (5626351_1)_Redacted.PDF |
| Primmer - NH AG Notice (Submitted 11-23-22).PDF |
| Primmer - NY AG - Supplemental Notice (Submitted 11-23-22) (5609461_1)_Redacted.PDF |
| Primmer - NY AG - Supplemental Notice (Submitted 11-23-22).PDF |
| Primmer - RI AG Notice (Submitted 11-23-22) (5609462_1)_Redacted.PDF |
| Primmer - RI AG Notice (Submitted 11-23-22).PDF |
| Primmer - VT AG Notice - Supplemental Notice (Submitted 11-23-22).PDF |
| Primmer - VT AG Notice-c (5484222_1)_Redacted.PDF |
| Primmer Complaint.pdf |
| Primmer- Maine Confirmation (84484712v1)-c (5484226_1) (003)_Redacted.PDF |
| Primmer- North Carolina AG (84932795v1)-c (5484225_1) (003)_Redacted.PDF |
| Summons issued 2.2.24.pdf |
| Defendant Document Production.PDF |
| Primmer- Client Mail Enrolled Members Report 9.20.22 (86840131v1)-c.xlsx |
| Primmer- Separated Notification List- PO redacted 10_28_22.xslx |
| Primmer- Wave 1 Enrolled Members Report 7.22.22 (86842157v1)-c.xslx |
| Primmer- Wave 2 Enrolled Members Report 10.3.22 (86842173v1)-c.xslx |
| Primmer- Wave 3 Enrolled Members Report 11.15.22 (86840115v1)-c.xslx |
| PRIM000001-PRIM000429 |
| Primmer Piper Eggleston Cramer PC - CRA Statement of Work - 2.22.2022-c.pdf |