**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| SHAWNA GABORIAULT, *on behalf of herself and those similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No. 2:24-cv-00113-wks |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Yongmoon Kim, Esq. (*pro hac vice*)
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117

Andrew B. Delaney
MARTIN DELANEY & RICCI LAW GROUP
100 North Main Street
Barre, Vermont 05641
Tel. (802) 479-0568

*Attorneys for Plaintiff Shawna Gaboriault*

## TABLE OF CONTENTS


**1 INTRODUCTION .......... 1**

**2 ARGUMENT. .......... 1**

2.1 PPEC's Own Records Identify the Class. .......... 1

2.1.1 PPEC told regulators and class members that the copied data contained their information. .......... 1

2.1.2 The class is ascertainable. .......... 2

2.1.3 PPEC cannot rely on records it has withheld. .......... 4

2.1.4 The same facts resolve numerosity and the data-type objections. .......... 5

2.2 Exposure in a Targeted Attack Is a Common, Concrete Injury. .......... 5

2.3 Common Questions of Liability Predominate. .......... 7

2.3.1 The decisive liability questions are common, and PPEC concedes as much. .......... 7

2.3.2 Individual damages do not defeat predominance. .......... 7

2.3.3 "Other breaches" go to damages, not liability. .......... 8

2.4 Typicality, Adequacy, and Superiority Are Satisfied. .......... 9

**3 CONCLUSION .......... 10**

## TABLE OF AUTHORITIES

### CASES


*Attias v. CareFirst, Inc.*,
344 F.R.D. 38 (D.D.C. 2023)........................................................................ 3, 6

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,
222 F.3d 52, 59 (2d Cir. 2000)........................................................................ 9

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023) ........................................................................ 5

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)........................................................................ 8

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ........................................................................ 2

*Gaboriault v. Primmer, Piper, Eggleston & Cramer, P.C.*,
No. 2:24-cv-113, 2024 WL 4527102 (D. Vt. Oct. 18, 2024)........................................ 7

*In re Actos Antitrust Litig.*,
No. 1:13-cv-09244, 2024 WL 4251891 (S.D.N.Y. Aug. 9, 2024) ................................... 6

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-mn-02972, 2024 WL 2155221 (D.S.C. May 14, 2024)..................................... 4

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
341 F.R.D. 128 (D. Md. 2022)........................................................................ 8

*In re Nassau Cnty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006)........................................................................ 7

*Johnson v. Nextel Communications Inc.*,
780 F.3d 128 (2d Cir. 2015)........................................................................ 9

*Marisol A. ex rel. Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)........................................................................ 9

*McMorris v. Carlos Lopez & Associates, LLC*,
995 F.3d 295 (2d Cir. 2021)........................................................................ 5

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)........................................................................ 8

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)........................................................................ 5, 9

*Savidge v. Pharm-Save, Inc.*,
727 F. Supp. 3d 661 (W.D. Ky. 2024) ........ 9

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010) ........ 8, 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 6

## STATUTES

9 V.S.A. § 2435(b)(1) ........ 7

9 V.S.A. § 2435(b)(2) ........ 7

## RULES

Fed. R. Civ. P. 23(b)(3) ........ 10

Fed. R. Civ. P. 23(g) ........ 9

# 1 INTRODUCTION

PPEC's opposition rests on one proposition: because the attacker finished copying only 46 of the 76 gigabytes it had staged, "PPEC cannot determine whose" information was taken, so every Rule 23 question becomes individual. Opp. 2, 6 (ECF 58). PPEC told a different story when it mattered. After reviewing the data, PPEC told the Attorneys General of Vermont, New Hampshire, and Rhode Island, and every person it notified, that it had "reviewed the contents of the copied data" and determined "that the data contained your personal information." Its own expert counted those people: 603. Kwon Decl. (ECF 58-4) ¶ 20. PPEC's records therefore identify the class. The questions that will decide liability, what PPEC did to protect the data and whether it gave timely notice, are uniform across the class, as this Court has already observed and as PPEC "does not dispute." Opp. 18 n.3. Further, if there are any differences in the amount of each member's damages, they do not defeat predominance in this Circuit. The motion should be granted.

