# EXHIBIT 19

*Gaboriault v. Primmer, Piper, Eggleston & Cramer, P.C., et al.*
Docket No. 2:24-cv-00113-wks

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| SHAWNA GABORIAULT, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10,<br><br>Defendants. | Civil Action No. 2:24-cv-00113-wks<br><br>**NOTICE OF DEPOSITION ON ORAL EXAMINATION DIRECTED TO PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C.** |

**TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the undersigned will take the deposition of Primmer, Piper, Eggleston, & Cramer, P.C. at 2:00 p.m. on Thursday, October 29, 2026 via Remote Legal. The deposition shall be taken under oath before an officer authorized to administer oaths or designated by Fed. R. Civ. P. 28, and shall be recorded by stenographic or electronic means and may be recorded on videotape by a certified videographer and/or the video conference platform. The deposition also may be recorded by stenographic or electronic method through the instant visual display of testimony. If necessary, each deposition will be adjourned until completed. The deposition shall be used for all purposes permitted under the Federal Rules of Civil Procedure. You are required to be present at the aforesaid time and place. You are permitted to bring your counsel to attend and cross-examine, if you so desire.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Primmer, Piper, Eggleston, & Cramer, P.C. is required to produce at their deposition the documents set forth on Attachments A and B annexed hereto.

KIM LAW FIRM LLC

Dated: September 25, 2026

<u>/s/ Yongmoon Kim</u>
Yongmoon Kim, Esq.
*Attorney for Plaintiff*

## ATTACHMENT A

1. The November 2021 cybersecurity incident/data breach involving PPEC's network, including when it began, when it was discovered, how it was discovered, and when it ended.

2. The means by which the unauthorized third party accessed PPEC's network, including malware, phishing, email compromise, credential compromise, or any other suspected or confirmed vector.

3. The identity, location, and function of all systems, servers, workstations, email accounts, databases, shared drives, cloud services, or other electronic systems implicated in the incident.

4. The categories, volume, and location of data accessed, copied, exfiltrated, staged, compressed, viewed, or otherwise placed at risk.

5. The approximately 76 GB of data identified for copying and the approximately 46 GB of data copied, including how those figures were determined.

6. The foreign private hosting site / New Zealand server referenced in PPEC's notice materials, including how PPEC identified it, when PPEC contacted the host, and what steps were taken to lock, delete, destroy, or otherwise secure the data.

7. Communications with any hosting provider, law enforcement agency, insurer, forensic investigator, IT vendor, managed service provider, security operations center, or other third party regarding the incident.

8. The investigation conducted by or on behalf of PPEC regarding the incident, including the identity of all investigators, the scope of each investigation, the methodology used, findings, conclusions, reports, and recommendations.

9. The role of Charles River Associates, including Rachel A. Williams and Samara Kaufman, in investigating, analyzing, reporting on, or responding to the incident.

10. The role of The Tech Group, Inc., including Brian Manning and Linus Goedken, in monitoring, detecting, investigating, responding to, remediating, or preserving evidence relating to the incident.

11. The role of Vertek, including Derrick Farmer and Ron Hrudy, in connection with PPEC's network, systems, telecommunications, cybersecurity, monitoring, incident response, or remediation.

12. The role of Beazley Group or any cyber insurer in connection with the incident, including notice, claim handling, vendor engagement, forensic work, breach response, notification, remediation, coverage, reservations of rights, and payments.

13. The role of Polsinelli LLP, including Pasha Sternberg, in breach notification, attorney general submissions, regulatory notices, factual investigation, and communications with PPEC or vendors.

14. The role of Doreen F. Connor in drafting, approving, signing, sending, or overseeing the August 4, 2022 Notice of Security Incident and related communications.

15. PPEC's Incident Response Team as of November 2021, including Gary Franklin, Jesse Crary, Kathy Landry, John Balparda, Galen Anderson, Narda Carlson/Narda Churchill, and any other members or participants.

