UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| SHAWNA GABORIAULT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIMMER, PIPER, EGGLESTON, & CRAMER, P.C., AND JOHN DOES 1 TO 10,<br><br>Defendants. | ) | Case No. 2:24-cv-113 |

**OPINION AND ORDER**

Plaintiff Shawna Gaboriault ("Plaintiff"), individually and as personal representative of a putative class, brings this action against the law firm of Primmer Piper Eggleston & Cramer and various John Does (collectively "PPEC") claiming that PPEC failed to protect her personal information from a cyberattack. Plaintiff specifically alleges that PPEC, while representing an opposing party in litigation, obtained her identity and health information and is now liable for damages resulting from the release of that information to an unknown third party. Pending before the Court is Plaintiff's motion for class certification. For reasons set forth below, the motion is granted.

**Factual Background**

This case centers on a data breach that allegedly occurred between November 8 and November 11, 2021. On November 23, 2021,

PPEC reported the breach to the Attorney General for the State of New Hampshire. The report stated that 265 New Hampshire residents were impacted, and that the information at issue may have included "names, Social Security numbers, driver's license numbers, financial account numbers, dates of birth, medical information, health insurance numbers, online credentials, tax identification numbers, passport numbers and/or electronic signatures." ECF No. 1 at 1, ¶ 1. PPEC also allegedly notified the Attorney General for the State of Maine, where five people were impacted by the data breach. The Complaint alleges that there are a total of 373 putative class members.

Plaintiff is a resident of Hardwick, Vermont. PPEC previously obtained her Protected Health Information ("PHI") and Personal Identifying Information ("PII") during the pendency of a state court personal injury matter captioned *Shawna Gaboriault v. Eric Gilbertson*, 412-8-19 Wncv. PPEC represented the defendant in that case. The PHI and PII were allegedly exchanged during the normal course of litigation.

On August 4, 2022, PPEC sent a Notice of Security Incident ("NSI") to Plaintiff's attorney. The NSI provided the following information about the data breach:

> In November 2021, an unauthorized third party gained access to our network and copied a limited amount of data to an external data hosting site. We worked with the hosting site to lock down access to the account and delete the data. We have no reason to believe that

> any personal or confidential information has been disseminated or misused for the purpose of committing fraud or identity theft. We do not know the identity of the individual or individuals responsible for this incident. We are providing you with notice out of an abundance of caution as confidential information was placed at risk. A description of the attack and our response follows. The attack occurred in November of 2021. Malware was placed on [PPEC's] system through a bogus email link.
>
> A set of documents equaling approximately 76 GBs in size was identified for copying to a server in New Zealand. When the copying was discovered and stopped, 46 GBs of data had been copied. The server host terminated all access to the data. During the course of the download and prior to its stoppage, data that had been downloaded was potentially accessible.

*Id.* at 2-3, ¶ 4. The private information potentially exposed in the breach may have included Plaintiff's "Diagnosis/Clinical information, Doctor name or Practice Type, Medical History, Medical procedure information, Medical Record Number (MRN), Patient Name, Test results or lab reports, Treatment Type or Location" and "Date of Birth (DOB)." *Id.* at 2, ¶ 3. The NSI stated that "we are not aware of any instances of dissemination, fraud or identity theft that have occurred as a result of the incident," "we are not aware of any access to the data," and "the attack was deemed a failure." ECF No. 1-1 at 1.

Plaintiff now claims that PPEC's management of her PHI and PII was inadequate and negligent. Specifically, she claims that PPEC failed to implement and maintain reasonable security procedures and practices, and failed to ensure that its

employees were properly trained. The Complaint claims a wide range of harms, including: reputational harm after publication of private facts from medical records; potential fraud and identity theft; untimely and inadequate notification of the data breach; out-of-pocket expenses and costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort expended to mitigate the actual and future consequences of the breach; deprivation of the value of the class members' PII and PHI, for which there is allegedly a well-established national and international market; loss of the opportunity to control how the PII is used; and the continuing compromise and publication of PII.

Plaintiff initiated this case on February 2, 2024. The Complaint asserts causes of action for negligence; negligent hiring and retention; breach of contract; breach of implied contract; invasion of privacy; publication of private facts; and unjust enrichment. The Complaint also claims that it meets the requirements for bringing a class action. For relief, the Complaint seeks both equitable relief and damages, including punitive damages.

Plaintiff now moves to certify the class, arguing that the case presents common questions capable of class-wide resolution. The proposed class is "[a]ll persons whose PII and/or PHI was

exposed in the PPEC Data Breach announced on or about August 4, 2022." ECF No. 55 at 8. PPEC opposes the motion.

**Discussion**

Federal Rule of Civil Procedure 23 authorizes named plaintiffs to proceed on behalf of a class in three distinct situations: when the rights of either the potential class members or the party opposing the class would be harmed by piecemeal litigation, Fed. R. Civ. P. 23(b)(1); where the class seeks injunctive or declaratory relief against a party who has "acted or refused to act on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2); and where questions common to the class predominate over individual questions and class adjudication would be superior to other available methods of resolving the controversy, Fed. R. Civ. P. 23(b)(3). *See Houser v. Pritzker*, 28 F. Supp. 3d 222, 240–41 (S.D.N.Y. 2014). In this case, Plaintiff seeks to certify a class under Rule 23(b)(3), citing common questions of fact and law.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

whether the requirements of Rule 23 have been met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal citations and quotation marks omitted).