# 2 ARGUMENT.

## 2.1 PPEC's Own Records Identify the Class.

### *2.1.1 PPEC told regulators and class members that the copied data contained their information.*

In November 2021, malware entered PPEC's network through a "bogus email link," and an unauthorized actor identified approximately 76 GB of PPEC's files for copying to a server in New Zealand; 46 GB had been copied when the transfer was stopped. ECF 58-2 at 5. Because the host would not say which files had been downloaded, PPEC engaged an outside firm to review all 76 GB. *Id.* at 5–6; Kwon Decl. ¶ 8. On April 14, 2022, PPEC determined that the data contained personal information. ECF 55-5 at PRIM000053.

PPEC then described that determination, in the same words, to the people affected and to regulators. Beginning in July 2022, it mailed each notified person a letter stating that an

unauthorized party "copied a limited amount of data to a foreign private hosting site" and that PPEC "reviewed the contents of the copied data, and on April 14, 2022, we determined that the data contained your personal information." ECF 55-5 at PRIM000055; ECF 58-3 at 4. It told the Vermont Attorney General the same thing in July and again in November 2022, ECF 55-5 at PRIM000053; Supp. Kim Decl. Ex. 14 at PRIM000048, and repeated it to New Hampshire, ECF 58-3 at 2, and Rhode Island, Supp. Kim Decl. Ex. 12 at PRIM000042. To North Carolina, PPEC was more direct: "Once this investigation determined that the files obtained by the threat actor contained personal information, Primmer identified the involved individuals and located addresses." Supp. Kim Decl. Ex. 13 at PRIM000065–66. PPEC's expert reviewed the resulting Notification List and counted 603 people, each identified by name with the specific categories of information found for that person. Kwon Decl. ¶¶ 11–12, 20.

These are PPEC's own statements, made to government agencies under breach-notification statutes, and they are admissible against it. Fed. R. Evid. 801(d)(2). The opposition never mentions them. It says instead that PPEC notified everyone "out of an abundance of caution." Opp. 6. But the caution PPEC's letters described concerned whether the data would be *misused*, ECF 58-2 at 2, 5, not whose data was involved.

***2.1.2 The class is ascertainable.***

In this Circuit, ascertainability is a "modest threshold requirement" that "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). There is no administrative-feasibility requirement; "[t]he only relevant inquiry is whether determinations as to class membership are 'objectively possible.'" *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 717 (2d Cir. 2023) (quoting *Petrobras*, 862 F.3d at 270). Plaintiff proposes to use PPEC's Notification List and mailing records as objective evidence identifying the people whose PII or PHI was exposed within

the proposed class definition. *See Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 49 (D.D.C. 2023) (data-breach class "readily ascertainable" because its membership "has already been identified by virtue of the data breach notice letters that the company mailed").

PPEC's contrary argument depends on reading "exposed" to mean "contained in the 46 GB that finished copying." Opp. 13–14. The definition does not say that, and PPEC's own account forecloses it: the attacker was inside PPEC's network and had selected all 76 gigabytes for exfiltration before the transfer was stopped. ECF 58-2 at 5. Information in files an intruder has accessed and staged for theft has been "exposed" in any ordinary sense, and PPEC told each class member that his or her information was in the copied data. Kwon does not say otherwise. She concedes that the Notification List identifies each person and each data element, Kwon Decl. ¶¶ 11–12, 20–22, but contends that they do not establish which individuals or data elements were in the transferred subset. *See id.* ¶14 (Opinion 1). Initially and most fundamentally, Plaintiff disputes Kwon's premise that the proposed class definition requires proof of completed copying. Her objection is that there is no "reliable and reproducible methodology" for sorting the 603 into finer groups. *Id.* ¶¶ 14, 27–28. That is the administrative-feasibility test *Petrobras* and *Fikes* rejected. Her further point that some identifiers, such as insurance member numbers, may change over time, *id.* ¶¶ 34–38, is beside the point: class members are people identified by name and address, not account numbers, and she disclaims any opinion that anyone should be excluded on that basis, *id.* ¶ 37.