16. The responsibilities, actions, communications, and decisions of each Incident Response Team member.

17. PPEC's written information security program, security policies, incident response policies, data retention policies, access control policies, password policies, email security policies, and employee training policies in effect before, during, and after the incident.

18. Any security weaknesses, vulnerabilities, risks, prior incidents, audit findings, penetration testing results, vulnerability scans, risk assessments, compliance reviews, or warnings known to PPEC before the incident.

19. PPEC's relationship with The Tech Group, including contracts, statements of work, managed threat intelligence services, SOC services, logging, monitoring, alerting, incident response, service levels, and access to logs or tickets.

20. PPEC's Primary Technical Contact or contacts for The Tech Group services.

21. All logs, alerts, tickets, reports, SIEM data, authentication logs, access logs, IAM logs, endpoint logs, email security logs, firewall logs, antivirus/EDR logs, SOC alerts, and managed service provider records relating to the incident.

22. Any forensic images, preserved systems, backups, snapshots, log exports, threat intelligence materials, malware samples, indicators of compromise, or other preserved evidence.

23. The identification of affected individuals and putative class members, including the total number of impacted persons, their states of residence, and how PPEC determined who was affected.

24. The categories of PII, PHI, confidential information, private information, medical information, legal matter information, or other sensitive information implicated by the incident.

25. The specific information PPEC determined was implicated for Shawna Gaboriault.

26. The process used to review copied data and determine whether it contained personal information, confidential information, PHI, PII, or other protected information.

27. The date PPEC determined that the copied data contained personal information, medical information, PHI, PII, or information requiring notification.

28. All attorney general notices, regulatory submissions, supplemental notices, drafts, and supporting materials relating to the incident.

29. The discrepancy between different reported dates, including any April 4, 2022 investigation end date and any April 14, 2022 breach discovery or personal-information determination date.

30. The timing of notices to affected persons and government entities, including why notice was not sent earlier.

31. All notice letters, template notices, individual notices, mailing lists, recipient lists, returned mail records, address searches, and communications regarding notice.

32. Any credit monitoring, identity theft protection, fraud alert, dark web monitoring, remediation, or other services offered or considered for affected individuals.

33. The number and percentage of affected individuals who enrolled in or used any credit monitoring, identity monitoring, dark web monitoring, or other remedial service.

34. PPEC's contention that the attack was deemed a "failure," including all facts, documents, records, communications, and sources supporting that statement.

35. PPEC's contention that it is unaware of dissemination, misuse, fraud, identity theft, dark web sale, or unauthorized access to the data after copying.

36. PPEC's efforts to search for, monitor, identify, or investigate dissemination, misuse, fraud, identity theft, dark web sale, or unauthorized access.

37. Remedial steps taken during or after the incident, including strengthening password policies, increasing employee training, upgrading endpoint protection, dark web monitoring, network hardening, and any other technical, administrative, or physical safeguards.

38. Any changes made or considered to PPEC's policies, procedures, practices, training, systems, vendors, insurance, logging, monitoring, incident response, or notice process after the incident.

39. PPEC's preservation, collection, search, review, and production of documents and ESI in this litigation.

40. PPEC's basis for withholding documents or information based on privilege, work product, confidentiality, trade secret, proprietary information, protective order, possession/custody/control, burden, proportionality, or relevance.

41. Any privilege log, withheld document list, redaction log, or internal tracking of documents withheld from Plaintiff.

42. PPEC's affirmative defenses and denials, including all factual bases and witnesses supporting them.

43. PPEC's contention that Plaintiff or class members suffered no damages or no legally cognizable injury.

44. PPEC's contentions regarding class certification, including numerosity, commonality, typicality, adequacy, predominance, superiority, ascertainability, damages, and manageability.

45. PPEC's relationship to Shawna Gaboriault's underlying personal injury litigation and the collection, storage, use, disclosure, or retention of her private information.

46. The identity and roles of all persons with knowledge of the matters listed above.

47. The documents PPEC may use to support its claims, defenses, denials, affirmative defenses, opposition to class certification, expert opinions, dispositive motions, Daubert motions, trial positions, or impeachment.