A proposed class action must meet separate requirements set forth in Rules 23(a) and 23(b). The Rule 23(a) prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). Pursuant to Rule 23(b)(3), Plaintiff must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A plaintiff must satisfy all Rule 23 requirements by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 564 F.3d 196, 202-03 (2d Cir. 2008).

The Second Circuit has imposed an additional "implied requirement of ascertainability." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015). "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotations marks and citation omitted). "[U]ntil a class of persons alleged to be entitled to relief is defined, the Court cannot conduct the numerosity, commonality, typicality and adequacy analyses that must precede certification." *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 397 (S.D.N.Y. 2008); *see also N.B. v. Hamos*, 26 F. Supp. 3d 756, 763 (E.D. Ill. 2014) ("[A]scertainability is really a threshold issue – if the class cannot be identified, then courts cannot reliably assess whether an action on behalf of that class satisfies the express requirements of Rule 23."). Ascertainability requires that "a proposed class is defined using objective criteria that establish a membership with definite boundaries. This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017).

In this case, the necessary objective criteria consist of easily identified facts: people whose private information was

allegedly exposed as the result of a specific data breach on or about a certain date. Plaintiff submits that PPEC used those criteria to identify class members when sending letters of notification, and represents through counsel that the class now consists of over 600 consumers.

PPEC argues that the class is not ascertainable, in part because Plaintiff has failed to define the term "exposed." PPEC notes that not all of the data was copied, and submits that determining whose data was actually exposed will require individualized investigations. According to PPEC, such individualized inquiries doom Plaintiff's effort to certify a class.

PPEC asserts this same argument – that the partial copying of data frustrates class certification – throughout much of its briefing. As Plaintiff notes, however, PPEC has already identified the class as those persons whose information was within the initial 76 gigabytes of attacked data. Regardless of how much information was successfully copied, the entire 76 gigabytes may have been accessed by the intruder after the initial download. *See* ECF No. 58-2 at 5 (PPEC "Data Incident Information" informing possible victims that "[d]uring the course of the download and prior to its stoppage, data that had been downloaded was potentially accessible."). Moreover, the NSI to Plaintiff stated that PPEC had "reviewed the contents of the

copied data" and was "able to determine that the data contained confidential information belonging" to Plaintiff. ECF No. 1-1 at 1. Plaintiff claims that her experience was typical of the class.

Keeping in mind the Second Circuit's guidance that ascertainability requires only a "modest" threshold showing, *In re Petrobras Sec.*, 862 F.3d at 269, the Court finds that this case presents the type of objective criteria necessary for ascertaining a class. The evidence submitted to date indicates that PPEC used those criteria to identify potential victims. While discovery has reportedly revealed additional possible victims, the class is still limited to those whose data was attacked on the dates in question. Given that limitation, the Court finds that Plaintiff has satisfied her burden with respect to ascertainability.[1]

A. Rule 23(a) Requirements

1. Numerosity

To establish numerosity, "the class [must be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class representative is not required to identify the exact size of the class. *Robidoux v. Celani*, 987 F.2d 931,

---

[1] Plaintiff submits that this issue is complicated by PPEC's alleged failure to produce the results of its investigation into which information was actually exposed. The Court need not resolve that dispute at this time.

935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."). In the Second Circuit, numerosity is presumed for a class of forty or more plaintiffs. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011).

The Complaint alleges over 300 class members, and discovery has apparently revealed hundreds more. PPEC argues that Plaintiff cannot meet the numerosity requirement because she has not identified which members of the putative class actually had their information exposed. Even if the Court accepts PPEC's assertion that the intruder copied only 46 of the initially-accessed 76 gigabytes of information, the amount of copied data and the corresponding notices to hundreds of individuals strongly suggest a group of victims large enough to satisfy the numerosity requirement.

2. Commonality and Typicality

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims "must depend upon a common contention ... of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at

350. The commonality standard does "not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008).

In this case, the proposed class members share the same underlying injury: exposure of personal data. Correspondingly, class members present common legal questions relating to PPEC's safeguards of that information, whether those safeguards were reasonable, and whether notice was adequate. Such shared questions typically satisfy the commonality requirement. *See, e.g.*, *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *5 (S.D.N.Y. June 8, 2022) (finding common questions of law and fact among class members as each member was a card holder whose card information was subject to a data breach).

PPEC argues that commonality requires not only shared questions, but also shared answers. In response to questions such as whether an individual's data was copied, and whether the individual suffered an injury, PPEC submits that the answers will vary throughout the proposed class and thus cannot be dealt with "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. As discussed previously, however, PPEC itself identified a class of likely victims, and there can be little doubt that any class member injuries stem from common questions of both fact and law.