*Blackbaud* does not help PPEC. That court applied the Fourth Circuit's administrative-feasibility requirement, and the defendant there notified some 13,000 institutional customers, many of which sent blanket notices to their constituents "regardless of whether their data was impacted." *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972, 2024 WL

2155221, at *21 (D.S.C. May 14, 2024). PPEC, by contrast, identified each individual from the data and wrote to each one. Even *Blackbaud* recognized that "a defendant should not be able to hide behind problems of its own making with respect to records it maintains and controls." *Id.* at *22.

### *2.1.3 PPEC cannot rely on records it has withheld.*

PPEC's claim that whose data was copied is unknowable rests on its own investigation, which it has not disclosed. Its initial disclosures promised to identify its "[t]hird-party forensic vendor(s) . . . under separate cover"; it never did, although it later named two Charles River Associates employees as persons with knowledge. ECF 55-2 at 3; Supp. Kim Decl. ¶ 3. It refused to produce any investigation reports in response to Request No. 21. ECF 58-6 at 22–23. Asked to describe its investigation and conclusions, it answered that it would "supplement this response with the withheld information upon entry of an appropriate protective order." Supp. Kim Decl. ¶ 4 & Ex. 11 (Resp. to Interrog. No. 17). The Court entered that order on May 11, 2026. ECF 50. PPEC has not supplemented. Supp. Kim Decl. ¶ 6. Plaintiff again requested the forensic report and a privilege log by letter dated September 22, 2026. Pursuant to the parties' October 2, 2026 meet and confer, PPEC advised that documents would be produced the following week. However, as of this filing, PPEC has produced neither. Id. ¶ 9 & Ex. 18. PPEC's entire production, PRIM000001 through PRIM000429, contains no forensic or incident report, no log, and no document showing which files made up the 76 GB targeted or the 46 GB copied. *Id.* ¶ 8. Nor did PPEC produce the CRA Notification List or the four Kroll mailing reports on which Kwon's opinions rest. *Id.*; Kwon Decl. ¶¶ 10–12 & Ex. 2; *see* Fed. R. Civ. P. 26(a)(2)(B)(ii). How the 76 GB and 46 GB figures

were determined is a noticed topic of PPEC's Rule 30(b)(6) deposition, which was noticed for October 29, 2026.[1] Supp. Kim Decl. ¶ 10 & Ex. 19 (Topics 4, 5, 8).

Plaintiff does not ask the Court to resolve those discovery matters here. But PPEC cannot defeat certification by asserting that the relevant facts are unknowable while withholding the materials that would show them. *See Blackbaud*, 2024 WL 2155221, at *22. At a minimum, Kwon's Opinions 1 through 3 deserve no weight.

#### ***2.1.4 The same facts resolve numerosity and the data-type objections.***

PPEC's records show 603 class members. Kwon Decl. ¶ 20. Even on PPEC's theory that only about half of the targeted data was copied, ECF 58-2 at 5, the class would number in the hundreds, far above the forty members at which numerosity is presumed. *Robidoux v. Celani*, 987 F.2d 931, 935–36 (2d Cir. 1993) (plaintiff need only "reasonably estimate the number of class members"). And variation in the categories of data exposed, Opp. 16; Kwon Decl. ¶¶ 20–22, goes at most to the amount of individual damages. It does not change who is in the class or what PPEC did.

### **2.2 Exposure in a Targeted Attack Is a Common, Concrete Injury.**

PPEC argues that the class sweeps in people with no Article III injury. Opp. 8–10. This Court has already held, applying *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276 (2d Cir. 2023), and *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2d Cir. 2021), that the core injury here, exposure of private information to an unauthorized third party, bears a close relationship to the public disclosure of private facts and is itself concrete, and that the targeted nature of this attack and the sensitivity of the data made the resulting harm imminent. ECF 30 at 6–13. PPEC responds

[1] Pursuant to the parties' October 2, 2026 meet and confer, PPEC advised it would provide alternative dates for depositions.

that the ruling addressed only the named plaintiff on the pleadings. Opp. 9. But every fact on which the ruling rested is common to the class: the same targeted attack, the same malware, the same transfer of data to a foreign server, the same unknown actors, and the same kinds of sensitive PII and PHI. ECF 30 at 9–11. Those facts come from PPEC's own documents.

*TransUnion LLC v. Ramirez* does not hold otherwise. It held that "the mere risk of future harm, standing alone," cannot support damages, 594 U.S. 413, 436 (2021), while recognizing that disclosure of private information to a third party is a concrete harm, *id.* at 425, 432–33.[2] The injury here is the disclosure. *Denney v. Deutsche Bank AG* requires a class "defined in such a way that anyone within it would have standing," 443 F.3d 253, 263–64 (2d Cir. 2006); it does not require each member to prove injury at certification, and "there is no requirement in the Second Circuit that *all* putative class members be injured," *In re Actos Antitrust Litig.*, No. 1:13-cv-09244, 2024 WL 4251891, at *21 (S.D.N.Y. Aug. 9, 2024) (emphasis in original). PPEC identifies no notified person whose information was not exposed; it offers only the ratio of 46 to 76 gigabytes, which says nothing about any individual. *Attias* involved a class defined by information "put at risk," without the benefit of *Bohnak*, and the court denied certification without prejudice because the parties had not briefed *TransUnion*. 344 F.R.D. at 52–54; *see also Attias v. Carefirst, Inc.*, 346 F.R.D. 1, 13 (D.D.C. 2024)

Nor does the absence of known misuse change the analysis. *Bohnak* found a concrete and imminent injury without any allegation that the plaintiff's data had been misused, 79 F.4th at 289, and *McMorris* held that misuse of the compromised dataset is "not a necessary component of establishing standing," 995 F.3d at 301; *see* ECF 30 at 10. PPEC's assurances that it is "not aware"

---

[2] *Bohnak* applies that principle to unauthorized disclosure of private information in a data breach. 79 F.4th at 285–86.

of misuse, ECF 58-2 at 2, do not distinguish any member from any other. They apply equally to all 603.

**2.3 Common Questions of Liability Predominate.**

***2.3.1 The decisive liability questions are common, and PPEC concedes as much.***

This Court has recognized that the "nature of the breach and efforts to protect the confidential information[] will most likely be uniform across the purported class." *Gaboriault v. Primmer, Piper, Eggleston & Cramer, P.C.*, No. 2:24-cv-113, 2024 WL 4527102, at *2 (D. Vt. Oct. 18, 2024) (ECF 31). PPEC "does not dispute that observation." Opp. 18 n.3. Whether PPEC breached its duty to safeguard the information it collected, including whether it followed its own Written Information Security Program, ECF 55-8, will be decided on PPEC's own records. PPEC's internal "Phishing 101" training warned its staff of "three close calls in the last six weeks," including a paralegal who "responded to a phishing email" and a spear-phishing email "sent out to 38 attorneys," six of whom responded. Supp. Kim Decl. ¶ 7 & Ex. 17 at PRIM000271. Later, this attack began with "a bogus email link." ECF 58-2 at 5. Whether PPEC broke its implied promise to protect the information, and whether its notice was timely under 9 V.S.A. § 2435(b)(1); (b)(2), are likewise common: PPEC told North Carolina it discovered the breach on November 10, 2021, Supp. Kim Decl. Ex. 13 at PRIM000064, but told the Maine, Massachusetts, and Connecticut Attorneys General that it "discovered" the breach on April 14, 2022, ECF 55-7 at PRIM000059; Supp. Kim Decl. Ex. 15 at PRIM000013; *id.* Ex. 16 at PRIM000383. Those questions will be answered with the same evidence for every member. Conceded common issues remain part of the predominance analysis. *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228-29 (2d Cir. 2006).

***2.3.2 Individual damages do not defeat predominance.***

PPEC's damages argument, Opp. 10–11, misstates the law of this Circuit. *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), "did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis"; it requires only that any damages model a plaintiff relies on measure damages resulting from the class's theory of liability. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). "[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Id.* at 405 (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)). One of the measure of damages here, the reasonable cost of monitoring and mitigation over a defined period and the time spent responding to the breach, is the same for every member and can be applied through ordinary claims procedures once liability is tried. Ms. Gaboriault's monitoring subscription is an example of those damages, not a separate theory. Nor does PPEC's offer of Experian monitoring create an individual liability question. PPEC told regulators it offered monitoring to people whose Social Security or driver's license numbers were involved, ECF 58-3 at 3, and its notice regarding Ms. Gaboriault asked her counsel only to consent to a vendor's review of her "eligibility," ECF 58-2 at 3. At most, the offer bears on the amount of damages.

#### ***2.3.3 "Other breaches" go to damages, not liability.***

PPEC's causation argument, Opp. 7–8, relies on *In re Marriott International, Inc., Customer Data Security Breach Litigation*, 341 F.R.D. 128, 142 (D. Md. 2022), and *Attias*, 344 F.R.D. at 53–54, where the damages theories turned on downstream identity theft that could have flowed from any number of other breaches. The class's claims here do not depend on proof that any member suffered identity theft; the injury is the exposure itself and the cost of responding to it. Even Kwon states that she does not rely on Jeppsson's analysis to determine whether Ms. Gaboriault's information was in the approximately 46 GB transferred. Kwon Decl. ¶ 30. To the

extent another breach could affect a member's recovery, it "impact[s] the calculation of damages, not the issue of liability." *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 706–07 (W.D. Ky. 2024) (certifying contested data-breach class).

**2.4 Typicality, Adequacy, and Superiority Are Satisfied.**

Ms. Gaboriault's claims arise from the same breach and the same conduct and rest on the same legal theories as the class's claims. *Robidoux*, 987 F.2d at 936–37; *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). That PPEC's notice listed her date of birth and eight categories of medical information rather than a Social Security number, ECF 58-2 at 4, is one of the "minor variations in the fact patterns underlying individual claims" that do not defeat typicality, *Robidoux*, 987 F.2d at 946-37; her diagnosis, medical history, and test results are among the most sensitive information in the class. *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.* concerns defenses unique to the representative that "threaten to become the focus of the litigation." 222 F.3d 52, 59 (2d Cir. 2000). PPEC identifies none; her monitoring purchase and a disputed charge concern only the amount of her own damages. PPEC identifies no conflict between Ms. Gaboriault and the class and does not challenge proposed class counsel under Rule 23(g).

A class action is also superior. PPEC does not address Rule 23(b)(3)(A) through (C): no other litigation exists, this District is PPEC's home forum, and members have little interest in individually pursuing claims measured in hundreds of dollars, such as Ms. Gaboriault's $209.88 annual monitoring cost, ECF 58-5 at 21 (Resp. to Interrog. No. 13). Hundreds of individual suits across ten states would relitigate the same security evidence. *See Seijas*, 606 F.3d at 58. *Johnson v. Nextel Communications Inc.* is not to the contrary; there, liability turned on whether each client knowingly waived a conflict after individualized advice. 780 F.3d 128, 147–48 (2d Cir. 2015). Here, liability turns on PPEC's uniform conduct.

## 3 CONCLUSION

The Court should certify the Class under Rule 23(b)(3), appoint Ms. Gaboriault as Class Representative, and appoint Kim Law Firm LLC and Martin Delaney & Ricci Law Group as Class Counsel.

Dated: October 9, 2026

Respectfully submitted,

MARTIN DELANEY & RICCI LAW GROUP

*/s/ Andrew Delaney*
Andrew Delaney
100 North Main Street
Barre, Vermont 05641
Telephone: (802)-479-0568
andrew@mdrvt.com

KIM LAW FIRM LLC

*/s/ Yongmoon Kim*
Yongmoon Kim, Esq. (*pro hac vice*) 411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone: (201)-273-7117
ykim@kimlf.com
*Attorneys for Plaintiff Shawna Gaboriault*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2026, I am filing the foregoing document with the Clerk of Court via the CM/ECF system, which will provide notice of such filing to all NEF counsel and that I will cause a copy of this reply brief to be sent to Christopher J. Seusing, Esq. at cseusing@wshblaw.com.

*/s/ Andrew Delaney*
Andrew Delaney