48. Any supplementation, correction, or amendment to PPEC's discovery responses, initial disclosures, document productions, attorney general notices, or public statements.

## ATTACHMENT B

1. All documents concerning the November 2021 cybersecurity incident/data breach.

2. All forensic investigation reports, draft reports, memoranda, findings, analyses, timelines, conclusions, presentations, or recommendations concerning the incident.

3. All documents and communications with Charles River Associates, including Rachel A. Williams and Samara Kaufman, concerning the incident.

4. All documents and communications with The Tech Group, including Brian Manning and Linus Goedken, concerning PPEC's systems, monitoring, logs, alerts, tickets, incident response, remediation, and the incident.

5. All documents and communications with Vertek, including Derrick Farmer and Ron Hrudy, concerning PPEC's systems, network, telecommunications, security, incident response, and the incident.

6. All documents and communications with Beazley Group or any cyber insurer concerning the incident, coverage, claim handling, vendors, remediation, notice, or payments.

7. All documents and communications with Polsinelli LLP, including Pasha Sternberg, concerning attorney general notices, regulatory notices, factual submissions, affected persons, notice timing, or the incident.

8. All documents and communications with Doreen F. Connor concerning the August 4, 2022 Notice of Security Incident, notice content, notice timing, and related facts.

9. All documents identifying or describing the Incident Response Team and each member's role, responsibility, action, decision, or communication.

10. All communications among Incident Response Team members concerning the incident.

11. All incident response plans, playbooks, security incident procedures, breach response procedures, tabletop exercises, escalation procedures, and related policies in effect from January 1, 2019 to the present.

12. All written information security programs, cybersecurity policies, data security policies, acceptable use policies, access control policies, password policies, email security policies, remote access policies, encryption policies, retention policies, vendor management policies, and training policies in effect from January 1, 2019 to the present.

13. All documents concerning any changes to policies, procedures, systems, vendors, monitoring, logging, training, or security practices after the incident.

14. All security audits, risk assessments, vulnerability scans, penetration tests, security reviews, compliance reviews, gap analyses, vendor assessments, or incident response reports from January 1, 2017 to the present.

15. All documents concerning known vulnerabilities, risks, weaknesses, prior incidents, alerts, warnings, unremediated issues, or security gaps before the incident.

16. All contracts, statements of work, amendments, service orders, invoices, service descriptions, and related documents concerning The Tech Group.

17. All contracts, statements of work, amendments, service orders, invoices, service descriptions, and related documents concerning Vertek.

18. All contracts, statements of work, amendments, service orders, invoices, service descriptions, and related documents concerning Charles River Associates.

19. All contracts, statements of work, amendments, service orders, invoices, service descriptions, and related documents concerning any hosting provider, cloud provider, SOC provider, MSSP, IT vendor, cybersecurity vendor, breach response vendor, notification vendor, or credit monitoring vendor involved in the incident.

20. All SOC alerts, SIEM data, threat alerts, IDS/IPS logs, firewall logs, EDR/antivirus logs, endpoint logs, access logs, authentication logs, IAM logs, email security logs, VPN logs, file access logs, exfiltration logs, dark web monitoring records, and other logs concerning the incident.

21. All tickets, service requests, help desk records, escalation records, incident tickets, work orders, and task records concerning the incident or compromised systems.

22. All forensic images, system images, snapshots, backups, preserved drives, preserved logs, malware samples, indicators of compromise, or chain-of-custody documents concerning the incident.

23. All documents identifying the systems, accounts, mailboxes, folders, drives, databases, or repositories accessed, copied, staged, encrypted, exfiltrated, or otherwise affected.

24. All documents identifying the 76 GB of data identified for copying and the 46 GB of data copied.

25. All documents identifying the foreign private hosting site, New Zealand server, server host, hosting provider, account, URL, IP address, or related infrastructure.

26. All documents and communications with the host, law enforcement, vendors, or any third party concerning locking, deleting, destroying, retrieving, confirming, preserving, or restricting access to the copied data.

27. All documents concerning whether the attack was deemed a “failure.”

28. All records from any ransomware group, threat actor, leak site, dark web source, or monitoring source concerning the incident.

29. All documents concerning any determination that the data was or was not accessed, viewed, downloaded, disseminated, sold, misused, or used for fraud or identity theft.

30. All documents identifying affected persons, putative class members, their states of residence, their contact information, and the categories of information implicated for each person.

31. All documents identifying the categories of information implicated for Shawna Gaboriault.

32. All spreadsheets, databases, review logs, coding sheets, vendor outputs, or other materials used to determine affected persons and affected data categories.

33. All notice letters, sample notices, templates, drafts, mailing lists, address searches, returned mail records, corrected address records, and vendor records concerning notice.

34. All documents concerning the timing of notice, reasons for any delay, and the date PPEC first determined that notice was required.

35. All attorney general notices, breach reporting forms, regulatory submissions, supplemental submissions, drafts, attachments, and communications concerning the incident.

36. All documents concerning the April 4, 2022, April 14, 2022, July 25, 2022, August 4, 2022, and November 23, 2022 dates referenced in any notices, attorney general submissions, discovery responses, or produced documents.

37. All documents concerning credit monitoring, identity theft protection, dark web monitoring, fraud alerts, remediation products, affected-person support, call centers, FAQs, or related services.

38. All documents showing the number of affected persons offered, denied, enrolled in, or using any remedial service.

39. All documents concerning PPEC's insurance policy or policies that may satisfy all or part of a judgment, including the complete Beazley Group Breach Response policy, declarations, endorsements, reservations of rights, coverage correspondence, and claim file materials not privileged.

40. All documents supporting PPEC's denials, affirmative defenses, opposition to class certification, or contention that Plaintiff or class members lack injury or damages.

41. All documents PPEC relied upon in answering Plaintiff's interrogatories or responding to Plaintiff's requests for production.

42. All documents PPEC may use or rely upon at class certification, summary judgment, Daubert, trial, or any hearing in this matter.

43. All privilege logs, redaction logs, withheld document lists, or descriptions of documents withheld from production.

44. All document preservation notices, litigation holds, custodian lists, collection logs, search terms, ESI protocols, review protocols, and production logs concerning this litigation.

45. All communications concerning PPEC's discovery responses, production, withholding of documents, or claims that responsive documents are not in PPEC's possession, custody, or control.

46. All documents concerning PPEC's ability, contractual right, or practical ability to obtain logs, tickets, communications, reports, or data from The Tech Group, Vertek, Charles River Associates, Polsinelli, Beazley, or any other vendor.

47. All documents concerning Shawna Gaboriault's underlying personal injury litigation, to the extent they reflect PPEC's collection, receipt, storage, use, transmission, retention, or disclosure of her private information.

48. All documents concerning any HIPAA authorization, medical records, medical bills, medical information, PHI, PII, or litigation records relating to Shawna Gaboriault that were maintained by PPEC.

49. All documents that supplement, amend, correct, contradict, or explain Defendant's Rule 26 disclosures, interrogatory responses, RFP responses, attorney general notices, notice letters, or public statements.

50. All non-privileged documents reviewed by any 30(b)(6) witness to prepare for deposition

**CERTIFICATE OF SERVICE**

I, Yongmoon Kim, Esq. hereby certify that this Notice of Deposition was served via Electronic Mail to the following counsel of record:

Matthew Borick, Esq.
Downs Rachlin Martin, PLLC
199 Main Street
Burlington, Vermont 05401

Christopher J. Seusing, Esq.
Timothy D. Shea, Esq.
Lauren M. Schulman, Esq.
Wood Smith Henning & Berman, LLP
33 Riverside Avenue, Suite 502
Westport, Connecticut 06880

*In accordance with 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 22nd day of September, 2026.*

KIM LAW FIRM LLC

*/s/ Yongmoon Kim*
Yongmoon, Esq.