Furthermore, proof of actual injury is not required to bring a claim, as the Second Circuit has held that a risk of future harm – a risk that is common to all class members whose data was allegedly exposed – is sufficient. *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023).

Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. at 362, *as recognized in Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). As with commonality, the legal and factual issues shared by all class members satisfy the requirement of typicality.

3. Adequacy of Representation

To demonstrate adequacy of representation, Plaintiff must show in part that counsel is qualified, experienced and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992); Fed. R.C Civ. P. 23(g). Plaintiff must also show that the proposed class

members do not have interests antagonistic to one another. *See id.*

Plaintiff has submitted a declaration in which she states she has no known conflicts with other members of the potential class. ECF No. 55-10 at 4. As to the class members generally, the Court see no obvious conflicts of interest. Plaintiff's attorneys have also provided declarations in which they detail their familiarity with class litigation, their willingness to expend the necessary resources and, with respect to Attorney Kim, his firm's specialization in consumer law class actions. ECF Nos. 55-9, 55-11; *see* Fed. R. Civ. P. 23(g)(1)(A). Given these representations by both the Plaintiff and counsel, the Court finds the class will be adequately represented.

B. Rule 23(b) Requirements

As noted above, Rule 23(b)(3) requires a plaintiff to demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Similarly, the inquiry asks whether "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted). Predominance does not require exclusivity of common issues, and a class may be certified "even though other important matters will have to be tried separately, such as damages." *Tyson Foods*, 577 U.S. at 453–54.

The primary issue presented in this case is whether PPEC upheld its duty to protect certain data. While the harm caused to each class participant may require individualized proof, those individual inquiries do not eclipse the centrality of the breach-related questions. *See, e.g., Whelan v. Diligent Corp.*, 349 F.R.D. 79, 89 (S.D.N.Y. 2025) (finding the predominance requirement satisfied where class members were "unified by common legal theories of liability tied to common facts related

to [defendant's] efforts to safeguard employees' [personal information] and its response to the data breach").

PPEC once again contends that Plaintiff cannot show predominance since it is not clear which members of the class had their information exposed. PPEC submits that proof of exposure will be individualized, and that those individual inquiries will predominate over the common questions presented in the Complaint. As discussed previously, the evidence presented thus far indicates that PPEC notified the people it believed were at risk of harm. The questions common to that group center on PPEC's efforts to protect their sensitive information. While damages may vary, liability hinges on Plaintiff's proof of negligence, breach of contract, and other related causes of action. Those legal issues will predominate and will center, not on the conduct of individual class members, but instead on PPEC's protective actions.

PPEC contends that *In re Petrobras* directly supports its predominance argument. *In re Petrobras* reversed class certification where the proposed class consisted of persons who had purchased Petrobras Securities in a "domestic transaction." 862 F.3d at 271. To show "the domesticity of a particular transaction," each class member needed to produce evidence "including, but not limited to, facts concerning the formation of the contracts, the placement or purchase orders, the passing

of title, or the exchange of money." *Id.* (quotation marks and citation omitted). Here, class members do not need to submit any such information. Rather than actively purchasing a security, class members in this case were passive victims of a data breach, and the breach itself is a fundamental fact common to the entire class. The Court therefore finds *In re Petrobras* distinguishable.

PPEC also argues that causation is not common to the class, since Plaintiff cannot prove harm resulting from this specific breach as opposed to other, unrelated harmful incidents involving her personal information. The issue PPEC raises pertains to the identification and calculation of damages. Unlike damages calculations, liability will be the primary issue driving the case.

The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc.*, 577 U.S. at 453. The inquiry is "more demanding than" the Rule 23(a) requirements, including commonality. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Here, the Court finds that the proposed class allegedly suffered a common injury, that PPEC's liability for that injury will be the predominant issue in the case, and that Plaintiff has met her burden of showing predominance under Rule 23(b)(3).

2. Superiority

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity of decision.'" *Rosenfeld v. Lenich*, No. 18-CV-6720, 2021 WL 508339, at *10 (E.D.N.Y. Feb. 11, 2021) (quoting *In re US FoodServ. Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). Rule 23(b)(3) lists four non-exhaustive factors relevant to the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Class litigation is often appropriate in data breach cases. *See, e.g.*, *In re Christie's Data Breach Litig.*, No. 24-CV-4221, 2025 WL 2112487, at *2 (S.D.N.Y. July 28, 2025) (finding that "class action and class settlement [were] superior to other methods available for a fair and effective resolution" of a data breach affecting approximately 45,726 individuals). This case is no exception. Aggregating evidence on behalf of hundreds of

class members will likely be an efficient way of bringing claims that, if brought individually, might not justify the costs of litigation. The Court is not aware of, and the parties have not identified, any related litigation brought by class members. And given the objective means of identifying the class, there is no obvious impediment to managing the class action. The Court therefore finds the superiority requirement in Rule 23(b) is satisfied.

## **Conclusion**

For the reasons set forth above, the motion for class certification (ECF No. 55) is granted.

DATED at Burlington, in the District of Vermont, this 30th day of October 2026.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge